DANIEL G. BOGDEN
United States Attorney
STEVEN W. MYHRE
NICHOLAS D. DICKINSON
Assistant United States Attorneys
NADIA J. AHMED
ERIN M. CREEGAN
Special Assistant United States Attorneys
United States Attorney's Office, District of Nevada
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada 89101
PHONE: (702) 388-6336
FAX: (702) 388-6698

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JASON D. WOODS,<br><br>Defendant. | 2:16-cr-00046-GMN-PAL<br><br>GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT WOODS' MOTION FOR REVOCATION OF PRETRIAL DETENTION ORDER (C.R. 192) |

The United States, by and through the undersigned, respectfully submits its Response in Opposition to defendant Jason Woods' ("Woods'") Motion For Revocation of Pretrial Detention Order (C.R. 192) ("Motion" or "Motion to Revoke'). Having been charged with four counts of Section 924(c) violations, Woods submits nothing in his Motion that rebuts the presumption of detention that attaches under the Bail Reform Act. Additionally, the government has proffered overwhelming evidence showing that Woods presents both a danger to the community and a risk of flight. Accordingly, the Motion to Revoke should be denied.

# FACTS

Woods is charged in a Superseding Indictment with assaulting federal officers with a deadly weapon, obstructing justice, extorting federal officers by force and violence, using and brandishing a firearm in relation to a crime of violence, and conspiring to commit same, all in violation of Title 18, United States Code, Sections 371; 372 111(a)(1) and (b); 1503; 1951; and 924(c). The charges arise from Woods' alleged involvement in an unprecedented armed assault against federal law enforcement officers that occurred on April 12, 2014, near Bunkerville, Nevada.

On March 3, 2016, Woods was arrested in the District of Arizona pursuant to an arrest warrant issued from the Superseding Indictment. On March 7, 2016, the government moved for Woods' detention both as a risk of flight and a danger to the community, filing a Memorandum in Support of Its Motion for Detention, the memorandum proffering additional facts in support of its motion for detention. (C.R. 121, pp. 69-90) *(*Exhibit A).

On March 8, 2016, Woods received a fully-adjudicated detention hearing before United States Magistrate Judge ("Magistrate Judge") Eileen S. Willett. *See* Exhibit B (Audio Recording of Woods' March 8, 2016 Detention Hearing, filed separately). At the hearing, the government relied upon the facts charged in the Superseding Indictment and those proffered in its supporting Memorandum. The Magistrate Judge continued the hearing until March 9, 2016, to consider the possible appointment of Woods' father as a third-party custodian and, thereafter, took the matter under submission.

On March 11, 2016, and after careful consideration of the merits, the Magistrate Judge granted the government's motion and issued an Order of Detention Pending

Trial. ("Detention Order") (C.R. 121) (Exhibit C). In the Order, Magistrate Judge Willet found that defendant Woods failed to rebut the presumption of detention under the Bail Reform Act and further found that the government had established by clear and convincing evidence that Woods presented a danger to the community and, by a preponderance of the evidence, that Woods presented a risk of flight.

On March 25, 2016, Woods filed the instant Motion to Revoke. For the purposes of responding to the Motion and for the Court's consideration, the government submits by separate filing, the audio recording of the detention hearing held by Magistrate Judge Willet. (Exhibit B—filed manually). It also submits its Memorandum in Support of Pretrial Detention ("Opening Memorandum") filed in that proceeding and further incorporates by reference all the proffered evidence and arguments advanced therein. *See* Exhibit A.

## LEGAL STANDARD

This Court reviews the Detention Order *de novo*. *United States v. Koenig*, 912 F.2d 1190, 1191 (9th Cir. 1990); *see also United States v. King*, 849 F.2d 485, 491 (11th Cir. 1988); *United States v. Maull*, 773 F.2d 1479, 1481 (8th Cir. 1985) (*en banc*); *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985). Accordingly, the Court may review the evidence presented to the Magistrate Judge and makes its own independent determination. *Koenig*, 912 F.2d at 1193 ("clearly, the district court is not required to start over in every case, and proceed as if the magistrate's decision and findings did not exist…"). Or, it may take additional evidence and consider further argument. *Id.*

Under the Bail Reform Act, a charge of a violation of Title 18, United States Code, Section 924(c), provides a presumption, subject to rebuttal, that no condition or

combination of conditions will reasonably assure the appearance of the defendant as required, and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(B). Because of the nature and circumstances of the offenses charged against Woods which give rise to the presumption of detention, the government submits that no evidence will be sufficient to rebut the presumption of detention. However, even if rebutted, the presumption "remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)." *See United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) (*quoting United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986)).

## ARGUMENT

As demonstrated in its Opening Memorandum, the government showed that Woods failed to rebut the presumption of detention that attaches in this case under the Bail Reform Act. The government further showed that, even in the absence of the presumption, the Section 3142(g) factors weighed heavily in favor of detention, the proffered evidence showing, among other things, Woods protecting Cliven Bundy at the staging area, Woods driving himself and other gunmen to the wash at Bundy's behest, and Woods taking a superior tactical position vis-à-vis the officers at the gate in the wash armed with an assault rifle, demonstrating his willingness and intent to shoot federal officers.

The evidence against Woods is overwhelming. Photos, video recordings and testimony from the officers all show Woods assaulting federal law enforcement officers by using and brandishing an assault rifle. The government also showed that from the day of the assault to the present, Woods has never disavowed his actions (or those of

his co-conspirators), actions grounded in defiance of federal authority and federal court orders.

Nothing in Woods' Motion rebuts the presumption in this case or otherwise undercuts the government's showing of Woods' danger to the community or risk of flight. Woods urges that his family ties, employment, service with the Air Force and lack of criminal history all support his release. Motion ("Mot.") at 3. Yet, all of these same factors were in place when Woods, according to the Superseding Indictment, assaulted law enforcement officers on April 12. Woods does not explain why these factors are more relevant now than they were then, or how these factors make him less of danger now than he was on April 12 when he chose to confront law enforcement officers with an assault rifle.

Woods also claims that he left the Arizona Militia less than a month after returning from Bundy Ranch and, outside a discussion about tattoos with do-defendant McGuire, he has had no other contact with his co-defendants. Mot. at 3-4. But, Woods continued to advertise his affiliation and belief in the III% movement by the logo on his truck (Opening Memorandum at 16). This, combined with his license plate "HGHCLBR" (i.e., high caliber") (*id.*) dispel the notion that Woods is no longer motivated by the beliefs that compelled him to travel from Arizona to Nevada with an assault rifle to confront law enforcement officers who were just doing their jobs.

Woods contends that the truck logo and license plate are irrelevant to the issue of detention because of they fall within his First Amendment right to free speech. Mot. at 6. But Woods is not being prosecuted for his speech – or the beliefs that undergird it. He is being prosecuted for his actions and the mindset that motivated those actions is

always relevant.

The First Amendment serves as no impediment to the admissibility or consideration of his motivating beliefs whether that evidence is introduced at trial or a detention hearing. *See Wisconsin v. Mitchell,* 508 U.S. 476, 489 (1993) (affirming the use of speech that preceded the murder of a white victim as evidence for a hate crime enhancement, holding "the First Amendment, [ ] does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent. Evidence of a defendant's previous declarations or statements is commonly admitted in criminal trials subject to evidentiary rules dealing with relevancy, reliability, and the like.) The fact that Woods continues to believe that it is appropriate to use force against federal government officers when he does not agree with the rulings of a court is an entirely relevant consideration as to whether Woods is a danger to the community. He has never disavowed his beliefs, beliefs he maintains so strongly the he branded his vehicle with them and publically posted them to Facebook for the world to see as recently as a few months ago. Opening Memorandum at 16.

Woods further urges that it is not him depicted in some of the photographs set out in the government's Opening Memorandum, that he left Bundy Ranch within 24 hours after arriving there, and that he never raised or pointed a weapon at a federal officer. Mot. at 3 and 5. The photographs are what they are and the Court will be able to determine for itself whether it is Woods, or someone who just looks like him, depicted in the photographs. But whatever Woods' contention in this regard, the grand jury has already determined probable cause to believe that Woods perpetrated the offenses with which he is charged and the detention hearing should not serve as a

1  mini-trial on the Superseding Indictment.

2  Further, whether Woods actually raised his weapon – or (more to Woods' point) whether the government has an image of him raising his weapon at an officer – is irrelevant. As shown in the photograph in the Opening Memorandum at 14 and as demonstrated by the proffered testimony of the officers in the wash, the tactical position taken by the gunmen – especially those like Woods who were located on the skirt of the Southbound I-15 bridge – presented the threat and fear of immediate bodily injury or death to the officers at the gate. Woods knew what he was doing when he took that position – he knew the message he intended to send: you will be shot if you take any law enforcement actions to prevent Bundy's Followers from getting the impounded cattle. Woods did not need to aim his assault rifle to either communicate that threat or otherwise assault the officers and force them to abandon their position rather than risk death or injury to themselves or others.

Also irrelevant is the notion that Woods is no longer a danger to the community because he left after the assault and extortion. The Superseding Indictment charges that Woods was a co-conspirator in a conspiracy that continued well after April 12 and at least to the date of the Superseding Indictment, the conspirators pledging to use force and violence in the future to keep law enforcement officers from recovering the ill-gotten gains from the extortion or enforcing the laws against Bundy and the co-conspirators. Whether Woods left after the assault does not, as a matter of law, constitute a withdrawal from the conspiracy. Once he's in; he's in. And he only gets out if he affirmatively withdraws. Inaction on his part is not withdrawal.

Simply put, the proceeds from the extortion still roam the public lands under the forceful protection of Bundy and his co-conspirators, including Woods.  As long as the cattle are there, the promise that Bundy and his co-conspirators will "do it again" if the federal government takes law enforcement action remains in place.  Woods has done nothing to renounce that promise, renounce or disavow the actions of his co-conspirators, or renounce or disavow his own actions.  All he has done is attempt to minimize his involvement which neither rebuts the presumption or mitigates his continuing danger to the community.

Lastly, none of Woods' proposed conditions mitigate the risk of flight or danger to the community, more specifically, the law enforcement community.  That Woods is willing to dehumanize federal law enforcement officers executing lawful court orders and then treat them as though they are nothing more than the arm of an oppressive government, and therefore justify an incredibly violent assault on those officers, people he has never met and does not know, shows that Woods is incredibly dangerous.

Woods is not a traditional flight risk in the sense that he is expected to flee the country, but rather that he will continue to disregard federal court orders, just as he did on April 12.  The fact that Woods complied with an arrest that was tactically planned to provide little meaningful opportunity to resist does not mean he will comply with the orders of this Court going forward.  His actions on April 12 show that he is fully capable of disregarding the orders of this Court by use of force.  And, as charged in the Superseding Indictment, he has already used force and the threat of force to prevent another person, Cliven Bundy, from being arrested. There is no reason to believe he would not be willing to use force to resist federal court orders or impede

federal officers to his own benefit as well.

Nor is it appropriate to compare Woods to his co-defendants and urge that he not be detained because he did not engage in additional armed and threatening confrontations with the government. The assault of April 12th was a violent, dehumanizing attack, with superior numbers, with firearms on elevated ground, against federal law enforcement officers. Woods fully participated.  The photographs in the government's Opening Memorandum show Woods guarding Cliven Bundy while on stage, standing in a formation armed with a sidearm, driving other gunman to the wash, entering the wash with an assault rifle in hand, and taking an elevated position to square off with federal agents on the low ground in the wash. Neither Woods' dangerousness nor his risk of flight as shown by his participation in this assault is mitigated by the fact that others have taken more than one opportunity to use force or seek to use force against officers of the United States on other occasions.

WHEREFORE, for all the foregoing reasons, the government respectfully requests that the Court deny the Motion to Revoke and Order the continued detention of Woods pending trial, both as a risk of flight and as a danger to the community.

DATED this 4th day of April, 2016.

Respectfully submitted,

DANIEL G. BOGDEN
United States Attorney

         //s//
STEVEN W. MYHRE
NICHOLAS D. DICKINSON
Assistant United States Attorneys
NADIA J. AHMED
ERIN M. CREEGAN
Special Assistant United States Attorneys

CERTIFICATE OF SEVICE

The undersigned certifies that the foregoing GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT WOODS' MOTION FOR REVOCATION OF PRETRIAL DETENTION ORDER (C.R. 192) was served on counsel of record by CM/ECF.

/s/  Steven W. Myhre
_____
STEVEN W. MYHRE
Assistant United States Attorney