RENE L. VALLADARES
Federal Public Defender
State Bar No. 11479
WILLIAM CARRICO
State Bar No. 003042
Assistant Federal Public Defender
RYAN NORWOOD
Assistant Federal Public Defender
411 E. Bonneville Avenue, Suite 250
Las Vegas, Nevada 89101
(702) 388-6577/Phone
(702) 388-6261/Fax

Attorneys for Ryan W. Payne

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
-oOo-

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 2:16-cr-046-GMN-PAL |
| Plaintiff, | ) | |
| | ) | **DEFENDANT RYAN W. PAYNE'S** |
| vs. | ) | **MOTION TO DISMISS** |
| | ) | |
| RYAN W. PAYNE, | ) | |
| Defendant. | ) | |
| | ) | |

**Certification**:  This Motion is timely filed.

Defendant RYAN W. PAYNE, through his counsel, WILLAIM CARRICO and RYAN NORWOOD, Assistant Federal Public Defenders, respectfully submits that the government's decision to simultaneously prosecute Mr. Payne in two separate federal District Courts violates Mr. Payne's Sixth Amendment rights to a speedy trial and to effective assistance of counsel as well as his Fifth Amendment right to due process.  To both restore and continue to protect Mr. Payne's critical constitutional rights, Mr. Payne requests the Court dismiss this case with prejudice.

Further support for this request is set forth in the following Memorandum of Points and Authorities.

DATED this 20th day of April, 2016.

RENE VALLADARES
Federal Public Defender

By: */s/ William Carrico*
WILLIAM CARRICO
Assistant Federal Public Defender

By: */s/ Ryan Norwood*
RYAN NORWOOD
Assistant Federal Public Defender

**Memorandum of Points and Authorities**

## I.    Introduction

This Motion is precipitated by the government's decision to simultaneously pursue two separate federal criminal cases against Defendant Ryan Payne in two separate federal district courts nearly 1,000 miles away from each other.  Each case alleges multiple charges against numerous defendants.  Each case involves an overwhelming volume of discovery.  Each case exposes Mr. Payne to substantial imprisonment terms.  Each case is handled by a different team of defense attorneys.  Thus, each case requires Mr. Payne's defense counsel to spend considerable time with Mr. Payne reviewing voluminous discovery with him, preparing his defense, and consulting with him about a multitude of pretrial and trial issues.

The government's decision to engage in dual prosecutions places Mr. Payne in a precarious position.  The dual prosecutions require Mr. Payne to choose between which of the two cases will be litigated without violating his Fifth and Sixth Amendment rights—rights that are among the most fundamental and critical rights guaranteed to criminal defendants.  Mr. Payne cannot be forced to make this choice as it is no choice at all.  Mr. Payne faces irreparable prejudice and jeopardy if he must choose one competing case over another as the forum to invoke his Fifth and Sixth Amendment rights.  As such, the only constitutionally sound remedy is for the Court to dismiss the instant case with prejudice.

Through this motion, Mr. Payne unequivocally makes clear his invocation of all his constitutional rights, including his constitutional right to a speedy trial, his right to effective assistance of counsel, and his right to due process.  Mr. Payne also continues to invoke all of his constitutional trial rights with respect to his case in Oregon, and he does not waive any arguments he has made previously with regard to either case.

## II.      Procedural History

### A. District of Oregon Proceedings

On January 27, 2016, the government moved to unseal a redacted criminal complaint filed against Mr. Payne and seven co-defendants in the District of Oregon.  *See United States v. Payne*, D. Or., Case No. 3:16-cr-00051-BR-4 (hereinafter "Oregon case").   Mr. Payne made his appearance that day and has since been ordered detained in the Oregon case.  *Id.* at CR ##21-29. On February 3, 2016, an unsealed, redacted indictment in the Oregon case was filed against Mr. Payne and 15 co-defendants.  *Id.* at CR #58.  The indictment alleges the defendants conspired to impede United States officers under 18 U.S.C. § 372  from October 5, 2015 through January 26, 2016.  *Id.*   On March 9, 2016, an unsealed redacted six-count superseding indictment was filed against Mr. Payne and 26 named and unnamed co-defendants.  The charges pertaining to Mr. Payne allege:

Count 1:      conspiracy to impede United States officers in violation of 18 U.S.C. § 372, from November 5, 2015 through February 12, 2016;

Count 2:      possession of firearms and dangerous weapons in federal facilities in violation of 18 U.S.C. §§ 930(b), (2), from January 2, 2016 through February 12, 2016; and

Count 3:      use and carry of a firearm in relation to a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A), (2), from January 2, 2016 through February 12, 2016.

*Id.* at CR # 282.

In addition, on March 9, 2016, the district court in the Oregon case ordered that the case of *United States v. Cooper*, D. Or., Case No. 3:16-cr-00064-JO, is deemed to be part of the Oregon case.  *Id.*  at CR #285.  The district court also declared the Oregon case complex.  *Id.*  at #289.

4

The discovery in the Oregon case is incredibly voluminous. The government has stated the discovery issues in that case will be greater than any before seen in the history of the District of Oregon. *Payne*, D. Or., Case No. 3:16-cr-00051-BR-4 , CR #185 at 2 ("The government anticipates that the discovery issues in defendants' case will be some of the most complicated in the history of the district."). To date, the government has disclosed six volumes of discovery comprised of 14,079 Bates pages, 48,050 files, and 94 gigabytes of data to the defense team in the Oregon case. *Payne*, D. Or., Case No. 3:16-cr-00051-BR-4, CR #404. The data exists in multiple formats, including .pdfs, text files, tiffs, load files, and natives. *Id.* The government is currently processing additional discovery encompassing more than 150 gigabytes of data. *Id.* The government has also conferred with one defense attorney to provide estimates about the volume and nature of future discovery production to assist the defense in obtaining a contractor to facilitate discovery hosting by a third-party vendor. *Id.*

On April 11, 2016, the district court issued an order setting a single trial for all defendants in early September 2016, though some defendants have indicated they will not be prepared to proceed to trial on that date. *Payne*, D. Or., Case No. 3:16-cr-00051-BR-4, CR #389. The district court indicated it would consider a motion to continue the trial date premised upon insufficient time to prepare after July 7, 2016. *Id.*

**B. District of Nevada Proceedings**

On February 17, 2016, a grand jury returned a federal indictment against Mr. Payne and four others in the District of Nevada. *United States v. Payne*, 2:16-cr-046-GMN-PAL-4, CR #5. On March 2, 2016, the grand jury returned a superseding indictment against Mr. Payne and 18 others, alleging:

Count 1:    conspiracy to commit an offense against the United States in violation of 18 U.SC. § 371 , between March 2014 and March 2, 2016;

5

Count 2:     conspiracy to impede or injury a federal officer in violation of 18 U.S.C. § 372 , between March 2014 and March 2, 2016;

Count 3:     use and carry of a firearm in relation to a crime of violence in violation of 18 U.S.C. §§ 924(c), (2), between March 2014 and March 2, 2016;

Count 4:     assault on a federal officer in violation of 18 U.S.C. §§ 111(a)(1), (b) , 2, on April 9, 2014;

Count 5:     assault on a federal officer in violation of 18 U.S.C. §§ 111(a)(1), (b), 2, on April 12, 2014;

Count 6:     use and carry of a firearm in relation to a crime of violence in violation of 18 U.S.C. §§ 924(c), 2, on April 12, 2014;

Count 7:     threatening a federal law enforcement officer in violation of 18 U.S.C. §§ 115(a)(1)(B), 2, on April 11, 2014;

Count 8:     threatening a federal law enforcement officer in violation of 18 U.S.C. §§ 115(a)(1)(B), 2, on April 12, 2014;

Count 9:     use and carry of a firearm in relation to a crime of violence in violation of 18 U.S.C. §§ 924(c), (2), on April 12, 2014;

Count 10:    obstruction of the due administration of justice in violation of 18 U.S.C. §§ 1503, 2, on April 6, 2014;

Count 11:    obstruction of the due administration of justice in violation of 18 U.S.C. §§ 1503, 2, on April 9, 2014;

Count 12:    obstruction of the due administration of justice in violation of 18 U.S.C. §§ 1503, 2, on April 12, 2014;

Count 13:    interference with interstate commerce by extortion in violation of 18 U.S.C. § 1951, 2, on April 2, 2014, and April 9, 2014;

Count 14:    interference with interstate commerce by extortion in violation of 18 U.S.C. § 1951, 2, on April 12, 2014;

Count 15:    use and carry of a firearm in relation to a crime of violence in violation of 18 U.S.C. §§ 924(c), 2, on April 12, 2014; and

Count 16:    interstate travel in aid of extortion in violation of 18 U.S.C. §§ 1952, 2, between April 5, 2014, and April 12, 2014.

CR #27.

On March 2, 2016, a federal arrest warrant was issued for Mr. Payne. CR #42. The government also requested this Court issue a writ of habeas corpus ad prosequendum for Mr. Payne. CR #50. The petition for the writ requested the Warden of the Multnomah County Jail in the District of Oregon, where Mr. Payne was then detained in the Oregon case, to transfer Mr. Payne to the District of Nevada for arraignment on the superseding indictment in the instant case and then return Mr. Payne to the District of Oregon thereafter. *Id.* This Court issued the writ that same day. CR #53.

On March 25, 2016, this Court issued an order directing the parties to meet and confer regarding whether this case should be deemed complex. CR #198. It also required the parties to individually propose a schedule by April 18, 2016, for discovery, pretrial motions, trial, and any exclusions of time appropriate under 18 U.S.C. § 3161. *Id.* On April 18, 2016, Mr. Payne filed his proposed schedule with this Court. CR #269. Therein, Mr. Payne stated this case is not complex and requested that this Court set his trial date within the speedy trial limit or leave in place the current calendared trial date of May 2, 2016. *Id.* The government then filed a proposed schedule, suggesting that this case is complex and requesting a trial date in February 2017. CR #270.

The parties have already conferred regarding discovery. The government advised it would anticipate producing discovery "if and when a coordinator is appointed and then once to the coordinator for further dissemination to defense counsel." The government does not intend to provide discovery separately to each defendant. Additionally, the government refused to provide defense counsel with any portion of the discovery or an index for the discovery prior to defense counsel meeting Mr. Payne for the first time after he was transported to the District of Nevada for his initial appearance. In fact, the government has indicated it will not even begin its discovery

7

disclosures until this Court enters a Scheduling Order.  CR #270 at 14.  When it does disclose discovery, which it presently estimates exceeds 1.4 terabytes of disk space, the government intends to do so in "phases"—a proposition to which Mr. Payne  objects.  *Id.*  Given the nature of the charges and the time period covered in the superseding indictment, it is anticipated the volume of discovery in this case will eclipse the discovery in the Oregon case.

As of the date of this filing, Mr. Payne has been transferred to the District of Nevada for his arraignment on the superseding indictment and made his initial appearance on April 15, 2016.  It is anticipated that, pursuant to the writ issued and the apparent informal agreement between the Districts of Oregon and Nevada, Mr. Payne will be returned to the District of Oregon after the status conference scheduled before this Court on April 22, 2016.

### C.  Ninth Circuit Court of Appeals

On March 30, 2016, Mr. Payne's counsel in the Oregon case challenged the legality of this Court's writ of habeas corpus ad prosequendum and asked that the writ be stayed pending Mr. Payne's interlocutory appeal of the writ.  *See United States v. Payne,* Ninth Cir. Case No. 16-30080, Dkts. 4, 5.  In his interlocutory appeal, Mr. Payne asks if:

> After arraignment and detention on an indictment in one federal district court, does the non-consensual transfer of the defendant to another federal district court for arraignment on a different charge, before the resolution of the first case, lack a jurisdictional basis and infringe on the due process-based rules for priority of warrants, the Speedy Trial Act, and the Sixth Amendment right to counsel?

*Id.* at Dkt. 5, p. 9.  The Ninth Circuit denied the stay but referred Mr. Payne's appeal of the writ to the next available merits panel.  *Id.* at Dkt. 20.  Thus, although Mr. Payne is presently in this District, the legality of his presence in this District remains under appellate review in the Ninth

Circuit.  Mr. Payne submits his forced presence in this District via the writ does not waive his

objection to this Court's authority to issue the writ in the first instance.

### III.    The Government's Decision to Simultaneously Prosecute Mr. Payne on Criminal Charges in Two Separate Federal District Courts Impermissibly Forces Mr. Payne to Choose Between Guaranteed Constitutional Trial Rights.

The government has elected to simultaneously prosecute two separate federal criminal

cases against Mr. Payne in two separate federal district courts.  The government's conduct in the

particular circumstances of this case denies Mr. Payne constitutional protections guaranteed him

by the Constitution.

The government's conduct in this case forces Mr. Payne to elect between exercising his

constitutional rights under the Fifth and Sixth Amendment rights in the Oregon case or the Nevada

cases.  Mr. Payne can either invoke his constitutional rights to a speedy trial, to effective

assistance of counsel, and to due process in the Oregon case *or* in the Nevada case.  He cannot

invoke his constitutional trial rights in both cases simultaneously—the logistics of the Oregon

and Nevada cases render this impossible.

Mr. Payne is currently ordered detained in his Oregon case and is being held at the

Multnomah County Jail in Portland, Oregon. He is also currently ordered detained in his Nevada

case and is housed in a federal contract facility while he is in this District.  CR #249.  The Oregon

and Nevada cases contain multiple counts, multiple defendants, and each exposes Mr. Payne to

substantial imprisonment if he is convicted.  The government has already projected the discovery

issues involved in the Oregon case "will be some of the most complicated in the history of the

district." *Payne*, D. Or., Case No. 3:16-cr-00051-BR-4, CR #185 at 2.  The charges in the Nevada

case are even more numerous, span a longer and earlier time frame, and involve more defendants

than the Oregon case.  At present, the discovery in the instant case is so voluminous the

government seeks to disclose it to a coordinator for distribution in phases, not to individual defendants.

The rights to a speedy trial, effective assistance of counsel, and due process are fundamental constitutional rights. *Moore v. Arizona*, 414 U.S. 25, 27-28 (1973) (stating "the right to a speedy trial is as fundamental as any of the rights secured by the Sixth Amendment") (internal quotation marks and citation omitted); *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) (finding the Sixth Amendment right to effective assistance of counsel exists to protect the fundamental right to a fair trial). The Supreme Court has been "unyielding" in its insistence that a defendant's waiver of constitutional trial rights must be "knowing, intelligent, *and voluntary*." *Schriro v. Landigan*, 550 U.S. 465, 484 (2007) (emphasis added). Mr. Payne cannot proceed in the Oregon and Nevada cases simultaneously without being forced to waive constitutional rights that the government may not force him to waive.

Whether a defendant can knowingly, intelligently, and voluntarily waive his constitutional rights is dependent upon the particular circumstances of the case and the nature of the right involved. *Gete v. I.N.S.*, 121 F.3d 1285, 1293 (9th Cir. 1997) (citing *Johnson v. Zerbst*, 304 U.S. 458 (1938)). There can be no argument that Mr. Payne has waived any of his constitutional trial rights in the instant case: Mr. Payne invokes, through this Motion, his constitutional rights to a speedy trial, to effective assistance of counsel, and to due process. There also can be no argument that Mr. Payne has waived any of his constitutional trial rights in the Oregon case: he has already invoked his constitutional trial rights in the Oregon case. *See Payne*, D. Or., Case No. 3:16-cr-00051-BR-4, CR #183, p. 2 (stating Mr. Payne invokes his rights under the Fifth and Sixth Amendment); CR #340 p. 15 (defense counsel stating Mr. Payne's then-impending transfer to Nevada for arraignment starts the clock for his statutory and constitutional speedy rights, the

impact of which interferes with his right to effective assistance of counsel, speedy trial, and due process in the Oregon case).

The government fails to understand the gravity of the rights at issue, fails to acknowledge Mr. Payne has the right to decide which rights to invoke in which case, and fails to understand that the status of the Oregon and Nevada cases renders Mr. Payne's constitutional trial rights illusory.  In a recent hearing, the government indicated the case in "Oregon will be tried first" and stated:

> The U.S. Attorney's Office, in Nevada and Oregon, we're speaking with one voice.  The Oregon case was filed first.  The Oregon case should go first. But the Oregon case does not have to be completed before the Nevada case begins.  There are ways where practically we can arrange for both cases to proceed on a parallel track; where defendants can be present in Nevada and present in Oregon to attend all of their court appearances and have significant and meaningful interaction and assistance with counsel.

*Payne*, D. Or., Case No. 3:16-cr-00051-BR-4, CR #340, pp. 20, 21.  As explained below, proceeding in both cases simultaneously is not possible without violating Mr. Payne's constitutional trial rights.

Notably, Mr. Payne's counsel in the instant case tried to avoid the litigation firestorm that has erupted from the government's decision to simultaneously prosecute Mr. Payne in two separate federal districts at the same time.  Defense counsel suggested one avenue to avoid forcing Mr. Payne to waive his constitutional trial rights would be to refrain from transferring him from Oregon to Nevada for his first appearance—an appearance that triggers, among other rights, his constitutional trial rights under the Fifth and Sixth Amendments, stating:

> There's no necessity to [have Mr. Payne] come back to Nevada to start this case. If the [Oregon] case is going to go to trial in Oregon in September, let the case to go to – go to trial in go Oregon. When

11

the [Oregon] case is over, it will come here [to Nevada]. . . .  And the reason is, Judge, realistically you cannot have a meaningful conversation or a meaningful dialogue with your client in a - - in a - - in a facility that is a thousand miles away or 800 miles away.  It requires -- certainly for CJA panel attorneys, they cannot economically do that. Even for the federal defender, it would be almost impossible, in a case of this magnitude, with the amount of discovery that we're anticipating, to not have one-on-one, face-to-face access with our clients with meaningful amounts of time. . . .

So I'm unsure what the necessity is to bring the clients [to Nevada] here till their speedy trial rights start. There appears to be no necessity. Because then we're going to have two parallel speedy trial issues at the same time.

*Payne*, D. Or., Case No. 3:16-cr-00051-BR-4, CR #340, pp. 33-34.

The government did not heed undersigned counsel's predictions, and the constitutional infringements counsel predicted have now materialized.  Mr. Payne made his first appearance in the instant case on April 15, 2015.  CR #249.  Mr. Payne is now entitled to the full panoply of his constitutional rights in *both cases*.  However, because both prosecutions are going forward simultaneously, it is simply not possible, as explained below, for Mr. Payne to exercise his Fifth and Sixth Amendment rights in both federal cases at the same time.

That the government suggests it will try the Oregon case before the Nevada case and allow Mr. Payne to be transferred back and forth between the two districts for court proceedings during the Oregon pretrial, trial, and post-trial stages only complicates the problem.  The constitutional trial rights at issue belong to Mr. Payne.  The government cannot dictate which rights Mr. Payne may invoke and in which case he make invoke them.  Yet, by choosing to proceed to trial in the Oregon case first, the government is forcing Mr. Payne to waive his constitutional trial rights in the instant case.  These circumstances force Mr. Payne to forego or waive his constitutional rights in the Nevada case.  There is nothing voluntary about this.

In *United States v. Simmons*, 390 U.S. 377, 394 (1969), the Supreme Court found "it intolerable that one constitutional right should have to be surrendered in order to assert another." There, the Supreme Court considered the interplay between the Fourth and Fifth Amendments and held a defendant's testimony offered to support suppression of evidence under the Fourth Amendment claim should not be admissible against him at trial on the question of guilt or innocence under the Fifth Amendment. *Simmons*, 390 U.S. at 394. Otherwise, the defendant would face a Hobson's choice: refuse to testify to raise the Fourth Amendment claim to preserve his Fifth Amendment right against self-incrimination. *Id.* at 392-94.

In *United States v. Jackson*, 390 U.S. 570, 581 (1968), the Supreme Court struck a portion of the Federal Kidnaping Act that allowed imposition of the death penalty solely by means of a jury verdict, a circumstance that operated "to discourage assertion of the Fifth Amendment right not to plead guilty and to deter exercise of the Sixth Amendment right to demand a jury trial." The Supreme Court found this constitutionally impermissible as it would needlessly chill the exercise of basic constitutional rights. *Jackson*, 390 U.S. at 582 (citations omitted).

Under *Simmons* and *Jackson*, the government cannot force Mr. Payne to choose which case should receive the benefit of guaranteed constitutional trial rights. Such a choice is intolerable as it is no choice at all. The government's conduct in this case requires this Court to serve as an accomplice in the intolerable infringement upon Mr. Payne's constitutional rights, lest the Court invoke the one true remaining remedy. The Court can dismiss the instant case with prejudice and return Mr. Payne to the District of Oregon so that he may proceed to trial in the Oregon case. If the Court does dismiss this case with prejudice, Mr. Payne's Fifth and Sixth Amendment rights will be violated in the following ways.

**A.  Mr. Payne's Sixth Amendment Right to a Speedy Trial Will Be Violated if He is Forced to Litigate Both the Oregon and Nevada Cases Simultaneously.**

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial."  U.S. Const. amend VI.  In *Barker v. Wingo*, the Supreme Court explained the Constitution's guarantee of a speedy trial is to be determined through application of a balancing test that "compels courts to approach speedy trial cases on an ad hoc basis."  407 U.S. 514, 530 (1972).

There are four factors courts should consider as part of this inquiry:  (1) the "[l]ength of delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant."  *Id.*  "While each of the factors is relevant, '[t]he flag all litigants seek to capture is the second factor, the reason for delay.'"  *Boyer v. Louisiana*, 133 S. Ct. 1702, 1706 (2013) (quoting *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986)).  Additionally, the Supreme Court has explained "different weights should be assigned to different reasons." *Boyer*, 133 S. Ct. at 1706 (quoting *Barker*, 407 U.S. at 531).  "'A deliberate attempt to delay the trial in order to hamper the defense' is particularly serious, and 'should be weighted heavily against the government.'"  *Id.* (same).  Analysis of these factors demonstrates Mr. Payne cannot exercise his constitutional right to a speedy trial in this case.

As to the first factor, the delay in proceeding to trial in this case is ominous.  Though the Oregon case presently has a projected trial date in September 2016,[1] the circumstances of that

---

[1] In addition to the reasons set forth within, it is unrealistic for the government to suggest the Oregon case will actually proceed to trial in September of 2016.  The CJA counsel who represent co-defendants in the Oregon case who are also charged in the Nevada case will face the same economic and access burdens as undersigned counsel, rendering the September 2016 trial date illusory.

case may render a September 2016 trial date unobtainable.  There are 27 defendants in the Oregon case, including one whose name has not yet been unsealed.  Additionally, there is a second criminal case that has been incorporated into the Oregon case.  *See Cooper*, D. Or., Case No. 3:16-cr-00064-JO.  Even at this early stage in the proceedings, the district court has declared the Oregon case complex.   Moreover, the government admits the discovery issues involved in the Oregon render the case more complicated than any prior case in the history of the district.

As such, no one can predict with precision at this point how long it will take to actually bring the Oregon case to trial.  There are simply too many variables to project a viable trial date.  That said, there is good reason to believe the trial in the Oregon case will not be completed by September of 2016.  The 2015 statistics from the United States Courts reveal the median time between the filing of a criminal case and disposition by trial is 16.8 months.[2]  Complex charges, such as those involving racketeering, endure a substantially longer period of time between the filing and trial disposition.[3]  *See id*. (noting median of 23.6 months).  This factor should therefore be viewed in favor of Mr. Payne.

The second factor, the reason for the delay, also weighs in Mr. Payne's favor.  The government alone is responsible for the delay that will inevitably occur.  The government chose when to indict Mr. Payne, where to indict Mr. Payne, and whether to initiate proceedings to start the speedy trial clock in each case.  The government's conduct was intentional and with full notice that its conduct would create the speedy trial quandary before the Court.

---

[2]  U.S. District Courts-Median Time Intervals from Filing to Disposition for Criminal Defendants Disposed of, by Offense, During the 12-Month Period Ending September 30, 2015, at p. 1, available at http://www.uscourts.gov/statistics/table/d-10/judicial-business/2015/09/30 (last visited April 17, 2016).

[3]  *Id.*

15

The third factor is indisputable as Mr. Payne has promptly asserted his right to a speedy trial.

The final and fourth factor, the prejudice to Mr. Payne, is also indisputable. The government's choices and conduct place Mr. Payne in an intolerable position: either proceed to a speedy trial in the District of Oregon or in the District of Nevada. As explained more fully below, he cannot do both. Moreover, the Supreme Court has recognized constitutional speedy trial rights encompass many protections beyond mere practicalities. For instance:

> The speedy trial guarantee recognizes that a prolonged delay may subject the accuse to an emotional stress that may be presumed to result in the ordinary person from uncertainties in the prospect of facing a public trial or of receiving a sentence longer than, or consecutive to, the one he is presently service—uncertainties that a prompt trial removes.

*Strunk v. United States*, 412 U.S. 434, 439 (1973) (citations omitted). Mr. Payne faces these very uncertainties here, as completion of one federal criminal trial will be followed by yet another if the government is permitted to continue its mission of parallel prosecutions.

Thus, in addition to the impermissible choice the government has attempted to force upon Mr. Payne, the emotional stress and uncertainty of the litigation the government has pursued simultaneously in two separate criminal cases is double that faced by the typical defendant. These uncertainties, coupled with the government's conduct in rendering it impossible for Mr. Payne to receive a speedy trial in both cases, has caused undue prejudice to Mr. Payne.

The balancing of these factors weigh strongly in Mr. Payne's favor. Dismissal of this case with prejudice is the only remedy available to cure the government-caused violation of Mr. Payne's constitutional speedy trial rights.

**B. Mr. Payne's Sixth Amendment Right to Effective Assistance of Counsel Will Be Violated if He is Forced to Litigate Both the Oregon and Nevada Cases Simultaneously.**

The Sixth Amendment also guarantees the accused effective assistance of counsel both before trial and after trial. U.S. Const. amend. VI; *Strickland v. Washington*, 466 U.S. 668, 684-686 (1984). Within this realm, the Supreme Court has suggested the most critical period of the litigation is that between arraignment and the beginning of trial. *Powell v. Alabama*, 287 U.S. 45, 57 (1932). The government violates an accused's "right to effective assistance when it interferes in certain ways with the ability of counsel to make independent decisions about how to conduct the defense." *Strickland*, 466 U.S. at 686.

The District of Oregon has ordered Mr. Payne detained and has housed him in the Multnomah County Jail in the Inverness facility. Undersigned counsel understands Mr. Payne is not permitted access to electronic devices to view the discovery in this case and is only permitted a certain number of pages to review at any one time. The only manner in which Mr. Payne can view the discovery in this case is for undersigned counsel to bring a laptop during visitation sessions.

For undersigned counsel to investigate this case, prepare a defense, and communicate with Mr. Payne, counsel must fly to Portland and review the discovery in person with Mr. Payne during scheduled visitation sessions. The economic costs required of this procedure notwithstanding, counsel cannot hope to effectively represent Mr. Payne if he only has access to the electronic case materials during scheduled in-person visits with counsel.

Additionally, the simultaneous litigation of both cases in both districts would require Mr. Payne to somehow apportion time between two sets of discovery, two separate lines of defense preparation, two different defense teams, and two different sets of court proceedings.

17

Effective trial preparation in this case demands the assistance of Mr. Payne—assistance that has been rendered nearly impossible as there is a phenomenal amount of work to be done to meet the government's accusations.  Detention of Mr. Payne in a district approximately 1,000 miles away eviscerates any possibility for effective communication and necessary dialogue between Mr. Payne and his counsel.  The Sixth Amendment's guarantee of the assistance of counsel, coupled with basic principles of fairness, which should inhere in any criminal proceeding, command that Mr. Payne is entitled to prepare his defense *with* defense counsel.  Mr. Payne's detention in Oregon at the Multnomah County Jail prohibits this from occurring in any meaningful way.  Dismissal of the instant indictment with prejudice is warranted as the present circumstances of Mr. Payne's detention and the dual prosecutions prohibit undersigned from providing effective assistance of counsel to Mr. Payne.

### C. Mr. Payne's Fifth Amendment Right to Due Process Will Be Violated if He is Forced to Litigate Both the Oregon and Nevada Cases Simultaneously.

The Fifth Amendment's Due Process Clause provides "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law. . . .'" U.S. Const. amend. V.  The Supreme Court has held the Due Process Clause contains a substantive and a procedural component.  Substantive due process protects defendants from government conduct that shocks the conscience, *Rochin v. California*, 342 U.S. 165, 172 (1952), or interferes with rights "'implicit in the concept of ordered liberty,'"—"life, liberty, or property."  *Id.* (quoting *Palko v. Connecticut*, 302 U.S. 319, 325-326 (1937)); *Herrera v. Collins*, 506 U.S. 390, 435-36 (1993).  If the government's conduct survives substantive due process scrutiny, procedural due process requires

that the government's conduct in depriving a defendant of life, liberty, or property must be implemented in a fair manner.  *United States v. Salerno*, 481 U.S. 739, 746 (1987).

The government intends to engage in "parallel" proceedings, pursuing trial in both the Oregon and Nevada cases at the same time.  The government has also unilaterally decided to try the Oregon case first, forcing Mr. Payne to delay trial and trial preparation in a case for which the factual underpinnings are alleged to have begun in 2014—two years before the 2016 allegations in the Oregon case.  Mr. Payne should not be forced to allow the facts, evidence, and witnesses that are most distant in time to lay idle while the more recent Oregon case proceeds. Witnesses' memories fade with time, and witnesses who may be available to assist his defense in Nevada now may not be available to him while he waits for the government to litigate to conclusion the Oregon case, whenever that might be.  The conditions and layout of the land where much of the conduct is alleged to have occurred will also change with time due to natural causes, weather patterns, and public use and access.  Mr. Payne must be present in Nevada to assist his counsel in investigating and mounting his defense in the Nevada case.   Dismissal of the instant indictment with prejudice is warranted as the government's charging and prosecution decisions in this case deny Mr. Payne substantive and procedural due process.

## VI.   Conclusion

The government chose to force Mr. Payne to make his appearance in this case, over his objection.  That appearance started Mr. Payne's speedy trial clock in this case.  Despite defense counsel's suggested remedy to avoid the constitutional problems induced by the ticking of dual speedy trial clocks—that the government wait to seek Mr. Payne's appearance in Nevada until the Oregon case is concluded—the government pushed forward on both cases.  The only available remedy for the government's conduct is dismissal with prejudice.

Notably, even if the Constitution permitted the government to force Mr. Payne to choose between his fundamental constitutional trial rights in the Oregon case or in the Nevada case, the government has failed to provide Mr. Payne with the information necessary to make such a critical choice. The government has not yet provided a single page of discovery in this case and has indicated it will only disclose discovery in three phases over time and only with the assistance of a coordinator once the Court issues a Scheduling Order. As a result, Mr. Payne does not presently have the information necessary to make an informed decision, and undersigned counsel lack the information necessary to effectively advise Mr. Payne on this issue.

Thus, in order to preserve Mr. Payne's rights on the issues raised herein and without waiving Mr. Payne's request for dismissal with prejudice, undersigned counsel in the instant case alternatively request the Court: (1) not return Mr. Payne to the District of Oregon; (2) order Mr. Payne detained in the District of Nevada so undersigned defense counsel may properly advise him; and (3) order the government to immediately disclose all discovery to Mr. Payne. Undersigned counsel acknowledges this request will necessarily prejudice Mr. Payne and his defense team in the Oregon case, but this prejudice is the result of the government's conduct. Undersigned counsel still have an obligation to provide effective assistance of counsel to Mr. Payne in *this* case. In order to do so, undersigned counsel cannot acquiesce to his transfer back to Oregon. Rather, undersigned counsel must be able to meaningfully consult with Mr. Payne and review the discovery with him. Otherwise and assuming for purposes of argument the constitutionality of forcing Mr. Payne to choose whether he must be prejudiced in the Oregon case or Nevada case, Mr. Payne will not be in a position to make an informed decision on the constitutional issues raised in this Motion.

Dated this 20th day of April, 2016.

Respectfully Submitted,

RENE VALLADARES
Federal Public Defender

By: */s/ William Carrico*
WILLIAM CARRICO
Assistant Federal Public Defender

By: */s/ Ryan Norwood*
RYAN NORWOOD
Assistant Federal Public Defender

1

## CERTIFICATE OF ELECTRONIC SERVICE

2     The undersigned hereby certifies that she is an employee of the Federal Public Defender

3  for the District of Nevada and is a person of such age and discretion as to be competent to

4  serve papers.

5     That on April 20, 2016, she served an electronic copy of the above and foregoing

6  **DEFENDANT RYAN W. PAYNE'S MOTION TO DISMISS** by electronic service (ECF) to

7  the person named below:

8

9            DANIEL G. BOGDEN
             United States Attorney
             ERIN M. CREEGAN
10           Assistant United States Attorney
             NADIA JANJUA AHMEN
             Assistant United States Attorney
11           NICHOLAS DICKINSON
             Assistant United States Attorney
12           STEVEN MYHRE
             Assistant United States Attorney
13           501 Las Vegas Blvd. South
             Suite 1100
             Las Vegas, NV 89101
14

15                              */s/ Karen Meyer*
16                              Employee of the Federal Public Defender

17

18

19

20

21

22

23

24                              22