MARGARET A MCLETCHIE, Nevada Bar No. 10931
ALINA M. SHELL, Nevada Bar No. 11711
**MCLETCHIE SHELL LLC**
701 East Bridger Ave., Suite 520
Las Vegas, Nevada 89101
(702) 728-5300
maggie@nvlitigation.com
*Counsel for Intervenors*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | Case No. :   2:16-cr-00046-GMN-PAL |
| Plaintiff, | **MOTION TO INTERVENE** |
| vs. | |
| CLIVEN D. BUNDY, et al., | |
| Defendants. | |

The Las Vegas Review-Journal and Battle Born Media ("Proposed Intervenors") hereby move to intervene in this case. This motion is supported by the attached memorandum of points and authorities, together with any oral argument the Court may require in this matter.

DATED this 29th day of April, 2016.

MARGARET A MCLETCHIE, Nevada Bar No. 10931
ALINA M. SHELL, Nevada Bar No. 11711
**MCLETCHIE SHELL LLC**
701 East Bridger Ave., Suite 520
Las Vegas, Nevada 89101
(702) 728-5300; maggie@nvlitigation.com

MCLETCHIESHELL

ATTORNEYS AT LAW
701 EAST BRIDGER AVE., SUITE 520
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

It is undisputed that this matter is of public interest. Given the pervasive media presence of some of the defendants in this matter, the case has been a fixture in local and national media since its inception. In fact, because several defendants have been active critics of the federal government for several years, the media has been following the progress of this matter even before the United States Attorney for the District of Nevada indicted the nineteen defendants. As described in the government's superseding indictment, this case has its roots in a decades-long dispute between defendant Cliven Bundy and the Bureau of Land Management ("BLM") over cattle grazing fees. (*See* Doc. #27 at pp.8:9-9:14.) On April 12, 2014, after the BLM and rangers with the National Park Service ("NPS") had begun impounding Mr. Bundy's cattle, Mr. Bundy and approximately several hundred individuals gathered in Bunkerville, Nevada to protest the impoundment of Mr. Bundy's cattle. (*Id.* at pp. 2:21-3:12.) This protest garnered extensive coverage by local and national media.

As detailed in Intervenors' attached Proposed Response (Exhibit A) to the government's proposed protective order, despite the importance of this the case and the public interests at stake, the government's protective order thwarts the public's right to information about this case by depriving it of access to all documents produced by the government. Moreover, in its hubris, the government has failed to provide any good cause to do so. Because the public has a vital interest in this case, and because the government has not met its burden, the proposed Intervenors now move to intervene so that they may oppose the government's proposed protective order.

## II.    INTERESTS OF PROPOSED INTERVENORS

### A.    The Las Vegas Review Journal

The Review-Journal is a daily newspaper, published in Las Vegas, Nevada, and is the largest newspaper in Nevada. The Review-Journal carries on the constitutionally-protected business of reporting the news. It has standing to pursue this motion, designed to seek access to documents. Proposed intervenor Review-Journal began reporting on the

activities of Cliven Bundy before the April 12, 2014 protest.[1] Since the protest, the Review-Journal has extensively covered the activities of Mr. Bundy and several of other defendants in this matter.[2]

### B.   Battle Born Media

Battle Born Media publishes weekly newspapers in several rural communities in Nevada focusing on rural Nevada issues such as water supplies, ranching, and free use of public lands. Founded in 2011, Battle Born Media's publication include the Mesquite Local News, the Ely Times, the Mineral County Independent News, the Lincoln County Record, and the Eureka Sentinel. The Mesquite Local News is headquartered in Mesquite, Nevada, a town near Defendant Cliven Bundy's Bunkerville ranch. Likewise, the Lincoln County Record is headquartered in Pioche, about 150 miles north of Bunkerville. Both publications have reported and will continue to report on several of the defendants in this case, which is of vital interest to their readership.[3] Thus the ability to provide readers information about this case, including the government's investigation, is of great importance to Battle Born Media.

### III.   ARGUMENT

For the very reason that this case is a matter of public interest, the Proposed Intervenors should be allowed to intervene for the purposes of voicing concerns regarding limits to access to information. Under similar facts (although at a much later stage of the case), Magistrate Judge Foley recently allowed the Las Vegas Review-Journal to intervene and challenge stipulated protective orders. *United States v. Benzer*, 2015 WL 9200365, at *7 (D. Nev. Dec. 15, 2015); *see also United States v. Benzer*, No. 2:13-CR-00018-JCM, 2015 WL 4724092, at *4 (D. Nev. Aug. 7, 2015) (granting in part Intervenor Review-Journal's motion to unseal).

---

[1] *See, e.g.,* http://www.reviewjournal.com/news/nevada/bunkerville-rancher-vows-resist-federal-roundup-his-cattle (last accessed April 26, 2016).

[2] *See* http://www.reviewjournal.com/news/bundy-blm (compiling the Review-Journal's coverage of Mr. Bundy).

[3] *See, e.g.,* http://mesquitelocalnews.com/2015/06/cliven-bundy-says-he-met-gold-butte-surveyors-but-didnt-menace-them/

MCLETCHIE SHELL

ATTORNEYS AT LAW
701 EAST BRIDGER AVE., SUITE 520
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

Neither the Federal Rules of Criminal Procedure nor this Court's Local Rules reference a motion to intervene in criminal cases. However, federal courts have recognized that "because the First Amendment implicitly guarantees the right to access criminal trials, motions to intervene are procedurally proper when the public or press seeks to intervene for the limited purpose of accessing a criminal proceeding or court documents." *Stephens Media, LLC v. Eighth Judicial Dist. Court of State ex rel. Cty. of Clark*, 125 Nev. 849, 859, 221 P.3d 1240, 1247 (2009) (citing *In re Associated Press*, 162 F.3d 503, 507 (7th Cir. 1998); *United States v. Brooklier*, 685 F.2d 1162, 1168 (9th Cir. 1982); and *United States v. Criden*, 675 F.2d 550, 559 (3d Cir. 1982)); *see also United States v. James*, 663 F. Supp. 2d 1018, 1020 (W.D. Wash. 2009) ("Domestic press outlets unquestionably have standing to challenge access to court documents.") (citation omitted).

The United States Supreme Court has held that where a court contemplates excluding the press or the public from access to hearings or records in a criminal trial, "[...] representatives of the press and general public 'must be given an opportunity to be heard on the question of their exclusion.'" *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 609, n. 25 (1982) (citing *Gannett Co. v. DePasquale*, 443 U.S., 368, 401 (Powell, J., concurring)). As Magistrate Judge Foley recently recognized, intervention should also be permitted to allow the media to challenge protective orders. *See United States v. Benzer*, U.S. Dist. Ct. Case No. 2:13-cr-00018-JCM-GWF at Doc. #728 (minutes of August 5, 2015 hearing (granting the Review-Journal's motion to intervene and hearing argument on motion to dissolve protective order).

Consistent with this case law, the Proposed Intervenors should be permitted to intervene in this matter.

/ / /

/ / /

/ / /

/ / /

/ / /

MCLETCHIESHELL

ATTORNEYS AT LAW
701 EAST BRIDGER AVE., SUITE 520
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

## IV.     CONCLUSION

For the foregoing reasons, the Proposed Intervenors respectfully move to intervene in this matter, to be able to submit the attached Response to the Government's Protective Order.

DATED this 29th day of April, 2016.

MARGARET A MCLETCHIE, Nevada Bar No. 10931
ALINA M. SHELL, Nevada Bar No. 11711
**MCLETCHIE SHELL LLC**
701 East Bridger Ave., Suite 520
Las Vegas, Nevada 89101
(702) 728-5300
maggie@nvlitigation.com
*Counsel for Intervenors*

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th April, 2016, I did serve, via United States Mail, first class postage fully pre-paid, a true and correct copy of the above and foregoing MOTION TO INTERVENE addressed to:

Joel F. Hansen
Hansen Rasmussen
1835 Village Center Circle
Las Vegas, NV 89134
*Attorney for Defendant (1) Cliven D. Bundy*

Angela H. Dows
Premier Legal Group
1333 North Buffalo Drive, Suite 210
Las Vegas, NV 89128
*Attorney for Defendant (2) Ryan C. Bundy*

Daniel Hill
Wolf, Rifkin, Shapiro & Schulman
3556 E. Russel Road, Second Floor
Las Vegas, NV 89120
*Attorney for Defendant (3) Ammon E. Bundy*

Ryan Norwood, Shari L. Kaufman, and William C. Carrico
Federal Public Defenders
411 E. Bonneville Avenue
Las Vegas, NV 89101
*Attorneys for Defendant (4) Ryan W. Payne*

Chris T Rasmussen
Rasmussen & Kang LLC.
330 S Third St., Suite 1010
Las Vegas, NV 89101
and
Joshua Tomsheck
Hofland & Tomsheck
228 South Fourth Street
Las Vegas, NV 89101
*Attorneys for Defendant (5) Peter T. Santilli, Jr.*

/ / /

/ / /

Lucas Gaffney
Oronoz, Ericsson & Gaffney LLC
1050 Indigo Drive, Suite 120
Las Vegas, NV 89145
*Attorney for Defendant (6) Melvin D. Bundy*

Cal J. Potter, III
Potter Law Offices
1125 Shadow Ln.
Las Vegas, NV 89102
*Attorney for Defendant (7) David H. Bundy*

Mace J Yampolsky
Mace Yampolsky, LTD
625 S. Sixth St.
Las Vegas, NV 89101
*Attorney for Defendant (8) Brian D. Cavalier*

Dennis Matthew Lay
Nguyen & Lay
732 S. Sixth St., Ste. 102
Las Vegas, NV 89101
*Attorney for Defendant (9) Blaine Cooper*

Brian James Smith
Law Office of Brian J. Smith, Ltd.
9525 Hillwood Drive, Suite 190
Las Vegas, NV 89134
*Attorney for Defendant (10) Gerald A. Delemus*

Jess R. Marchese
Law Office of Jess R. Marchese
601 South Las Vegas Boulevard
Las Vegas, NV 89101
*Attorney for Defendant (11) Eric J. Parker*

Craig W Drummond
Drummond Law Firm, P.C.
228 South Fourth St., First Floor
Las Vegas, NV 89101
*Attorney for Defendant (12) O. Scott Drexler*

/ / /

/ / /

7

Shawn R Perez
Law Office Of Shawn R. Perez
626 South Third Street
Las Vegas, NV 89101
*Attorney for Defendant (13) Richard R. Lovelien*

Richard E Tanasi
601 South Seventh St., Second Floor
Las Vegas, NV 89101
*Attorney for Defendant (14) Steven A. Stewart*

Julian R Gregory
Law Office of Julian Gregory, L.L.C.
324 S. Third St., Ste. 200
Las Vegas, NV 89101
*Attorney for Defendant (15) Todd C. Engel*

Terrence M Jackson
Law Office of Terrence M. Jackson
624 South Ninth Street
Las Vegas, NV 89101
*Attorney for Defendant (16) Gregory P. Burleson*

Andrea Lee Luem
Law Offices of Andrea L Luem
499 South Fourth St., Ste. 280
Las Vegas, NV 89101
*Attorney for Defendant (17) Joseph D. O'Shaughnessy*

Chris Arabia
601 South Tenth St.
Las Vegas, NV 89101
*Attorney for Defendant (18) Micah L. McGuire*

Kristine M Kuzemka
Kuzemka Law Group
9345 W. Sunset Road, Suite 100
Las Vegas, NV 89148
*Attorney for Defendant (19) Jason D. Woods*

/ / /

/ / /

/ / /

8

Erin M Creegan, Nicholas D Dickinson, and Steven W. Myhre
United States Attorney District of Nevada
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, NV 89101
     and
Nadia Janjua Ahmed
U.S. Attorney's Office
333 Las Vegas Blvd South
Las Vegas, NV 89101
*Attorneys for Plaintiff U.S.A.*

An Employee of MCLETCHIE SHELL LLC

# EXHIBIT A

# EXHIBIT A

MARGARET A MCLETCHIE, Nevada Bar No. 10931
ALINA M. SHELL, Nevada Bar No. 11711
**MCLETCHIE SHELL LLC**
701 East Bridger Ave., Suite 520
Las Vegas, Nevada 89101
(702) 728-5300
maggie@nvlitigation.com
*Counsel for Intervenors*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>vs.<br><br>CLIVEN D. BUNDY, et al.,<br>                    Defendants. | Case No. :    2:16-cr-00046-GMN-PAL<br><br>**INTERVENORS' MEMORANDUM IN<br>OPPOSITION TO THE GOVERNMENT'S<br>PROPOSED PROTECTIVE ORDER** |

Intervenors Las Vegas Review-Journal and Battle Born Media hereby submit this motion in opposition to the government's proposed protective order. This motion is supported by Federal Rule of Criminal Procedure 16(d)(1), the attached memorandum of points and authorities, together with any oral argument the Court may require in this matter.

DATED this 29th day of April, 2016.

MARGARET A MCLETCHIE, Nevada Bar No. 10931
ALINA M. SHELL, Nevada Bar No. 11711
**MCLETCHIE SHELL LLC**
701 East Bridger Ave., Suite 520
Las Vegas, Nevada 89101
(702) 728-5300
maggie@nvlitigation.com
*Counsel for Intervenors*

1

MCLETCHIE SHELL

ATTORNEYS AT LAW
701 EAST BRIDGER AVE., SUITE 520
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This case, and the underlying facts, are a matter of keen public interest and have been widely covered in local and national media. As described in the government's superseding indictment, this case has its roots in a decades-long dispute between defendant Cliven Bundy and the Bureau of Land Management ("BLM") over cattle grazing fees and the use of public lands. (*See* Doc. #27 at pp.8:9-9:14.) On April 12, 2014, after the BLM and rangers with the National Park Service ("NPS") began impounding Mr. Bundy's cattle, Mr. Bundy and approximately several hundred individuals gathered in Bunkerville, Nevada to protest the BLM's actions. (*Id.* at pp.2:21-3:12.) These events garnered extensive coverage by local and national media. The Intervenors have extensively covered the activities of Mr. Bundy and several other defendants in this matter, as detailed in their Motion to Intervene.

Following its March, 2016 superseding indictment, on April 18, 2016, the government filed a proposed complex case schedule. (*See* Doc. #270.) There, the government indicated that, "[o]ut of concern for witness safety and security," it intended to seek a protective order to prevent the dissemination of discovery in this matter. (*Id.* at p.16:12.) The government provided no specific facts or argument to support this request. In its subsequent proposed protective order, the government suggests that the protective order should apply to all "materials and documents created or written by the government, or obtained by the government through warrants or court order." (Exhibit ("Exh.") A (proposed protective order).) Again, the government fails to articulate good cause for the restrictions it proposes, contrary to Federal Rule of Criminal Procedure 16(d)(1), which requires the party moving for a protective order to establish good cause. *See, e.g., United States v. Benzer*, 2015 WL 9200365 at *5 (D. Nev. 2015) ("The party seeking the protective order bears the burden of showing good cause.") (citations omitted).

This overbroad and unsupported protective order impedes the rights of Intervenors and other news outlets to report on a case of local and national importance. One of the most critical aspects of news reporting is to inform the public of justice being carried out in the

courts. In this regard, the press is vital to the health of a democracy. *See, e.g., Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978). This right is anchored in the value of keeping "a watchful eye on the workings of public agencies," and in publishing "information concerning the operation of government." *Id.* at 597-98. "In short, justice must not only be done, it must be seen to be done." *United States v. Rosen*, 487 F. Supp. 2d 703, 716 (E.D. Va. 2007).

The media and the public do not have an absolute right to access discovery materials, nor do they have the same right to access discovery materials as they do to access court filings. Accordingly, some courts have held that protective orders are not subject to the same scrutiny as other prior restraints. Nevertheless, courts must still consider the First Amendment implications when evaluating whether good cause exists. *United States v. Smith*, 985 F. Supp. 2d 506, 523 (S.D.N.Y. 2013); *see also Benzer*, 2015 WL 9200365, at *5 (citing *Smith*) ("examining a protective order under the framework of Rule 16(d) does not eliminate the First Amendment as a relevant concern, but instead confines the First Amendment scrutiny to the framework of Rule 16(d)'s good cause requirement").

Here, the government's proposed protective order totally thwarts the public's right to information about this case by protecting virtually all documents produced by the government from disclosure. It does not comport with either Rule 16(d) or the First Amendment. Thus, Intervenors respectfully request this Court deny the government's request for its proposed blanket protective order. The public's First Amendment right to observe and understand the investigation in this case deserves greater respect than this proposed protective order provides. Indeed, the proposed order is especially inappropriate in this case, where defendants have also cited First Amendment implications with regard to the underlying facts.

## II.     RELEVANT FACTUAL AND PROCEDURAL HISTORY

### A.     <u>Indictment</u>

On March 2, 2016, the United States Attorney for the District of Nevada filed a superseding criminal indictment charging nineteen defendants with sixteen counts related to

the April 12, 2014 protest in Bunkerville. (*See* Doc. #27 (Superseding Criminal Indictment)). On March 24, 2016, the Court entered an order directing the parties to meet and confer to discuss whether this case should be deemed complex. (*See* Doc. #198.)

## B.   The Government's Proposed Complex Case Schedule

The Court granted the parties until April 18, 2016 in which to file a stipulated proposed complex schedule; if the parties were unable to agree regarding a case schedule or disagreed as to whether the case should be designated complex, the Court directed the parties to submit a proposed scheduling order. (*See* Doc. # 198.) In its proposed complex case schedule, the government argued the Court should deem this case complex because of the volume of evidence and information to be disclosed, the number of defendants, the volume of social media, the number and variety of recorded evidence obtained from approximately 100 law enforcement officers from several agencies involved in the events giving rise to the indictment, and the number of recordings obtained from news media, filmmakers, and online journalists. (Doc. #270 at pp. 3:15-4:22.) By its own estimate, the government has apparently spent "hundreds of hours reviewing, analyzing and organizing" 1.4 terabytes of evidence. (*Id.* at pp. 4:24-5:3.) Additionally, the government indicates it has obtained "hundreds of thousands of pages" of documents and/or communications produced by Facebook pursuant to a court-authorized search warrant, and also has "dozens of search warrant applications and supporting affidavits." (*Id.* at pp. 6:8-7:1.)

The government proposed producing discovery in three phases:

**Phase I**

- Search warrants, applications, and affidavits relating to the search and seizure of documents, property, or things.
- Statements, documents, and objects (including audio or video recordings) the government is required to disclose pursuant to Federal Rules of Criminal Procedure 16(a)(1)(A)-(B) and D.

**Phase II**

- Documents and objects the government is required to produce pursuant to Fed. R.

MCLETCHIE SHELL

ATTORNEYS AT LAW
701 EAST BRIDGER AVE., SUITE 520
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

1    Crim. P. 16(a)(1)(E).

2    **Phase III**

3    - Police reports and indictments relating to the charges in the superseding indictment,

4    except for reports, memoranda, or other documents prepared by the government

5    relating to interviews of prospective witnesses.

6    (Doc. #270 at p.14:5-18.)

7    The government further asserted that that "concerns for witness safety and security"

8    warrant a protective order to prevent "the further disclosure or dissemination of evidence

9    produced in this case." (*Id.* at p.16:12-15.) Aside from its vague statement about "witness

10   safety," the government provided no examples of how any witnesses in this case would be

11   adversely affected by the free dissemination of the discovery in this case.

12   **C.     The Government's Proposed Protective Order**

13   On April 26, 2016, the Court entered an order designating this case complex. (*See*

14   Doc. #321.) The Court ordered the parties to meet and confer regarding whether they could

15   agree on a proposed form of stipulated protective order. (*Id.*) If the parties could not reach

16   consensus, the Court directed the parties to either file separate proposed protective orders, or

17   file memoranda opposing entry of a protective order. (*Id.*)

18   The government has circulated a proposed protective order to the defendants. (*See*

19   Exh. A.) As in its proposed complex case schedule, the government fails to articulate any

20   good cause necessitating a protective order. In its proposed protective order, the government

21   proposes that all "materials and documents created or written by the government, or obtained

22   by the government through warrants or court orders" will be designated "protected." (Exh.

23   A at p.2:18-20.) The proposed protective order carves out a small exception for discovery

24   the defendants might obtain from open sources such as social media and news accounts. (*Id.*

25   at p.2:20-23.) Otherwise, it appears that everything else the government believes it created

26   or obtained should be subject to protection. This is the very definition of "overbroad."

27   Importantly, the proposed protective order unduly narrows the universe of

28   individuals who will have access to discovery documents that are of vital public concern.

1  Under the government's proposal, only a defendant, defense counsel, defense counsel's
2  employees, and persons deemed necessary to aid defense counsel in investigating and
3  preparing a defendant case would have access to the documents. (Exh. A at p.2:5-10.)

4  **III.    STANDING**

5        As detailed in the Motion to Intervene, the Review-Journal is a daily newspaper,
6  published in Las Vegas, Nevada, and is the largest newspaper in Nevada, and Battle Born
7  Media publishes several weekly newspapers in rural Nevada. Thus, the Intervenors carry on
8  the constitutionally-protected business of reporting the news. Intervenors have standing to
9  pursue this motion, designed to seek access to court documents.

10        "[B]ecause the First Amendment implicitly guarantees the right to access criminal
11  trials, motions to intervene are procedurally proper when the public or press seeks to
12  intervene for the limited purpose of accessing a criminal proceeding or court documents."
13  *Stephens Media, LLC v. Eighth Judicial Dist. Court of State ex rel. Cty. of Clark*, 125 Nev.
14  849, 859, 221 P.3d 1240, 1247 (2009) (citing *In re Associated Press*, 162 F.3d 503, 507 (7th
15  Cir. 1998); *United States v. Brooklier*, 685 F.2d 1162, 1168 (9th Cir. 1982); *United States v.
16  Criden*, 675 F.2d 550, 559 (3d Cir. 1982)); *see also United States v. James*, 663 F. Supp. 2d
17  1018, 1020 (W.D. Wash. 2009) ("Domestic press outlets unquestionably have standing to
18  challenge access to court documents.") (citation omitted).

19        The United States Supreme Court has held that where a court contemplates
20  excluding the press or the public from access to hearings or records in a criminal trial, "[…]
21  representatives of the press and general public 'must be given an opportunity to be heard on
22  the question of their exclusion.'" *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596,
23  609, n. 25 (1982) (citing *Gannett Co. v. DePasquale*, 443 U.S., 368, 401 (Powell, J.,
24  concurring)).

25  **IV.    ARGUMENT**

26        When the government seeks to deprive the public of access in a criminal
27  prosecution through a protective order, Federal Rule of Criminal Procedure 16(d)(1) requires
28  the government to establish good cause and articulate with specificity the reasons such a

MCLETCHIESHELL

ATTORNEYS AT LAW
701 EAST BRIDGER AVE., SUITE 520
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

1  drastic measure is necessary. Before ordering a hearing or document be sealed, the court

2  faced with the motion must make specific findings outlining the need for protection of some

3  important right and the absence of any less restrictive means of protecting that right. In doing

4  so, the First Amendment rights of access by the press and the public must be considered.

5       In this case, the government has failed to articulate good cause for denying the

6  public access to information about this prosecution. Instead, it seeks to designate essentially

7  all of the discovery in this case as "protected," and fails to provide even the most basic

8  procedural mechanisms for the defendants or the public to challenge its decisions about what

9  should and should not be withheld from the public.

10      **A.**   **Legal Standard**

11       The public's right to inspect certain criminal court records is protected by the First

12  Amendment. *See, e.g., Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501,

13  511-12 (1984) (transcripts of jury voir dire); *see also Associated Press v. Dist. Ct.*, 705 F.2d

14  1143, 1145 (9th Cir. 1983) (various pretrial documents); *In re N.Y. Times Co.,* 585 F. Supp.

15  2d 83, 89 (D.D.C., 2008) (finding First Amendment and common law right to search warrant

16  materials); *Oregonian Publ'g Co. v. U.S. Dist. Court*, 920 F.2d 1462, 1466 (9th Cir.1990)

17  (recognizing First Amendment right of access to plea agreements); *accord United States v.*

18  *Loughner*, 769 F. Supp. 2d 1188, 1191 (D. Ariz. 2011) (finding a qualified right of access to

19  warrant materials). "The first amendment right of access is, in part, founded on the societal

20  interests in public awareness of, and its understanding and confidence in, the judicial

21  system." *United States v. Chagra*, 701 F.2d 354, 363 (5th Cir. 1983) (internal citation

22  omitted).

23       This right of access is also rooted in the common law. "[C]ourts of this country

24  recognize a general right to inspect and copy public records and documents, including

25  judicial records and documents." *Nixon v. Warner Communications*, 435 U.S. 589, 597

26  (1978). The common law right of access is based on the need for courts to "have a measure

27  of accountability and for the public to have confidence in the administration of justice."

28  *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995); *see also Stephens Media LLC*

MCLETCHIESHELL

ATTORNEYS AT LAW
701 EAST BRIDGER AVE., SUITE 520
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

1  *v. Eighth Judicial District Court*, 125 Nev. 849, 860, 221 P.3d 1240, 1248 (Nev. 2009)

2  ("Public access inherently promotes public scrutiny of the judicial process, which enhances

3  both the fairness of criminal proceedings and the public confidence in the criminal justice

4  system."). "The political branches of government claim legitimacy by election, judges by

5  reason. Any step that withdraws an element of the judicial process from public view makes

6  the ensuing decision look more like fiat, which requires compelling justification." *Union Oil*

7  *Co. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000).

8  Of note here, while the United State Supreme Court has not considered the question,

9  courts have held the First Amendment dictates that the public has a presumed right to access

10  search warrants. *See, e.g., In re Search Warrant for Secretarial Area Outside Office of Gunn*,

11  855 F.2d 569, 573-75 (8th Cir. 1988). In *Office of Gunn*, the Eighth Circuit explained that

12  "even though a search warrant is not part of the criminal trial itself, like voir dire, a search

13  warrant is certainly an integral part of a criminal prosecution" and "[s]earch warrants are at

14  the center of pre-trial suppression hearings, and suppression issues often determine the

15  outcome of criminal prosecutions." *Id.* at 573.

16  This presumed right can be overcome only by an overriding right or interest "based

17  on findings that closure is essential to preserve higher values and is narrowly tailored to serve

18  that interest." *Id.* "The interest is to be articulated along with findings specific enough that a

19  reviewing court can determine whether the closure order was properly entered." *Id.* Any

20  order denying access to documents and proceedings in this case must satisfy both the

21  procedural and substantive requirements of the First Amendment. *Oregonian Pub. Co. v.*

22  *U.S. Dist. Court for Dist. of Oregon*, 920 F.2d 1462, 1466 (9th Cir. 1990). The Ninth Circuit

23  has articulated a two-part test to determine whether the procedural requirements for depriving

24  the public of access to criminal proceedings or documents has been met:

25  (1) those excluded from the proceeding must be afforded a reasonable
26  opportunity to state their objections; and (2) the reasons supporting closure
    must be articulated in findings. *See Brooklier*, 685 F.2d at 1167–68; *In re*
27  *Washington Post*, 807 F.2d at 390–91 (test applicable to sealed records of a
    plea hearing). An order of closure should include a discussion of the
28  interests at stake, the applicable constitutional principles and the reasons for

8

1      rejecting alternatives, if any, to closure. *See Brooklier,* 685 F.2d at 1168.

2 *Id.; see also Phoenix Newspapers, Inc. v. U.S. Dist. Court for Dist. of Arizona,* 156 F.3d 940,

3 949 (9th Cir. 1998) (". . . if a court contemplates sealing a document or transcript, it must

4 provide sufficient notice to the public and press to afford them the opportunity to object or

5 offer alternatives").

6      The Supreme Court has held that criminal proceedings and court records may be

7 closed to the public only if three requirements are met: (1) the closure serves a compelling

8 interest; (2) there is a substantial probability that, in the absence of closure, this compelling

9 interest would be harmed; and (3) there are no alternatives to closure that would adequately

10 protect the compelling interest. *Press-Enterprise Co. v. Superior Court of California for*

11 *Riverside Cty.*, 478 U.S. 1, 13-14 (1986) ("*Press-Enterprise II*"); *accord Oregonian*

12 *Publishing Co.*, 920 F.2d at 1466. Admittedly, the media and the public do not have an

13 absolute right to access nor the same right to access discovery materials as they do to access

14 court filings. However, at the very least, a court must consider the First Amendment

15 implications when evaluating whether good cause exists for a proposed protective order.

16 *United States v. Smith*, 985 F.Supp.2d 506, 523(S.D. N.Y. 2013); *see also Benzer,* 2015

17 WL2015 WL 9200365, at *5 (citing *Smith*) (examining a protective order under the

18 framework of Rule 16(d) does not eliminate the First Amendment as a relevant concern, but

19 instead confines the First Amendment scrutiny to the framework of Rule 16(d)'s good cause

20 requirement.").[1]

21      Reflecting the presumption in favor of access, an order precluding the parties or

22 other persons from disclosing discovery materials to the public, the press, or any other third

23 party must be supported by good cause. *See* Fed. R. Crim. P. 16(d)(1). The party seeking the

24

---

25 [1] Unlike here, the parties in *Benzer* entered into two stipulated protective orders. *See Benzer*,

26 2015 WL 9200365 at *5. As the court noted, some courts have held that "[w]hile courts generally make a finding of good cause before issuing a protective order, the court need not

27 do so where the parties stipulate to the order." *Id.* (citing *In re Roman Catholic Archbishop of Portland Oregon*, 661 F.3d 417, 424 (9th Cir 2011)). Thus, the government in that case

28 did not bear the same burden it does here of establishing good cause for the entry of a protective order.

MCLETCHIE SHELL
ATTORNEYS AT LAW
701 EAST BRIDGER AVE., SUITE 520
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

protective order bears the burden of establishing that. *United States v. Smith*, 985 F. Supp. 2d 506, 512 (S.D. N.Y. 2013). As the court in *United States v. Loughner* explained, the party seeking to prohibit access to discovery

> must show that non-disclosure "is strictly and inescapably necessary" in order to protect the Defendant's fair trial guarantees or some other compelling interest. [*United States v.] Brooklier*, 685 F.2d [1162,] 1167 [(9th Cir. 1982)] (quoting *Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 441, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979)). This is a high bar, surmountable only by establishing a substantial probability that: (1) disclosure will cause irreparable harm to the Defendant's fair trial rights or some other compelling interest; (2) there is no alternative to continued secrecy that will adequately protect the right or interest; and (3) non-disclosure will effectively protect against the perceived harm. *Oregonian Publ'g Co.*, 920 F.2d at 1466. *See also United States v. Kaczynski*, 154 F.3d 930, 932 (9th Cir.1998) (overcoming qualified right of access under the First Amendment requires compelling showing beyond that necessary to overcome common law right of access) (Reinhardt, J., concurring).

*United States v. Loughner*, 769 F. Supp. 2d 1188, 1195 (D. Ariz. 2011); *cf. Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003). To meet its burden, the government must also demonstrate harms—with specificity.

"The party opposing disclosure has the burden of proving good cause, which requires a showing that specific prejudice or harm will result if the protective order is not granted." *Foltz*, 331 F.35 at 1130. A party seeking a protective order must show "that disclosure will result in a clearly defined, specific and serious injury." *Smith*, 585 F. Supp. 2d at 523 (quoting *In re Terrorist Attacks on September 11, 2001*, 454 F.Supp.2d 220, 222 (S.D.N.Y.2006)) (other citation omitted); *cf. Deford v. Schmid Prods. Co.*, 120 F.R.D. 648, 653 (D. Md. 1987) (requiring party requesting a protective order to provide "specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of potential harm"); *see also United States v. Carriles*, 654 F.Supp.2d 557, 565–66 (W.D. Tex. 2009) ("As the party seeking a protective order, the Government bears the burden of showing good cause."); *c.f., Gambale v. Deutsche Bank AG*, 377 F.3d 133, 142 (2d Cir.2004) ("The party seeking a protective order [under Fed.R.Civ.P.

26(c)] has the burden of showing that good cause exists for issuance of that order.") (internal quotation marks and brackets omitted). Finally, the government must demonstrate that the need to protect against any specific potential harm outweighs the public's right of access. *See In re Roman Catholic Church*, 661 F.3d at 424 (quotation omitted). Since the government has not specified any specific harm, it cannot meet this burden.

**B.    The Government Has Not Articulated Good Cause for the Issuance of a Protective Order.**

In this case, the government has abjectly failed to comport with the requirements. It has not met, and cannot meet, its burden of establishing good cause exists to subject virtually all of the discovery in this case to a cloak of secrecy.

**1.    The Government Has Not Met Its Burden of Establishing That Phase I Discovery Merits Protection.**

As discussed above, the documents the government has indicated the discovery which would be produced in Phase I includes largely warrants and the responsive documents—social media, including Facebook posts, messages, audio, and YouTube videos.

These documents are critical to informing the public's understanding of the criminal investigation in this case. The government indicated in court on April 22, 2016 that the warrants were being unsealed, so it is unclear why they would warrant protection. Additionally, at least one state court has found a right of public access to search warrants under its state constitution. *See Associated Press v. Montana*, 250 Mont. 299, 820 P.2d 421, 423 (1991) (right of public to inspect affidavits in support of warrants guaranteed by Article II, section 9 of Montana constitution). And although most of the federal cases focus on access issues during the investigatory or pre-indictment phase, one federal court of appeals has held a qualified First Amendment right to inspect search warrants is triggered where, as here, the warrants have already been executed. *See In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 573 (8th Cir.1988); *accord Loughner*, 769 F. Supp. 2d at 1193.

With regard to the responsive documents and audio/video recordings, since it appears that they were primarily posted on Facebook and YouTube, the responsive

11

documents likely also largely consist of documents that are already public. Thus, government's proposal to designate the materials it obtained from Facebook and YouTube "protected" is flawed in two fundamental respects. Because the protective order is so vague and overbroad, it is impossible to discern to what extent, if any, the discovery the government obtained from Facebook and YouTube pursuant to search warrants differs from what was already available to the public. Absent some demonstration that these items are different, and that there is a specific, good cause reason for preventing the public from viewing these items, the government cannot force them under the veil of a protective order.

Further, because these materials are likely already public, the cat has already been let out of the bag, and the government cannot try to force it back in. *Cf. Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 n. 11 (2d Cir.2004) ("Once the cat is out of the bag, the ball game is over.") (quoting *Calabrian Co. v.. Bangkok Bank, Ltd.*, 55 F.R.D. 82 (S.D.N.Y.1972)). To the extent the government believes that it can, in essence, retroactively protect publicly available information, it cannot do so absent a demonstration that—*at a minimum*—good cause exists to justify the retroactive designation. *Cf. Rambus, Inc. v. Infineon Technologies AG*, 2005 WL 1081337, at *3 (E.D. Va. 2005) (finding court's use of documents in open court while deciding a dispositive motion subjects the documents to the First Amendment right of access and effectively strips them of any protection under the protective order).[2]

The government also indicated at the April 22 hearing that it obtained Facebook Messenger communications pursuant to a search warrant issued to Facebook. Although Facebook Messenger communications are generally not publicly accessible, the government still has not articulated a good cause reason as to why each individual communication must

---

[2] The government has also filed memoranda with the Court that include photographs and video images, many of which were likely produced in the course of the government's investigations. (*See* Docs. #110, 127, 128, 130, 133, and 281.) These public disclosures weigh heavily against the government's argument for a protective order. *See Pfizer, Inc. v. Teva Pharmaceuticals USA, Inc.*, 2010 WL 2710566 at *4 (D. N.J. 2010) (matters already made public "will not be sealed after the fact absent extraordinary circumstances").

MCLETCHIE SHELL

ATTORNEYS AT LAW
701 EAST BRIDGER AVE, SUITE 520
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

1   be subjected to the blanket protection order. Further, the government has failed to address

2   whether redaction of identifying information would reasonably protect the interest of

3   prospective witnesses.

### 2.   The Government Has Not Met Its Burden of Establishing That Phase II Discovery Merits Protection.

Phase II is essentially a catch-all category—"[d]ocuments and objects the government is required to produce pursuant to Fed. R. Crim. P. 16(a)(1)(E).[3]" (Doc. #270 at p.14:12-13.) As such, the government has not met its burden of showing that all the documents that fall within this category merit protection. As detailed above, specificity is required. *See, e.g., Deford v. Schmid Prods. Co.*, 120 F.R.D. 648, 653 (D. Md. 1987) (requiring party requesting a protective order to provide "specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of potential harm").

### 3.   The Government Has Not Met Its Burden of Establishing That Phase III Discovery Merits Protection.

The government's proposed Phase III of discovery would include disclosure of police reports and indictments related to interviews of prospective witnesses. (Doc. #270 at p.14:16-18.) Again, the government has failed to articulate any sufficient basis for the broad protection it is seeking. The government has offered no specific assertion that any witnesses would be harmed by permitting the public access to these materials. Instead, it makes the generalized assertion that the protective order is necessary because of its concerns for "witness safety and security." (Doc. #270 at p.16:12.) This does not satisfy the government's burden of establishing good cause. *See Deford v. Schmid Prods. Co.*, 120 F.R.D. at 653.

Although ensuring witness safety is undoubtedly a compelling government interest,

---

[3] Fed. R. Crim. P. 16(a)(1)(E) mandates that "upon a defendant's request, the government must permit a defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense;(ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant."

MCLETCHIESHELL

ATTORNEYS AT LAW
701 EASTBRIDGER AVE, SUITE 520
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

1  the government has failed to provide any proof that, absent the entry of a protective order,
2  any particular witness or witnesses' safety would be endangered. Perhaps most critically, the
3  government has failed to consider alternatives—such as redacting personal identifying
4  information—which would ensure witness safety without infringing on the public's First
5  Amendment rights.

6  **C.    The Protective Order Lacks Appropriate Safeguards.**

7       The government's proposed protective order does not contain any procedural
8  mechanisms whatsoever to ensure that materials that should not be protected are not. Instead,
9  as discussed above, it entirely prohibits disclosure of every single document produced by the
10 government to defendants, their counsel, and persons working for their counsel. Including
11 procedural mechanisms to allow for protection where needed, to provide access where
12 appropriate, and to ensure the public and the media know categories of information are
13 hidden from public view would further the purposes of Rule 16. Additionally, the proposed
14 protective order lacks many aspects that would protect the due process rights of the
15 defendants and the public's right of access, such as procedural guidelines for designating
16 documents confidential.

17      **1.    The Protective Order Should Require Redaction Where Feasible.**

18      As noted above, any alleged risk to any individual prospective witness could be
19 easily eliminated through redaction of identifying information such as names, Social Security
20 numbers, location, and other identifying information.

21      Additionally, the protective order should provide defendants the ability to disclose
22 the contents of documents the government has designated protected. The court in *Benzer*, in
23 denying intervenor Review-Journal's motion to dissolve the two stipulated protective orders
24 the parties entered into in that case, noted that the first of the two protective orders "not
25 preclude Defendants or their counsel from disclosing the contents of the Protected
26 Documents subject to that order, other than the personal identifying information contained
27 in those documents." *United States v. Benzer*, 2015 WL 9200365 at *7. The court also
28 provided the parties with the appropriate procedure to follow if any of the defendant chose

MCLETCHIE SHELL

ATTORNEYS AT LAW
701 EAST BRIDGER AVE., SUITE 520
LAS VEGAS, NV 89101
(702) 728-5300 (T) / (702) 425-8220 (F)
WWW.NVLITIGATION.COM

to release documents covered by the protective order:

> Prior to disclosing or disseminating any Protected Documents covered by
> Stipulated Protective Order . . . , however, Defendants or their counsel shall
> notify the Government and provide it with copies of the proposed redactions
> to ensure that the documents have been properly redacted. In the event that
> the Government objects to production on the grounds that the redactions are
> not sufficient, the parties may move the Court for an order authorizing or
> prohibiting the disclosure of the documents as redacted.

*Id.* Such a procedure would also be appropriate in this case.

### 2.        The Government Should Maintain a Log.

A log should be created—and publicly filed—indicating what is being protected and why. The government has indicated that it is preparing an index of all the materials it is producing in this case, so any burden created by also requiring the government to maintain a log of protected documents and items would be minimal.

### 3.        There Should Be Meaningful Mechanisms to Challenge Confidentiality.

While the proposed protective order includes a brief statement that a defendant who wishes to challenge the government's designation of "protected" discovery must confer with the government "before seeking guidance from this Court," the protective order contains no meaningful mechanism for anyone (including the media) to challenge the government's designation of documents as "protected." Indeed, it improperly shifts the burden away from itself.

Any protective order should include a provision dictating the process by which a defendant can challenge the government's designation of "protected" documents. Such a procedure would, at a minimum include:

- **Notice and Opportunity to Challenge:** A party who contends that discovery the government has designated "protected" should have the ability to give the government written notice of the specific bases for challenging the government's designation. The government would then have some reasonable period of time—for example, ten days—to determine if the dispute can be resolved without this Court's

MCLETCHIESHELL

ATTORNEYS AT LAW
701 EAST BRIDGER AVE., SUITE 520
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

intervention, If not, the government should then be required to move the Court for an order confirming its "protected" designation.

- **A Provision Protecting Against Waiver:** The protective order should also protect parties against waiving any challenges to the government's designations. To that end, the protective order should include a provision that challenges to the government's "protected" designations can be made at any time, and cannot be waived by the failure of a party to raise the challenge at the time of the government's initial disclosure or designation.

### 4. The Existence of the Protective Order Should Not Mandate Sealing.

Stating that a defendant who wishes to challenge the government's designation of "protected" discovery must confer with the government "before seeking guidance from this Court" suggests that the party challenging confidentiality bears the burden. (Exh. A at pp. 2:24-3:2.) As noted above, this is not the case and, while less scrutiny may apply to discovery materials, the government bears a significant burden in establishing that documents should be filed under seal.

As the party who designated the discovery "protected," the government has the burden of making a particularized showing of good cause or compelling reasons to allow any documents it designated "protected" to remain protected. *See Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 475 (9th Cir. 1992) (". . . the party opposing modification should have the burden of showing "good cause" for continued protection"). The Protective Order should specify this burden to avoid conflating the standard for discovery materials with this standard.

## V.    CONCLUSION

Especially in light of the nature of this case, and the public's longstanding interest in the individuals and ideas that have played out for over two years on the local and national stage, the overbroad protective order proposed by the government cannot be entered and, if an alternative is entered after good cause is demonstrated, this Court should enter a protective order that respects the public's right to learn about this case and observe the workings of

justice.  As the Ninth Circuit cautioned in *San Jose Mercury News Inc.*, blanket protective orders such as the one the government proposes are "are inherently subject to challenge and modification, as the party resisting disclosure generally has not made a particularized showing of good cause with respect to any individual document." *San Jose Mercury News Inc.*, 187 F.3d at 1103. The government has not made this showing.

DATED this 29th day of April, 2016.

MARGARET A MCLETCHIE, Nevada Bar No. 10931
ALINA M. SHELL, Nevada Bar No. 11711
**MCLETCHIE SHELL LLC**
701 East Bridger Ave., Suite 520
Las Vegas, Nevada 89101
(702) 728-5300
maggie@nvlitigation.com
*Counsel for Intervenors*

17

# EXHIBIT A

# EXHIBIT A

DANIEL G. BOGDEN
United States Attorney
STEVEN W. MYHRE
NICHOLAS D. DICKINSON
Assistant United States Attorneys
NADIA J. AHMED
ERIN M. CREEGAN
Special Assistant United States Attorneys
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada  89101
PHONE: (702) 388-6336
FAX: (702) 388-6698

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) 2:16-CR-00046-GMN-PAL |
| v. | ) PROPOSED PROTECTIVE ORDER |
| CLIVEN D. BUNDY,<br>RYAN C. BUNDY,<br>AMMON E. BUNDY,<br>RYAN W. PAYNE,<br>PETER T. SANTILLI,<br>MEL D. BUNDY,<br>DAVID H. BUNDY,<br>BRIAN D. CAVALIER,<br>BLAINE COOPER,<br>GERALD A. DELEMUS,<br>ERIC J. PARKER,<br>O. SCOTT DREXLER,<br>RICKY R. LOVELIEN,<br>STEVEN A. STEWART,<br>TODD C. ENGEL,<br>GREGORY P. BURLESON,<br>JOSEPH D. O'SHAUGHNESSY,<br>MICAH L. McGUIRE, and<br>JASON D. WOODS, | ) |
| Defendants. | ) |

1    Upon motion of the United States, the Court being advised as to the nature

2 of this case, and good cause being shown, it is hereby ORDERED that, pursuant to

3 Rule 16(d)(1) of the Federal Rules of Criminal Procedure, defense counsel may

4 provide copies of discovery only to the following individuals:

5    (1) The defendants in this case;

6    (2) Persons employed by the attorney of record who are necessary to assist

7 counsel of record in preparation for trial or other proceedings in this case;

8 and

9    (3) Persons who defense counsel deems necessary to further legitimate

10 investigation and preparation of this case.

11    IT IS FURTHER ORDERED that defense counsel shall provide a copy of

12 this Protective Order to any person above who receives copies of discovery.

13    IT IS FURTHER ORDERED that any person above who receives copies of

14 discovery from defense counsel shall use the discovery only to assist the defense in

15 the investigation and preparation of this case, and shall not reproduce or

16 disseminate the discovery material to any other person or entity.

17    IT IS FURTHER ORDERED that this Protective Order applies only to

18 materials and documents created or written by the government, or obtained by the

19 government through warrants or court orders. This Protective Order does not

20 restrict reproduction or dissemination of discovery materials the defense may

21 otherwise obtain through open sources (e.g., social media posts by the defendants

22 or others, news accounts related to the events in this case, etc.).

23    IT IS FURTHER ORDERED that if there is specific discovery material that

24

2

1   defense counsel believes should be an exception to this Protective Order, the

2   parties shall confer before seeking guidance from this Court. The parties shall

3   advise the Court by letter of any exceptions made to the Protective Order.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

3