1  DANIEL G. BOGDEN
   United States Attorney
2  STEVEN W. MYHRE
   NICHOLAS D. DICKINSON
3  Assistant United States Attorneys
   NADIA J. AHMED
4  ERIN M. CREEGAN
   Special Assistant United States Attorneys
5  501 Las Vegas Blvd. South, Suite 1100
   Las Vegas, Nevada  89101
6  PHONE: (702) 388-6336
   FAX: (702) 388-6698

7              **UNITED STATES DISTRICT COURT**
8                 **DISTRICT OF NEVADA**

9  UNITED STATES OF AMERICA,            )
                                        )
10           Plaintiff,                 )   2:16-CR-00046-GMN-PAL
                                        )
11     v.                               )   **GOVERNMENT'S RESPONSE IN
                                        )   OPPOSITION TO DEFENDANT
12  PETER T. SANTILLI,                  )   SANTILLI'S MOTION TO
                                        )   REVIEW DETENTION ORDER
13                                      )   (C.R. 324)**
                                        )
14           Defendant.                 )
   _____)

15

16        The United States, by and through the undersigned, respectfully submits

17  its Response in Opposition to Defendant Peter T. Santilli's ("Santilli's") Motion to

18  Review Detention Order (C.R. 324) (hereinafter "Motion" or "Motion to Revoke").

19  In his Motion, Santilli asks this Court to revoke United States Magistrate Judge

20  Papak's Detention Order of March 11, 2016, the order issuing from the District of

21  Oregon following a fully-adjudicated detention hearing and reflecting that Court's

22  finding that Santilli presented both a danger to the community and a risk of

23  nonappearance at future proceedings.   C.R. 142-1; attached at Exhibit "Ex." 1

24  (hereinafter also referred to as "Detention Order").

Having been charged with four counts of Section 924(c) violations, Santilli submits nothing in this Motion that rebuts the presumption of detention that attaches under the Bail Reform Act – a presumption that Magistrate Judge Papak found and applied appropriately.   Additionally, the government proffered overwhelming evidence at the detention hearing, showing that Santilli presented both a danger to the community and a risk of flight under the Section 3142(g) factors.   Santilli's Motion proffers no evidence to refute that showing.   Accordingly, the Motion to Revoke should be denied.

## BACKGROUND

On February 17, 2016, Santilli was charged by Indictment in Nevada with numerous crimes of violence in connection with his alleged participation in a conspiracy to use force, violence and firearms to assault and extort federal officers on April 12, 2014, near Bunkerville, Nevada.   The charges included assault with a deadly weapon on a federal law enforcement officer, threatening a federal law enforcement officer, obstruction of justice, extortion of federal officers, and use and brandish a firearm in relation to a crime of violence, and conspiracy to commit same, all in violation of Title 18, United States Code, Sections 111(a)(1) and (b), 115, 924(c), 1503, 1951 and 371, respectively.   A warrant for Santilli's arrest issued from the Indictment.

Before the return of the Nevada Indictment, which joined Santilli and four (4) other co-defendants, Santilli had been charged by Indictment in the District of Oregon, for felony violations arising from his alleged involvement in an armed takeover of the Malheur National Wildlife Refuge in Harney County, Oregon, in

and around January 2016.   Arrested on January 27, 2016, Santilli had been detained in Oregon pending trial on those charges at the time of the Nevada Indictment.

On February 29, 2016, the presiding Judge in the Oregon case, United States District Judge Anna Brown, considered the Oregon detention order and released Santilli on terms and conditions which included GPS monitoring and release to a community corrections center when space became available.   In so ordering, Judge Brown stated that she did not take into account the facts and circumstances surrounding the Nevada Indictment.   Government Opening Memorandum, C.R. 142-3; attached at Ex. 2 at 2.

Following Judge Brown's ruling, Santilli was held in custody in Oregon on the Nevada Indictment and arrest warrant.   His initial appearance and detention hearing on the Nevada Indictment was scheduled in Oregon for March 1, 2016. That hearing was continued to March 7.   In the interim, and on March 3, 2016, the Superseding Indictment in this case was returned in the District of Nevada, joining Santilli with 14 additional defendants, bringing the total number of joined defendants to 19.

The March 7 detention hearing in Oregon was continued a second time to March 11, 2016, and was presided over by United States Magistrate Judge Paul Papak.   At that hearing, the government and Santilli each proffered evidence and presented argument in support of their respective positions.   *See* Transcript of March 11 Hearing, Exhibit "Ex." 3.   Following the hearing, Judge Papak ordered Santilli detained, finding that no condition or combination of conditions could

reasonably assure the safety of the community or assure the appearance of the defendant at future proceedings. Ex. 1. Judge Papak later entered a transfer and commitment Order, transferring Santilli to Nevada to stand trial on the Nevada Superseding Indictment.  C.R. 142-10.

However, before Santilli was transported to Nevada and on March 22, 2016, Judge Brown held a hearing to determine whether to transfer five (5) of Santilli's co-defendants to Nevada pursuant to writs of habeas corpus *ad prosequendum* that issued from the Nevada Superseding Indictment, those 5 having been charged together with Santilli in Oregon (for the Malheur takeover) and Nevada (for the assault and extortion), all of them being detained in Oregon.  Following the hearing, Judge Brown entered an order transferring Santilli's five co-defendants to Nevada on the writs.  The Court's Order further directed the U.S. Marshal's Service to return Santilli and six other co-defendants from Nevada to the District of Oregon on or before April 25, 2016, in order that they might prepare for and stand trial in Oregon on the Oregon Indictment.

Pursuant to Judge Brown's Order, Santilli was transferred to the District of Nevada on April 13, 2016, and made his initial appearance on April 15, 2016. Santilli later sought, and received, a modified order of transport keeping him in Nevada until no later than May 19, 2016, to afford him time to prepare for his detention hearing.

Santilli filed this Motion on April 27, 2016, seeking to revoke Magistrate Judge Papak's Detention Order.  For the reasons explained below, the Motion should be denied.

**LEGAL STANDARD**

This Court reviews Judge Papak's Detention Order *de novo*. *United States v. Koenig*, 912 F.2d 1190, 1191 (9th Cir. 1990); *see also United States v. King*, 849 F.2d 485, 491 (11th Cir. 1988); *United States v. Maull*, 773 F.2d 1479, 1481 (8th Cir. 1985) (*en banc*); *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985). Accordingly, the Court may review the evidence presented to the Magistrate Judge and make its own independent determination. *Koenig*, 912 F.2d at 1193 ("clearly, the district court is not required to start over in every case, and proceed as if the magistrate's decision and findings did not exist…"). Or, it may take additional evidence and consider further argument. *Id.*

Under the Bail Reform Act, a charge of a violation of Title 18, United States Code, Section 924(c), provides a presumption, subject to rebuttal, that no condition or combination of conditions will reasonably assure the appearance of the defendant and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(B). The presumption "remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)." *See United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) (*quoting United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986)).

The government may proceed in a detention hearing by proffer or hearsay, as a defendant has no right to cross-examine adverse witnesses who have not been called to testify. *See United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986). "Neither the Ninth Circuit nor Congress intends the detention hearing to serve as a mini-trial on the ultimate question of guilt." *United States v. Bibbs*, 488 F. Supp.

5

1    925, 926 (N.D.Cal., 2007) (citing *Winsor* and overruling the objection to the

2    government's proffer at detention hearing).   Accordingly, the Court may "rely upon

3    investigatory descriptions of evidence (and similar hearsay) where the judicial

4    officer reasonably concludes that those descriptions, reports, and similar evidence,

5    in the particular circumstances of the hearing, are reliable."   *United States v.*

6    *Acevedo-Ramos*, 755 F.2d 203, 207 (9th Cir. 1985).

7

8                                            **ARGUMENT**

9           Given the *de novo* nature of the Court's review, the government adopts and

10   incorporates by reference all of the evidence proffered and arguments advanced in

11   the Oregon detention hearing.   Specifically, it references the "Government's

12   Memorandum In Support of Its Motion for Pretrial Detention" (hereinafter

13   "Opening Memorandum") (C.R. 142-2) (Attached at Exhibit 2), and the transcript of

14   the detention proceedings in Oregon (Transcript "Tr." at Ex. 3).

15          As demonstrated in its Opening Memorandum, the government showed

16   that Santilli failed to rebut the presumption of detention that attaches in this case

17   under the Bail Reform Act.   The Superseding Indictment and the evidence

18   proffered at his detention hearing show that he was a key player in the build-up,

19   organization and execution of an unprecedented, massive armed assault against

20   federal law enforcement officers near Bunkerville, Nevada, on April 12, 2014.

21          As set out in the Superseding Criminal Indictment, in which he is a named

22   as one of the principle organizers and leaders of a criminal enterprise, Santilli is

23   charged with knowingly joining a criminal conspiracy to threaten and use force

and violence against law enforcement officers in order to extort about 400 head of cattle from their care and custody.  Among other things, his prominent role in the conspiracy included:

(1)   recruiting gunmen to come to Bundy Ranch to show force against law enforcement officers, culminating in the assault on April 12;

(2)   threatening violence to law enforcement officers for doing their jobs;

(3)   leading an assault on a BLM convoy engaged in impoundment operations on April 9;

(4)   conducting reconnaissance of hotels where BLM officers and employees were staying during impoundment operations;

(5)   threatening the BLM SAC on April 11 and delivering an ultimatum to leave the Impoundment Site;

(6)   inciting Followers and gunmen during Bundy's Rally on the morning of April 12, moving to the Impoundment Site upon Bundy's command at the Rally, and participating in assault on the Impoundment Site on April 12 and the threats of force and violence against law enforcement officers.

As set out in the Opening Memorandum, the evidence against Santilli is overwhelming.  Photos, video/audio recordings, social media postings, admissions and witness testimony all chronical Santilli's involvement from as early as April 6, 2014 – when he told co-conspirator Blaine Cooper that he was going to have Cliven Bundy on his show to "drum up support" and then told Cooper "let's f---ing go. You ready?  Get a team of militia members."  He was a major player in bringing together the forces that assembled against the BLM at Bundy Ranch, participating directly

in the criminal conduct on the ground, leading to and culminating in the assault and extortion, to include:

- April 8: Using his blog to threaten violence to law enforcement officers and broadcast a call-to-arms to militia, specifically calling for people with guns to go to Nevada to "kick out the feds."

- April 9: Leading an ambush of a BLM convoy as it was leaving the field after conducting impoundment operations.

- April 9: Making numerous threats of force and violence against law enforcement officers and issuing at least three calls-to-arms to gunmen, calling for an armed confrontation with law enforcement officers.

- April 10 and 11: Conducting reconnaissance of hotels where BLM employees were staying while they were conducting impoundment operations.

- April 11: Threatening the SAC of the Impoundment with force and violence and issued an ultimatum to him, telling him there was going to be a confrontation and to leave before it occurred or else face arrest or injury.

- April 12: Inciting and encouraging others in the crowd at the Rally that preceded the assault, calling for the arrest of the Sheriff for being "unconstitutional."

- April 12: Moving from the Rally Site to the Impoundment Site for the purpose of forcing the BLM to release the impounded cattle; threatening law enforcement officers with force and violence.

Ex. 2 at 24 – 36.

Santilli's involvement in the conspiracy extended well beyond April 12, including his November 2015 voicemail message to the SAC, threatening that "his listeners will respond to Bundy Ranch if [the SAC] go[es] anywhere near it;" (Ex. 3 at 17-18) and his numerous podcasts where he vows to "continue the fight day and night" and proclaims Bundy Ranch as the model for the future. And, obviously, Santilli involved himself in the Malheur occupation leading to his charges in Oregon, all occurring after his alleged involvement in the assault and extortion at

Bundy Ranch.  All of this shows that Santilli is on a mission from which he will not be deterred – except by continued detention.

First, he contends that his conduct is protected by the First Amendment because he supposedly was a member of the media covering the dispute between the Bundy family and the government.  Mot. at 5.  Santilli is just wrong – both on the facts and the law.

There is nothing legally relevant about Santilli's status as a supposed member of the media.  Members of the media – self-proclaimed or not – are no more insulated from criminal prosecution than non-members when their words are used to commit crimes.  Here, among other things, Santilli is charged with using words to commit the crimes of threatening force and violence against federal law enforcement officers and inciting, encouraging, and aiding and abetting others to use guns and other force and violence against law enforcement officers.   Neither the First Amendment nor one's status as member of the media bars prosecution for those crimes.  *See United States v. Freeman,* 761 F.2d 549, 551 (9th Cir. 1985) (the First Amendment does not act as a bar to prosecution for federal crimes). Thus, there is nothing about Santilli's self-proclaimed status here that magically (or legally) gives him a "get out of jail card" at a detention hearing.

Further, as shown at the detention hearing, Santilli was not "covering the dispute between the Bundy family and [the government]" – he was a direct participant in the conspiracy to assault and extort.  As Magistrate Judge Papak

stated at the hearing: "[ ] you can't immunize your own conduct simply by later reporting on it." Ex. 3 at 49.

Second, Santilli rolls out the trope that his prosecution will have a "chilling effect on the media." Aside from the fact that he presents no evidence of that and cannot, he fails to explain how any of that is relevant to any issue regarding detention. The Superseding Indictment charges Santilli with committing federal crimes of violence – not with being in the media. Whether his prosecution chills or doesn't chill others is completely irrelevant to whether Santilli presents a danger to the community or is a risk of non-appearance based on his conduct.

Lastly, Santilli contends that he cannot view his video and audio podcasts while in pretrial detention and should, therefore, be released. Again, whether he can or cannot watch his videos does nothing to address whether he presents a danger to the community.

1    **WHEREFORE**, for all the foregoing reasons, the Court should deny the

2    Motion and enter an Order continuing Santilli's pretrial detention.

3        DATED this 3rd day of May, 2016.

4

5                                    Respectfully,

6                                    DANIEL G. BOGDEN
                                     United States Attorney

7                                         //s//

8                                    _____
                                     STEVEN W. MYHRE
9                                    NICHOLAS D. DICKINSON
                                     Assistant United States Attorneys
10                                   NADIA J. AHMED
                                     ERIN M. CREEGAN
11                                   Special Assistant United States Attorneys

12                                   Attorneys for the United States

13

14

15

16

17

18

19

20

21

22

23

24

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing **GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT SANTILLI'S MOTION TO REVIEW DETENTION ORDER** was served upon counsel of record, via Electronic Case Filing (ECF).

Dated this 3rd day of May, 2016.

*/s/ Steven W. Myhre*
STEVEN W. MYHRE
Assistant United States Attorney

12