CHRIS T. RASMUSSEN, ESQ.
Nevada Bar. No. 7149
RASMUSSEN & KANG, LLC.
330 South Third Suite 1010
Las Vegas, NV 89101
(702) 464-6007
chris@rasmussenkang.com
Counsel for Peter Santilli

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

UNITED STATES OF AMERICA,        )
                                 )        CASE NO. 2:16-CR-00046-GMN-PAL
        Plaintiff,               )
                                 )
        vs.                      )
                                 )
PETER T. SANTILLI,               )
                                 )
        Defendant,               )
_____ )

**REPLY TO GOVERNMENT'S RESPONSE IN OPPOSITION TO SANTILLI'S MOTION FOR REVIEW OF THE DETENTION ORDER WITH ATTACHED EXHIBITS**

Defendant PETER T. SANTILLI, by and through his counsel Chris T. Rasmussen, Esq. submits the following Reply.

Dated this 4th day of May, 2016

Respectfully Submitted,

RASMUSSEN & KANG, LLC.

/s/ Chris T. Rasmussen

_____

Chris T. Rasmussen, Esq.

## MEMORANDUM OF POINTS AND AUTHORITIES

## The Government Unjustly Discounts Santilli's Role In The Independent Media In

## Previous Detention Hearings To Suggest He Is A Danger

Throughout the litigation in this case the government has went out of their way to minimize or diminish Santilli's role in the media.  They claim he merely runs a blog.  The Department of Justice has specific guidelines regarding the prosecution, gathering of evidence and arresting members of the media.

**9-13.400 Obtaining Information From, or Records of, Members of the News Media; and Questioning, Arresting, or Charging Members of the News Media.**

In January 2015, the Attorney General issued an updated policy, reflected in 28 C.F.R. 50.10, regarding obtaining information from, or records of, members of the news media; and regarding questioning, arresting, or charging members of the news media. The updated policy is intended to ensure that, in determining whether to seek information from, or records of, members of the news media, the Department strikes the proper balance among several vital interests: protecting national security, ensuring public safety, promoting effective law enforcement and the fair administration of justice, and safeguarding the essential role of the free press in fostering government accountability and an open society. See Memorandum from the Attorney General to All Department Employees (Jan. 14. 2015); Memorandum from the Attorney General to All Department Employees (Feb. 21, 2014); Report on Review of News Media Policies (July 2013). To achieve this balance, the policy mandates robust review and evaluation by the Criminal Division of requests for authorization to use covered law enforcement tools, and oversight by senior Department officials.

Has the government prosecutors violated their own regulation in their handling of Santilli?  This question has yet to be answered as discovery has not been produced.

**Santilli Overcomes The Presumption Under The Bail Reform Act As His Speech Is Protected And No Violence Took Place**

The government in their Response outlines six reasons as to why Santilli is a prominent figure in the alleged conspiracy and cannot overcome the presumption outlined in the Bail Reform Act:

**Government Assertion (1):** [Santilli] recruiting gunmen to come to Bundy Ranch to show force against law enforcement officers, culminating in the assault on April 12.

**Santilli Rebuttal:** Santilli broadcasts on an internet radio show in which he is the main host.  His show covers a wide range of topics which included the situation at Bundy Ranch.  He has produced and broadcast in excess  of 1500 episodes not related to public land issues.  This issue was brought to his attention and he traveled out to Bundy Ranch as a journalist to cover the BLM's actions.

The language in the government's indictment regarding Santilli's speech is protected under *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969).  The language that is quoted in the indictment comports with lawful activity.  Santilli's request for people to assemble and protest the BLM's conduct at Bundy Ranch and if they are legally allowed to carry in Nevada to bring your weapon to demonstrate. (Indictment, Paragraph 62).  Open carry protests are lawful and conducted throughout the United States as a protected form of First Amendment political speech.

**Government Assertion (2):** [Santilli] threatening violence to law enforcement officer for doing their jobs.

**Santilli Rebuttal:** Santilli was a peace maker on April 9 as seen in the video linked in our moving papers.  This video was the catalyst for people to protest at Bundy Ranch.  This video was picked up by FoxNews and viewed throughout the country on other mainstream media sites.  Santilli is heard throughout the video urging people to "Comply" and calm down.  He never once asks people to come to Bundy Ranch.  The BLM is blaming Santilli, but it was their over reaction to the Bundy family members, using police dogs and becoming physical with a pregnant lady that sparked the outrage, not Santilli's speech.

Acting as a journalist, Santilli records a conversation between him and the BLM agent in charge.  See https://www.youtube.com/watch?v=9p0YemhFnw8

This audio recording which was broadcast on Santilli's show and other outlets depicts the peaceful nature of Santilli.[1]  Throughout, the discussion between the two

---

[1]Santilli's radio personality is much different than his real life demeanor.  Both the video of the April 9 incident and the recorded conversation with BLM SAC Love

men, the tone was respectful between them.  The Court can listen to this eleven minute recording and decipher the intent of Santilli was to act as a mediator between the two sides as the numbers of people were coming to protest the BLM.

**Government Assertion (3):** [Santilli was] leading an assault on a BLM convoy engaged in impoundment operation on April 9, 2017.

**Santilli Rebuttal:** The people gathered at learned of the killing of cattle and damaged water pipes at the direction of  BLM forces.  (Photo Attached as Exhibit A & B).  Santilli in the video asks for a supervisor.  Santilli never had any type of weapon or used violence against anyone ever.  Santilli has no history of violence. In fact, in the video Santilli never tells a people to come to Bundy Ranch.  His commentary is specifically to the actions of the BLM.  Santilli's speech was not the catalyst for citizens to travel to Bundy Ranch, it was the video's coverage throughout mainstream media

**Government Assertion (4):** [Santilli] was conducting reconnaissance of hotels where BLM officers and employees were staying during impoundment operation.

**Santilli Rebuttal:** Santilli was journalist who broadcast on a daily basis.  There was information that the local motels were filled up with BLM and contracted Black Water type contractors. Santilli travelled to a motel and asked if there were any rooms available to be able to broadcast lodging availabilies to the arriving protesters that were coming to protest on private property at Bundy Ranch.

**Government Assertion (5):** [Santilli was] threatening BLM SAC on April 11 and delivering an ultimatum to leave the Impoundment Site.

**Santilli Rebuttal:**  The above link is the recording that was cordial and was more of a mediation between the parties.  The idea that the protestors and BLM could be at a confrontation concerned Santilli and he took it upon himself to speak with the agent in charge to defuse the situation.  The Sheriff of Clark County arrived and to

highlights this difference.  Santilli is peaceful and was intent on defusing the situations and avoiding tragedy such as the ones at Ruby Ridge and Waco.

Bundy Ranch and was photographed on the stage used by protestors.  (See Photo of Gillespie Ex. C).  Gillespie is on stage without a weapon out of his holster speaking to the crowd of protesters.

https://www.youtube.com/watch?v=3wru1pYvE4o

The photo shows a relaxed Gillespie in front of the protestors.  Gillespie has been critical of the BLM's handling of the protestors that were lawfully assembled in which he was quoted.

**Gillespie:  "I go up there to talk to Cliven (before the roundup), see if I can talk some understanding to him, and the boys are there," Gillespie said. Further, he learned the BLM had no place to take the cattle.**

**"That's when I call the BLM and say my folks are not participating in this," Gillespie said. "'You're telling me things that I'm finding out not to be true. I don't like the way this is going, and I think you need to put this off and look at the fall.'"**

**"I think if anybody would look at how they handled the protesting with the use of Tasers and police dogs, anyone who had been in policing would question those tactics," he said. "And I believe that led to the heightened interest and escalating the situation."**

http://lasvegassun.com/news/2014/jul/02/sheriff-breaks-silence-says-blm-bundy-share-blame-/

**Government Assertion (6):**   [Santilli was] inciting Followers and gunmen during Bundy's Rally on the morning of April 12, moving to the Impoundment Site upon Bundy's command at the Rally, and participating in assault on the Impoundment Site on April 12 and the threats of force and violence against law enforcement officers.

**Santilli Rebuttal:** Santilli was never at the site of the stand off.  He was on the median talking to local law enforcement officials.  The government can not present any evidence that a single gunmen traveled to Bundy Ranch as a result of Santilli's

speech. There were no gunmen around Santilli, the only guns that were around were in the holsters of local law enforcement who were photographed walking through the crowd.  (See Attached Photos EX D).

Santilli's role at Bundy Ranch was that of a journalist.  He broadcasted for people to lawfully assemble and assemble on private property with their weapons if they were lawfully allowed to carry.  Santilli's speech is protected advocacy.

Speech that may look like incitement is merely  "abstract advocacy" if it is not intended to cause imminent lawless action.  Relatedly, the fact that no one actually took imminent lawless action based on defendant's speech is evidence that the speech was merely abstract advocacy). *McCoy v. Stewart*, 282 F.3rd 626, 632 n. 6 (9th Cir. 2002).

**Santilli Further Overcomes The Presumption As The Speech Is Protected And Santilli Has Zero History of Violence**

Although the recent decision in *Elonis v. United States*, 135 S. Ct. 2001 (2015), deals with the issue of threats, it never addressed the constitutional protection afforded by the First Amendment.  The Court's ruling was limited to finding that the federal threat statute at issue in that case required a showing that the defendant intended to threaten the alleged victim, and that the fact that the victim reasonably believed he had been threatened was not sufficient. Given this disposition, the Court held that it was not necessary to consider any First Amendment issues, id. at 2012, and it did not discuss what expression constitutes a "true threat" outside of the protection of the constitution.

In *Brandenburg v. Ohio*, 395 U.S. 444 (1969), the Court made it clear that the First Amendment protects speech that advocates violence, so long as the speech is not directed to inciting or producing imminent lawless action and is not likely to incite or produce such action. *Accord Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058, 1071 (9th

Cir. 2002) (en banc).

Similarly, in *Watts v. United States*, 394 U.S. 705 (1969), the Court ruled that under a statute making it a crime to willfully make a threat of bodily harm to the president, the prosecution was required to prove that the defendant had uttered a "true threat." It went on to rule that the kind of political hyperbole engaged in by the defendant did not constitute a true threat. It wrote that the decision whether an utterance constitutes a true threat must be determined "against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." New York Times Co. v. Sullivan, 376 U.S. 254, 270 (1964).

The language of the political arena, like the language used in labor disputes, see *Linn v. United Plant Guard Workers of America*, 383 U.S. 53, 58 (1966), is often vituperative, abusive, and inexact. We agree with petitioner that his only offense here was "a kind of very crude offensive method of stating a political opposition to the President." Santilli advocates for the government to follow the Constitution on his program. He is not anti-government, as a former United States Marine he took an oath to defend this country and the Constitution.

Santilli's calls for action were not calls for violence. The presumption the government has been rebutted as the speech is protected and not threatening. Santilli never had a firearm, never raised a hand at any official. In fact, just the opposite he is recorded telling people to "comply" with the BLM. The Sheriff never gave any orders to suggest that anyone at Bundy Ranch had unlawfully assembled.

The release of Santilli by this Court will not mean "release". Oregon has placed a condition of a "half way house". This half way house will insure that Santilli makes his court appearance and acts appropriately. The government's decision to prosecute Santilli in two different Districts simultaneously will make it close to impossible to maintain attorney/client contact on a regular basis if he is placed in a custodial setting.

1

**Conclusion**

2      We hereby request that this Court release Santilli pursuant to the conditions in

3  his Oregon case.  This will allow him to be placed in a half-way house.

4

5  Dated this 5th day of May, 2016

6                                              Respectfully Submitted,

7                                              RASMUSSEN & KANG, LLC.

8                                              /s/ Chris T. Rasmussen

9                                              _____

10                                             Chris T. Rasmussen, Esq.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20



21          EXHIBIT A
22
23
24
25
26
27
28

EXHIBIT B



EXHIBIT C



EXHIBIT D