DANIEL G. BOGDEN
United States Attorney
STEVEN W. MYHRE
NICHOLAS D. DICKINSON
Assistant United States Attorneys
NADIA J. AHMED
ERIN M. CREEGAN
Special Assistant United States Attorneys
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada 89101
PHONE: (702) 388-6336
FAX: (702) 388-6698

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | 2:16-CR-00046-GMN-PAL |
| Plaintiff, | |
| v. | **GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT PAYNE'S MOTION TO DISMISS (C.R. 291)** |
| RYAN W. PAYNE, | |
| Defendant. | |

**CERTIFICATION**: Pursuant to Local Rule 12-1, this response is timely filed.

The United States, by and through the undersigned, respectfully submits its Response in Opposition to Defendant Ryan W. Payne's ("Payne's") Motion to Dismiss (C.R. 291) (hereinafter "Motion" or "Motion to Dismiss"). In his Motion, Payne asks this Court to dismiss with prejudice the Superseding Indictment, arguing that his Fifth and Sixth Amendment rights have been violated by the "simultaneous prosecution" of two federal criminal cases in two different federal districts. (C.R. 291) As discussed below, Payne's motion has no basis in fact or law and should, therefore, be dismissed.

**BACKGROUND**

On February 17, 2016, Payne and four other co-defendants were charged by Indictment in the District of Nevada ("Nevada Indictment") with numerous crimes of violence in connection with their alleged participation in a conspiracy to use force, violence and firearms to assault and extort federal officers on April 12, 2014, near Bunkerville, Nevada. The charges included assault with a deadly weapon on federal law enforcement officers, threatening federal law enforcement officers, obstruction of justice, extortion of federal officers, use and brandish a firearm in relation to a crime of violence, and conspiracy to commit same, all in violation of Title 18, United States Code, Sections 111(a)(1) and (b), 115, 924(c), 1503, 1951 and 371, respectively. A warrant for Payne's arrest issued from the Indictment.

Before the return of the Nevada Indictment, Payne, along with many other co-defendants including some named in the Nevada Indictment, had been charged by Indictment in the District of Oregon ("Oregon Indictment"), for felony violations arising from their alleged involvement in an armed takeover of the Malheur National Wildlife Refuge (MNWR) in Harney County, Oregon, in and around January 2016. *See* Oregon Case No. 3:16-cr-00051. Arrested on January 27, 2016, Payne was detained in Oregon pending trial on the Oregon Indictment.

On March 2, 2016, the Superseding Indictment ("Nevada Superseding Indictment" or "Superseding Indictment") in this case was returned in the District of Nevada, joining Payne with 14 additional defendants, bringing the total number of joined defendants to 19. That same day and at the request of the government, the Court issued a writ of habeas corpus *ad prosequendum* (hereinafter "writ" or

"writ *ad pros*") requiring the United States Marshal Service (USMS) to transport Payne from pretrial detention in Oregon to a detention facility in Nevada so that he could be arraigned on the Nevada Superseding Indictment and joined for trial with his co-defendants. Payne and four other co-defendants in this case – who had been arrested with Payne in Oregon on the Oregon Indictment (hereinafter referred to as the "common defendants")[1] – filed motions to stay the execution of the writs.

On March 22, 2016, United States District Court Judge Anna Brown, the presiding judge in the Oregon case, held a hearing on the motion to stay the writs and, following the hearing, ordered that Payne (and other common defendants) be transported to Nevada for their initial appearances on the Nevada Superseding Indictment. She further ordered that Payne and the other common defendants be returned to Oregon on or before April 25 to stand trial on the Oregon charges.

Pursuant to Judge Brown's Order, Payne was transferred to the District of Nevada on April 13, 2016. On April 15, Payne made his initial appearance on the Nevada Superseding Indictment, at which time he was arraigned, entered pleas of not guilty to all charges, and was joined for trial with the other 18 co-defendants named in the Nevada Superseding Indictment with a trial date of May 2, 2016. Following arraignment, the government moved that the case be declared complex under Local Rule (Criminal) 16-1, and sought a complex case schedule.

---

[1] Those defendants are: Ammon and Ryan Bundy, Blaine Cooper, and Brian Cavalier. In addition, Joseph O'Shaughnessy and Peter Santilli are also common defendants, having been arrested on the Oregon Indictment but subsequently released on terms and conditions. Both of them were later arrested and detained pending trial in the Nevada case.

Five days after his arraignment, on April 20, 2016, Payne filed this Motion seeking dismissal of the Superseding Indictment on the basis that his prosecution in Nevada violated his Sixth Amendment right to a speedy trial and denied him effective assistance of counsel.

On April 22, 2016, United States Magistrate Judge Peggy Leen held a pretrial scheduling conference with all 19 defendants, including Payne, to determine a case management schedule. At that hearing, the government stated that the case should be declared complex on the following bases: (1) discovery was voluminous; (2) nineteen defendants had been joined for trial; and (3) seven of the nineteen defendants were pending trial in Oregon and were under court order to return to Oregon on or before April 25, 2016 to prepare for a September 2016 trial. The government further explained the nature of the discovery in this case, describing for the Court the volume of evidence adduced during the course of the investigation, culminating in approximately 1.4 terabytes of digital data comprised mostly of audio and video recordings.

Following the hearing and on April 26, 2016, Magistrate Judge Leen entered a 14-page Case Management Order, vacating the May 2 trial setting and setting trial for February 6, 2017, as to all defendants, including Payne. In her Order, Judge Leen made specific findings regarding exclusions of time under the Speedy Trial Act, excluding all time between arraignment and the February trial date and setting milestone dates for the production of discovery and pretrial motions. (C.R. 321 (Judge Leen's Case Management Order of April 26, 2016).)

4

For the reasons discussed below, the Motion to Dismiss should be denied. Payne cannot establish a speedy trial violation solely on the basis that he has been joined for trial with his co-defendants and there is nothing about his joinder that interferes with his right to the effective assistance of counsel.

## LEGAL STANDARD

The Sixth Amendment right to speedy trial attaches at the time the case is indicted. *United States v. Lovasco*, 431 U.S. 783, 788-89 (1977). A defendant's right to speedy trial under the Sixth Amendment is a "more vague concept than other procedural rights." *Barker v. Wingo*, 407 U.S. 514, 527 (1972). "The nature of the speedy trial right does make it impossible to pinpoint a precise time in the process when the right must be asserted or waived." *Id.*

In assessing whether a Sixth Amendment violation occurred, the Court weighs the following factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) the prejudice resulting from the delay. *Id.* at 531-33. Courts presume prejudice after a delay of more than one year from indictment. *Doggett v. United States*, 505 U.S. 647, 652 (1992).

Because of the imprecise nature of the Sixth Amendment analysis, courts traditionally review claims of speedy trial violations within the context of the Speedy Trial Act (STA), Title 18, United States Code, Sections 3161-3174. The Ninth Circuit has noted that "it will be an unusual case in which the time limits of the Speedy Trial Act have been met but the Sixth Amendment right to speedy trial has been violated." *United States v. Nance*, 666 F.2d 353, 360 (9th Cir. 1982).

This is so because the "Speedy Trial Act affords greater protection to a defendant's right to a speedy trial than is guaranteed by the Sixth Amendment, and therefore a trial which complies with the Act raises a strong presumption of compliance with the Constitution." *United States v. Baker*, 63 F.3d 1478, 1497 (9th Cir. 1995).

The Speedy Trial Act provides:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1).

## ARGUMENT

Payne has properly been joined for trial with eighteen (18) other co-defendants charged with serious crimes of violence arising in Nevada. The government acted diligently and properly in seeking writs *ad pros* to compel Payne to be transported to Nevada so he could be joined for trial with his co-defendants. No Sixth Amendment violation occurred as a result and Payne cites no authority to the contrary.

Payne's Sixth Amendment right to a speedy trial was triggered on February 17, 2016, when the first Nevada Indictment was returned – not, as Payne contends, at the time of his arraignment on the Superseding Indictment. Thus, upon indictment, the Sixth Amendment placed "the primary burden on the courts and the prosecutors to assure that [his case is] brought to trial." *Barker*, 407 U.S.

1  at 527. To meet that burden, the government took the post-indictment steps
2  necessary – among them seeking a writ *ad pros* on Payne – to join all of the
3  defendants for trial.

4  Payne contends that by doing so, the government forced him to elect
5  between his Fifth and Sixth Amendment rights in either Oregon or Nevada
6  because he cannot exercise both at the same time. Payne is wrong for several
7  reasons.

8
9  First, while the Sixth Amendment guarantees Payne's right to a speedy
10 trial, it does not guarantee that he can never be charged in a conspiracy case while
11 he is pending charges in another district. Were it otherwise, the government
12 would be forced to forebear from ever charging and joining all defendants for trial
13 whenever a single co-defendant is pending trial someplace else -- even if it meant
14 losing the charges to the statute of limitations. There simply is no authority for
15 the proposition that the Sixth Amendment dictates when or where a case will be
16 indicted. To the contrary, it is well established that prosecutorial discretion
17 extends not only to whom to prosecute, *see Town of Newton v. Rumerv*, 480 U.S.
18 386, 396 (1987); *Wayte v. United States*, 470 U.S. 598, 607 (1985), but when to
19 prosecute. *See United States v. Lovasco*, 431 U.S. 783, 790 (1977). And, as a
20 general matter, decisions made within prosecutorial discretion are beyond judicial
21 review. *See United States v. Bauer*, 84 F.3d 1549, 1560 (9th Cir. 1996).

22
23 Here, **nineteen** defendants – including Payne – have been charged jointly
24 by a grand jury in an alleged conspiracy to commit serious crimes of violence

7

against federal law enforcement officer in Nevada. The government cannot "just wait" to indict Payne and his co-conspirators until such time as when and if Payne completes his trial in Oregon. That is an enormous price for the victims and the community to pay for Payne's vague and wholly unsupported notion that everyone must wait on him.

Second, the Sixth Amendment guarantees Payne a speedy trial – not an immediate one. The fact that Payne is now joined for trial with his co-defendants in Nevada – by virtue of the writs *ad pros* – does no violence to his right to speedy trial as long as the government makes good faith efforts to bring him to trial timely in the Nevada case. Here, all indications are that the case is proceeding forward toward trial in a timely manner.

Payne's trial date is set for February 6, 2017 – less than the one year from the initial Nevada indictment, the period of time that *Barker v. Wingo* (five years delay did not violate the Sixth Amendment) and its progeny contemplated as triggering the inquiry into whether a trial occurs sufficiently speedily. *Doggett*, 505 U.S. at 505. At less than one year, there is no need even to balance the *Barker* factors. *United States v. Waters*, No. 2:15-CR-80-JCM-VCF, 2016 WL 1688622, at *4 (D. Nev. Apr. 5, 2016) ("The length of the delay is to some extent a triggering mechanism.").

Moreover, any delay contemplated by the Court's trial setting has been addressed and specifically excluded under the STA – the starting point for any speedy trial analysis under current case law. United States Magistrate Judge

Leen held a two-hour hearing to determine whether the nature of the case was complex and to ascertain all defendants' proposed trial dates, some of whom had agreed to a February 2017 trial date. At that hearing, Judge Leen considered the government's showing, Payne's arguments, and those of his eighteen co-defendants. Among other things, Payne raised the very same arguments he raises here but never proposed a date when he wanted to go to trial, other than the vague notion of a date that "falls within the normal timeframes of case preparation." None of the defendants, including Payne, sought trial on the original setting of May 2 and the only other date that was proposed to Judge Leen at the hearing was February 6, 2017, a date agreed upon by some of the co-defendants.

Following the hearing and in a very detailed and well-reasoned Order, Judge Leen designated this case as complex and set the February 2017 trial date. In so doing, she found that all time between Payne's arraignment on April 15, 2016, and the trial setting was excluded under the STA, making very specific and detailed findings, including Payne's joinder with other co-defendants who sought a February 6, 2017, trial date and the complex nature of the case. (C.R. 321 at pp. 7-13.)

This hardly evidences a lackadaisical attempt to get Payne to trial which is what *Barker v. Wingo* attempts to prevent in the first place. To the contrary, Magistrate Judge Leen set very clear milestones for the government's production of discovery and the filing of motions, including motions for severance. The case is

proceeding to trial along the lines outlined in the Order and the exclusions of time identified in the Order are consistent with the STA and, hence, the Sixth Amendment.

Further in this same vein, any delay in the Nevada case that is attributed to Payne's trial on the charges in Oregon is specifically addressed in the STA. Section 3161(h)(1)(B) allows for excludable time due to "delay resulting from trial with respect to other charges against the defendant." This provision encompasses not only "the trial itself but also the period of time utilized in making necessary preparations for trial." *United States v. Lopez-Osuna*, 242 F.3d 1191, 1198 (9th Cir. 2001) (internal quotations and citation omitted).

The exclusion is most often applied when a delay has been caused by a separate trial (and the preparation necessary for that separate trial) on other charges, even when the charges are before another court. *See United States v. Drake*, 542, F.3d 1080 (9th Cir. 2008). The provision would not exist at all if Congress considered it unconscionable for a defendant's trial to be delayed while he answers for other crimes. *Zedner v. United States*, 547 U.S. 489, 497 (2006) ("[T]he Act recognizes that criminal cases vary widely and that there are valid reasons for greater delay in particular cases.").

Nor have courts found anything improper under the Sixth Amendment in applying the exclusion. *See United States v. Lopez-Espindola*, 632 F.2d 107, 110 (9th Cir. 1980) (accommodating a delay in a federal trial while state proceedings were ongoing); *Lopez-Osuna*, 242 F.3d 1191 (upholding a delay in proceedings

where the defendant was charged separately in the same federal district); *United States v. Arellano-Rivera*, 244 F.3d 1119, 1123 (9th Cir. 2001) (same).

Indeed, the same claim raised by Payne in this Motion – no simultaneous prosecutions – was rejected by the Ninth Circuit in *United States v. Matta-Ballesteros*, 72 F.3d 136 (Table), 1995 WL 746007 (9th Cir. 1995). There, the defendant, a drug trafficker convicted of numerous serious drug-related offenses, complained that his right to speedy trial under the STA had been denied because of the delay caused by a trial in another case involving the kidnapping and murder of a DEA agent. The Ninth Circuit found:

> Matta's theory that the [DEA agent murder] trial caused excessive delay is directly refuted by the text of the Act. The Act expressly *excludes* from computation "[a]ny period of delay resulting from other proceedings concerning the defendant, including ... delay resulting from trial with respect to other charges against the defendant." 18 U.S.C. § 3161(h)(1)(D). The Ninth Circuit has several times denied speedy trial challenges on this basis.

*Id.* at *2 (citing *United States v. Lopez-Espindola*, 632 F.2d 107, 109 (9th Cir. 1980); *United States v. Allsup*, 573 F.2d 1141, 1144 (9th Cir. 1978) (emphasis in original)). Finally, weighing the *Barker v. Wingo* factors, the *Matta* court specifically rejected the notion that there was any Sixth Amendment violation, finding that "the reason for the delay was legitimate and in good faith: Matta was on trial elsewhere." *Id.*

Payne further claims that the government's conduct – joining him for trial in Nevada – confronts him with a "Hobson's choice" of waiving his Sixth

Amendment right to speedy trial or waiving his right to effective assistance of counsel. Mot. at 13. Payne erects a false dilemma.

From the outset, Payne's claim of ineffective assistance of counsel is speculative. Payne has a right to effective assistance of counsel at trial, but there has yet to be a trial and the government has done nothing pretrial to interfere with his right to counsel. Payne fails to show how his joinder in the Nevada case causes his counsel's representation to fall below constitutional requirements under the circumstances of this case.

Moreover, to the extent his claim is based on counsel's need for more time to prepare for the February 2017 trial, the remedy is to request a continuance – not to dismiss the Superseding Indictment. A continuance – as shown above – is fully consistent with the STA and does no violence to Payne's Sixth Amendment right to speedy trial. Thus, Payne is not "forced" to give up or "waive" any Sixth Amendment guarantees when seeking a continuance. As the court in *Matta* stated when addressing this issue under the STA:

> […] Matta does not demonstrate prejudice due to the delay. He complains that he was "required to prepare for two protracted cases simultaneously," and that he was forced to start the trial in this case "with only a few weeks re-preparation between the two cases." But those are not speedy trial problems. They are just the opposite: problems arising because the second trial started *too soon*. Matta's real complaint, in other words, is that the delay for the [DEA agent murder] trial was *not long enough*, forcing him to try two large criminal cases back-to-back. Whatever hardship that may have caused Matta cannot be attributed to excessive delay. The delay did not prejudice Matta in the sense relevant to speedy trial challenges.

*Matta*, 1995 WL 746007, at *2 (emphasis in original).

Payne makes no showing – nor can he – that the government has interfered with his counsel's ability to effectively represent him at trial. The fact that a grand jury has found probable cause to charge him and 18 co-defendants with serious crimes of violence in Nevada is not an action by the government designed to deprive Payne of counsel. Nor is the fact that it will take time to prepare for a complex conspiracy trial attributable to government interference. Continuances to prepare for trial are routinely sought (and granted) in the vast mine run of even the simplest single-defendant cases – let alone 19-defendant conspiracy cases.

To the extent Payne would rather go to trial sooner than February 2017 to the detriment of case preparation that is his choice also and the government has done nothing to interfere with it. Payne is set for trial in Oregon in September 2016 and, pursuant to Court Order in that case, he has been ordered to remain detained in Oregon to prepare for trial in that case and is unavailable for trial in Nevada. Nevertheless, if Payne desires to go to trial in Nevada before September 2016, he can always attempt to show cause why he should be severed from the Oregon case and transported to Nevada so he can stand trial on a date of his choosing – and the Court can then rule. Ultimately it is the courts, and not the government, that will set trial dates in both cases, consistent with both the right to a speedy trial and the needs of counsel to adequately prepare. *United States v. Kimberlin*, 805 F.2d 210, 226 (7th Cir. 1986) (defendant charged in two federal district courts has no right to choose which case will be tried first).

/////

Nor is Payne effectively deprived of assistance of counsel because his counsel cannot have constant in-person contact with him. Courts have repeatedly rejected such arguments. *See United States v. Lucas,* 873 F.2d 1279, 1281 (9th Cir. 1989) (finding defendant not actually or constructively denied all access to counsel where pretrial facility was 120 miles from court-appointed counsel):

> Lucas's pretrial detention in a facility located two hours distant from the place of his trial did not prevent *all* communications between client and counsel. Lucas and his counsel were free to communicate by telephone; alternatively, Lucas's counsel could easily endure the inconvenience of a two-hour drive to Phoenix.

*Id.* at 1280; see also *Aswegan v. Henry,* 981 F.2d 313, 314 (8th Cir. 1992) ("Although prisoners have a constitutional right of meaningful access to the counsel, prisoners do not have a right to any particular means of access, including unlimited telephone use"); *United States v. Parker-Taramona*, 778 F.Supp. 21 (D. Hi. 1991) (finding that moving of prisoners from Hawaii to the mainland pending trial where no housing was available on Hawaii did not violate the Sixth Amendment right to counsel); *United States v. Allick*, No. CRIM.A. 2011-020, 2012 WL 32630, at *2 (D.V.I. Jan. 5, 2012) (In cases where a Defendant's "Sixth Amendment claim is based on alleged inconvenience caused by the distance between a court and a pretrial detention facility, courts have required defendants to show that access to counsel was actually or constructively deprived, or that defendant was prejudiced, in order to sustain the claim.").

/////

/////

14

Payne's due process claims are equally unfounded. He claims that allowing the "facts, evidence and witness [sic] that are more distant in time lay idle" and that delay in trial will therefore prejudice him. Mot. at 19. At bottom, this is a reiteration of Payne's speedy trial claim. Yet much longer delays have been found reasonable. *See United States v. Corona-Verbera*, 509 F.3d 1105, 1114 (9th Cir. 2007) (holding that, under the *Barker* factors, an eight-year delay from the time of indictment to the defendant's arrest did not violate the defendant's Sixth Amendment right to a speedy trial); *Barker v. Wingo*, 407 U.S. 514, 533-36 (1972) (five-year delay did not violate Sixth Amendment right to a speedy trial).

Lastly, Payne cannot establish prejudice by his joinder in Nevada. Having been detained pretrial in the Oregon case, Payne will spend no more time in pretrial detention as a result of being joined in the Nevada case than he would if the government had waited to join him until the moment his trial in Oregon had concluded. Instead, he will have the advantages of lawyers in both districts and discovery in both districts. Rather than prejudicing Payne, moving forward with discovery in both cases presents rather obvious possible benefits: including, among others, the possibility of joint resolution, of avoiding inconsistent representations, and collaboration between both sets of attorneys. *See, e.g., United States v. Kelly*, 661 F.3d 682 (1st Cir. 2011).

Payne's Motion should therefore be denied.

/////

/////

**WHEREFORE**, for all the foregoing reasons, the government requests that the Court enter an Order, denying Payne's Motion to Dismiss.

DATED this 9th day of May, 2016.

Respectfully,

DANIEL G. BOGDEN
United States Attorney

//s//
_____
STEVEN W. MYHRE
NICHOLAS D. DICKINSON
Assistant United States Attorneys
NADIA J. AHMED
ERIN M. CREEGAN
Special Assistant United States Attorneys

Attorneys for the United States

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing **GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT PAYNE'S MOTION TO DISMISS (C.R. 291)** was served upon counsel of record, via Electronic Case Filing (ECF).

Dated this 9th day of May, 2016.

                                    //s//
                          STEVEN W. MYHRE
                          Assistant United States Attorney