RENE L. VALLADARES
Federal Public Defender
State Bar No. 11479
SHARI L. KAUFMAN
Assistant Federal Public Defender
WILLIAM CARRICO
State Bar No. 003042
Assistant Federal Public Defender
RYAN NORWOOD
Assistant Federal Public Defender
411 E. Bonneville Avenue, Suite 250
Las Vegas, Nevada 89101
(702) 388-6577/Phone
(702) 388-6261/Fax

Attorneys for Ryan W. Payne

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
-oOo-

| | |
|---|---|
| UNITED STATES OF AMERICA, | 2:16-cr-046-GMN-PAL |
| Plaintiff, | **OPPOSITION TO GOVERNMENT'S MOTION FOR PROTECTIVE ORDER** |
| vs. | |
| RYAN W. PAYNE, | |
| Defendant. | |

**Certification**: This pleading is timely filed.

Defendant RYAN W. PAYNE, through his counsel, SHARI L. KAUFMAN, WILLIAM CARRICO and RYAN NORWOOD, Assistant Federal Public Defenders, respectfully submits this objection to the Government's Motion for a Protective Order. The Objection is based on the points and authorities set forth below.

DATED this 11th day of May, 2016.

RENE VALLADARES
Federal Public Defender

By: */s/ Shari L. Kaufman*
    SHARI L. KAUFMAN
    Assistant Federal Public Defender

By: */s/ William Carrico*
    WILLIAM CARRICO
    Assistant Federal Public Defender

By: */s/ Ryan Norwood*
    RYAN NORWOOD
    Assistant Federal Public Defender

**POINTS AND AUTHORITIES**

The government has filed a motion for a blanket protective order. The proposed protective order ("PPO"), which is largely identical to the one previously circulated to the parties, would apply to "materials and documents created or written by the government, or obtained by the government through warrants or court orders." The PPO would prohibit the dissemination of these materials to anyone, excepting (1) the defendants, (2) persons "employed by the attorney of record who are necessary to assist counsel of record in preparation for trial or other proceedings in this manner," and (3) persons who "defense counsel deem necessary to further their legitimate investigation and preparation of the case."

Ryan W. Payne (Payne) has already objected to the PPO, and hereby incorporates the arguments he made therein. See ECF 331. In its Motion, the government now proffers a justification for its PPO. This proffer does not justify a protective order, let alone the blanket PPO requested here. The Court should deny the PPO, or at the very least, require the government to fashion a realistic and narrowly tailored protective order.

**A. The Government's proffer.**

The government says it seeks a protective order "to protect victims, witnesses, law enforcement officers, and agent/investigators associated with this case from threats, intimidation, and harassment from supporters of the Bundy defendants." ECR 354, pg. 4. In fact, almost all the persons mentioned in the government's proffer appear to be law enforcement officers purportedly involved with the April 2014 events alleged in the indictment.[1]

---

[1] A few of the posts (ECF 354, pp. 5-6 & Ex. 2, #16-22) appear to involve cowboys and an auction house that had contracted with the government to round-up and sell the Bundy cattle.

In Ex. 2 of the motion, the government attaches 22 instances of purported "cyber-bullying" concerning these officers. These social media posts were presumably chosen because they represent the most objectionable behavior the government was able to locate in its extensive investigation of the defendants and their supporters. The government has redacted the identities of most of the posters, so it is not clear who they are, or what (if any) relationship they have to the defendants in this case. Most of these posts were made at or near the time of the April 12, 2014 confrontation in Bunkerville. Many of them allege that law enforcement officers were engaged in illegal and dangerous activity.  Numerous posts, to cite one example, criticize an officer for allegedly tackling a 57-year-old woman to the ground. Ex. 21,   #2, 6, 7, 8, 10.

The government asserts throughout Ex. 2 that these social media criticisms went "viral," and were shared or distributed to thousands of other persons. There is no indication that the posts or comments connected to them were directly sent to any of the government agents in question. Some of the posts and comments encourage contacting government agencies and/or individuals to register complaints.  See e.g. #2 ("email him and tell him he is wrong for hurting that lady!!!"); ("Everyone let blm know that he should be fired."); #19 ("They need to know that what they are doing is NOT right and that we notices [sic] it and we are a shamed [sic] of them!"). Despite the purported prevalence of such requests, the only specific allegations of communications made directly to agents noted in the Motion are that (1) a contractor was "inundated with anonymous, threatening, and intimidating phone calls, calling the contractor foul names, hanging up, and threatening death," ECF 354, pg. 6 2 and (2) co-defendant Peter Santilli left a voicemail message

---

[2] The government contends that "other civilians associated with impoundment suffered similar treatment," but only cites examples # 20 and 21 in Ex. 2 as support for this proposition. Both of these posts concern a contractor who was to auction the cattle the government planned to impound. These two posts (apparently made by one of Cliven Bundy's sons) consist of speculation that the auction "may be the end of his carrier [sic]," and a plan to travel to the auction site for purposes of

with the Special Agent in Charge of the impoundment operation in November of 2014.  ECF 354, pp. 6-7.

## B. The Government's proffer does not justify a protective order

Federal Rule of Criminal Procedure 16(d)(1) does not give the government carte blanche to request a protective order regarding discovery.  The party seeking a protective order has the burden of demonstrating "good cause."  Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1130 (9th Cir. 2003).  This Court has recognized that "good cause" requires a showing that disclosure to third parties "will result in a clearly defined, specific, and serious injury."  U.S. v. Beezer, 2015 WL 9200365 at *5 (D. Nev. 2015), citing U.S. v. Smith, 985 F.Supp. 2d 506 at 523 (S.D.N.Y. 2013).  "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing."  U.S. v. Wecht, 484 F.3d 194, 211 (3rd Cir. 2007).  A good cause inquiry must also consider whether the protective order "would prejudice the defendant."  Smith, 985 F.Supp. 2d. at 523, citing U.S. v. Carrilles, 654 F.Supp. 2d. 557 at 566 (W.D. Texas 2009).  And even when a showing is made, a resulting protective order must be "no broader than is necessary" to accomplish the order's goals.  U.S. v. Smith at 524, citing U.S. v. Lindh, 198 F.Supp. 2d. 739 at 741-42 (E.D. Vir. 2002).

Although the government has now proffered a justification for the PPO, that justification is wholly inadequate to support a blanket restriction on disseminating discovery.  Most of the social media posts and allegedly harassing phone calls that the government complains of were made at or near the time of the events in Bunkerville in April of 2014.  Despite the government's allegations that information regarding the identity of government agents involved in the cattle round-up has

---

"picketing."  The government also alleges that "government counsel and the courts" have received communications regarding this case, but these are not the parties to whom the PPO is directed.

5

already been heavily shared over the past two years amongst persons sympathetic to the defendants, the government can point to no instance of "physical or economic harm" that has been perpetuated against any such agents, aside from the crimes alleged in the indictment itself. U.S. v. Pelton, 578 F.2d 701, 706-07 (8th Cir. 1978). Even in the hand-selected examples the government provides in Ex. 2 as justification for the PPO, many of the posts and comments concern legitimate, if sometimes hyperbolic, criticisms of alleged wrongdoing by specific agents performing duties on behalf of the U.S. government. The government makes no attempt to distinguish between such criticisms and potentially illegal conduct. Stifling criticism of the government and its agents is not a legitimate basis for a protective order.

Even assuming, arguendo, that there were a basis for some type of protective order, the PPO goes far beyond any legitimate interest in protecting the safety of government agents. Indeed, the cases the government relies upon involve restrictions narrowly tailored to address the government's concerns. In U.S. v. Fuentes, 988 F.Supp. 861, 866-67 (E.D. Penn. 1997), for example, the government's concerns about revealing the identity of a confidential informant were remedied by an order limiting the defense dissemination of that witnesses' name, rather than a blanket restriction on *all* discovery. See also U.S. v. Pelton, 578 F.2d 701, 706-707 (8th Cir. 1978) (protective order limited to tape recordings that Court reviewed ex parte and determined to have no exculpatory value); U.S. v. Zelaya, 335 Fed. Appx. 355, 356-58 (4th Cir. 2009) (allowing confidentiality regarding identity of two foreign witnesses in a racketeering trial involving an international criminal gang responsible for murders and kidnappings).

Despite being informed of several specific issues with the PPO via the objections filed by Ryan Payne and other co-defendants, the government has done nothing to limit its scope, and has done nothing to address the specific concerns raised by Payne in his Motion. For example, Payne noted

the PPO's provision that it did not "restrict reproduction or dissemination of discovery materials the defense may otherwise obtain through open sources"[3] was confusing because much of the discovery the government had announced it would provide was already available to the public. ECF 331, pp. 6-7. The government's Motion does nothing to resolve this confusion: to the contrary, it specifically cites Facebook postings containing "personal identifying information" of government agents as examples of discovery requiring a protective order, and claims that the posts provided in Ex. 2 are "typical" of such discovery. ECF 354, pg. 10. Given that many of these posts were allegedly shared and reposted thousands of times over a period of two years, it is hard to see how they can be anything but public information.[4] Under the PPO, however, the defendants will be left to wonder whether they face sanction if they share this information with anyone. Extending the PPO to Facebook materials would be at best pointless, and at worst a means for the government to chill legitimate defense investigation and protected speech.

Payne also expressed a specific concern that the PPO might prevent dissemination of discovery to his defense lawyers in Oregon, where he and several other co-defendants are facing a parallel prosecution. ECF 331, pg. 6. The government does not address this concern in their motion, leaving Payne and the other co-defendants to wonder whether sharing discovery with their own lawyers will cause them to face sanction.

---

[3] The PPO attached to the Government's motion adds an additional qualification to this exception, stating it does not "restrict reproduction or dissemination of discovery materials the *defendants obtained in the course of their investigation* through open sources." The government does not explain why it added this language.

[4] Unredacted versions of the "memes" included in Ex. 2 of ECF 354, including those at #1, 2, 6, and 7, can be located within minutes on the internet via a google image search.

7

The government has not made any attempt to fashion a realistic and narrowly tailored protective order, or to accommodate the legitimate concerns of Payne expressed in his prior objection. Until and unless the government does so, the Court should not grant their Motion.

**C. The Government's comparison to the Oregon case is inapposite**

The government contends a blanket PPO is necessary because it would be "wholly impracticable" for it to make any "particularized showing" that individual documents must be protected. ECF 354 pg. 10. A protective order, however, must "no broader than is necessary" to accomplish the order's goals. U.S. v. Smith at 524, citing U.S. v. Lindh, 198 F.Supp. 2d. 739 at 741-42 (E.D. Vir. 2002). See also Protech Wheel Industry Co. Ltd. v. Velox Enterprises, Inc. 2009 WL 4855287 at *1(C.D. Cal. 2009) (rejecting stipulated protective order proposed by parties because it was "overbroad") (unpublished). The government cites no authority that would excuse it from this requirement because it has not taken the time to review and redact the discovery in its possession. Instead, the government cites the decision of the district court in Oregon, which excused the government from making a "specific showing of necessity" to justify the protective order entered in that parallel prosecution. ECF 354, pg. 11.

But the comparison to Oregon is inapposite. Unlike this case, the Oregon prosecution began immediately after the alleged offenses happened, with the filing of a complaint on January 27, 2016. *U.S. v. Ammon Bundy et al.,* 16-cr-00051-BR (ECF 12-14). The Oregon District Court ordered the government to begin providing discovery on March 4, 2016, in anticipation of a trial that is set for September of 2016. Id., ECF 238. Given that case's rapid timeline, and given that the government was expeditiously providing discovery that it had obtained barely a month beforehand, the Oregon court noted that all but 2 of the 26 defendants agreed not to contest the general protective order sought by the government. ECF 446, pg. 2. In overruling the objections

of Ryan and Ammon Bundy to that order, the Oregon court noted that it was "already requiring the government to produce an extraordinarily large amount of discovery in a relatively short period," and that requiring the government to make a more specific showing of necessity would "substantially slow the rate at which the government could process and produce discovery," and endanger the defendants' right to a speedy trial in September. Id., pg. 5.

Here, the discovery in question arises from a "purely historical" investigation concerning events that happened over two years ago. ECF 281, Ex. 5, pg. 29. Although the events that underlie the indictment mostly happened in April of 2014, the government did not initiate a prosecution until it filed a complaint on February 11, 2016. And although this prosecution was initiated just a few weeks after the Oregon case, it is moving on a much slower timetable. At the government's request, and over the objections of a number of defendants (including Payne), the Court designated this case complex, and set a trial for February of next year. The government has just begun to provide discovery – the Federal Defender received the first materials on the afternoon of May 6.

Here, unlike in Oregon, the government has had plenty of time to review its discovery and to fashion a narrower protective order, assuming such an order is needed at all. And here, unlike in Oregon, the Court has not required the government to provide discovery in a relatively short period to accommodate a looming trial date. The practical concerns that the Oregon court noted to justify the protective order are simply not present here.

## CONCLUSION

The PPO should be rejected. At the very least, the Court must fashion (or require the government to fashion) a much narrower order that is limited to the information that the

government has a legitimate interest in protecting, and that accommodates the specific concerns raised by Payne and the other co-defendants.

**CERTIFICATE OF ELECTRONIC SERVICE**

The undersigned hereby certifies that she is an employee of the Federal Public Defender for the District of Nevada and is a person of such age and discretion as to be competent to serve papers.

That on May 11, 2016, she served an electronic copy of the above and foregoing **OPPOSITION TO GOVERNMENT'S MOTION FOR PROTECTIVE ORDER** by electronic service (ECF) to the person named below:

> DANIEL G. BOGDEN
> United States Attorney
> ERIN M. CREEGAN
> Assistant United States Attorney
> NADIA JANJUA AHMEN
> Assistant United States Attorney
> NICHOLAS DICKINSON
> Assistant United States Attorney
> STEVEN MYHRE
> Assistant United States Attorney
> 501 Las Vegas Blvd. South
> Suite 1100
> Las Vegas, NV 89101

*/s/ Lauren Pullen*
Employee of the Federal Public Defender