MARGARET A MCLETCHIE, Nevada Bar No. 10931
ALINA M. SHELL, Nevada Bar No. 11711
**MCLETCHIE SHELL LLC**
701 East Bridger Ave., Suite 520
Las Vegas, Nevada 89101
(702) 728-5300
maggie@nvlitigation.com
*Counsel for Intervenors*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CLIVEN D. BUNDY, et al.,<br>Defendants. | Case No. :   2:16-cr-00046-GMN-PAL<br><br>**SUPPLEMENT TO INTERVENORS'<br>MEMORANDUM IN OPPOSITION TO<br>THE GOVERNMENT'S PROPOSED<br>PROTECTIVE ORDER** |

Proposed Intervenors Las Vegas Review-Journal, Battle Born Media and the Associated Press ("Intervenors") hereby submit this supplement to their opposition to the government's proposed protective order. This motion is supported by Federal Rule of Criminal Procedure 16(d)(1), the attached memorandum of points and authorities, together with any oral argument the Court may require in this matter.

DATED this 13th day of May, 2016.

 */s/ Margaret A. McLetchie*
MARGARET A MCLETCHIE, Nevada Bar No. 10931
ALINA M. SHELL, Nevada Bar No. 11711
**MCLETCHIE SHELL LLC**
701 East Bridger Ave., Suite 520
Las Vegas, Nevada 89101
(702) 728-5300
maggie@nvlitigation.com
*Counsel for Intervenors*

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

At a hearing before this Court on April 22, 2016, the government circulated a proposed protective order to the defendants in this case. On April 29, 2016, Proposed Intervenors filed a motion to intervene in this matter, along with a detailed proposed memorandum in opposition to the protective order. (*See* Doc. #355.)[1] The government also filed a motion for a protective order on April 29, 2016. (*See* Doc. #354; *see also* Doc. #357 (corrected motion for protective order).) Intervenors hereby offer this supplement to their proposed memorandum.

The proposed protective order submitted with the government's motion is substantially similar to the proposed order previously circulated to the defendants. The government proposes the protective order should apply to all "materials, information and documents created or written by the government, obtained by the government in the course of its investigation and/or through warrants or court orders." (*See* Doc. #357-1 at pp. 2:22-3:1.) The proposed protective order carves out a small exception for discovery the defendants might obtain through their own investigation or from "open sources." (*Id.* at p. 3:1-4.) Otherwise, the government has now staked out a position in its motion that everything it creates or obtains must be subject to protection.

Previously, the government provided no rationale for the protective order, stating instead that such an expansive blanket of protection was necessary for "witness safety." (Doc. #270 at p. 16:13-14 (proposed complex case schedule).) The government's motion for a protective order essentially reiterates this vague concern for witness safety, but attempts to shore up its claims by citing primarily to Facebook and Twitter posts and website discussion boards—most of which are more than two years old, and almost all of which discuss law

---

[1]  The Proposed Intervenors filed their motion to intervene and proposed memorandum as quickly as possible. The Las Vegas Review-Journal and Battle Born Media were the initial proposed intervenors in that motion. (*See id.*) On May 3, 2016, Intervenors filed an amended motion after the Associated Press joined in the motion to intervene. (*See* Doc. #358 (Amended Motion).)

enforcement officers who appear to have been involved with the April 2014 events described in the indictment. (*See* Doc. #357-2.)

Despite the government's assertions, these posts are not threats which indicate its overbroad protective order is necessary. Rather, the posts and discussion board threads are protected speech that, while sometimes offensive, fall far short of constituting actual threats, as detailed below. The cases it relies on to support its argument that these online posts and discussions demonstrate "good cause" to support its proposed protective order are entirely inapposite, as those cases addressed protective orders that were far narrower in scope and breadth. Moreover, the government has failed to establish that other remedies—such as redaction or a more narrowly tailored protective order—would be inadequate to allay its purported concerns for witness safety.

Additionally, the government's reliance on the protective order entered by the district court in the Oregon case is entirely misplaced. The district court there entered the protective order almost immediately after the inception of the case, and shortly after the events giving rise to it. The protective order was virtually unopposed by the Oregon defendants. (*See United States v. Ammon Bundy*, Or. Dist. Ct. Case No. 16-cr-00051-BR at Doc. #446, p.2.) Here, by contrast, the government seeks a protective order for discovery which is largely historical, and the overwhelming majority of the defendants have opposed the proposed order. Moreover, the district court's entry of the protective order in that case does not bind this Court to enter a similar order. Thus, for the reasons described in Intervenors' opposition, and for the additional reasons discussed below, the government has failed to establish good cause for its expansive proposed protective order.

## II.    ARGUMENT

### A.    The Social Media Posts Cited by the Government to Support Entry of the Protective Order Are Protected Speech—Not Threats.

The internet is not well-known for civil or sober discourse on matters of public concern. Instead, the internet provides variety of unfiltered forums for individuals to express opinions on any number of subjects, from the current presidential election to the true identity

of "Becky with the good hair."[2] Because the internet is an open forum in which millions of individuals can express their opinions and interact with other users, some discussions can become heated as people express their passions and frustrations. The events surrounding this case and the underlying issues have created a large amount of discussion in traditional news media, social media, and other public fora. And as with so many topics of national interest, the online discourse is sometimes passionate and articulate, and sometimes incoherent and offensive. However, despite the government's arguments, no witness, law enforcement agent, or victim has been threatened by this robust and colorful online discussion.

As discussed in Intervenors' memorandum, when the government seeks to deprive the public of access in a criminal prosecution through a protective order, Federal Rule of Criminal Procedure 16(d)(1) requires the government to establish good cause and articulate with specificity the reasons such a drastic measure is necessary. "The party opposing disclosure has the burden of proving good cause, which requires a showing that specific prejudice or harm will result if the protective order is not granted." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003). A party seeking a protective order must show "that disclosure will result in a ***clearly defined, specific and serious injury***." *Smith*, 585 F. Supp. 2d at 523 (quoting *In re Terrorist Attacks on September 11, 2001*, 454 F.Supp.2d 220, 222 (S.D.N.Y.2006)) (emphasis added; other citation omitted).

In its motion, the government cites to twenty-two examples of what it characterizes as "cyber-bullying," and a voicemail left by one of the defendants in this case to demonstrate that the defendants' supporters present some sort of inchoate threat to law enforcement officers, witnesses, and alleged victims. (*See* Doc. #357-2 (compiling examples of social media posts); *see also* Doc. 357 at pp. 4:17-7:24 (voicemail).) However, none of the examples provided by the government constitute actual, specific threats which justify a blanket protective order. The exercise of free speech cannot be used to limit First Amendment access to this case.

---

[2] http://hollywoodlife.com/2016/04/24/who-is-becky-with-the-good-hair-beyonce-lemonade/

1   As the Supreme Court held in *Virginia v. Black*, speech is "threatening" and
2   therefore not protected by the First Amendment only if the "speaker means to communicate
3   a serious expression of an intent to commit an act of unlawful violence to a particular
4   individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003); *accord*
5   *United States v. Bagdasarian*, 652 F.3d 1113, 1116 (9th Cir. 2011). "Whether a particular
6   statement may properly be considered to be a threat is governed by an objective standard—
7   whether a reasonable person would foresee that the statement would be interpreted by those
8   to whom the maker communicates the statement as a serious expression of intent to harm or
9   assault." *Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*,
10  290 F.3d 1058, 1074 (9th Cir. 2002) (quoting *United States v. Orozco–Santillan*, 903 F.2d
11  1262, 1265 (9th Cir.1990)). "Alleged threats should be considered in light of their entire
12  factual context, including the surrounding events and reaction of the listeners." *Orozco–*
13  *Santillan*, 903 F.2d at 1265. "[C]ontext is critical . . . and history can give meaning to the
14  medium." *Planned Parenthood*, 290 F.3d at 1078. Predictive or exhortative statements do
15  not qualify as threats. *Bagdasarian*, 652 F.3d at 1119; *see also id.* at 1122 (holding that a
16  defendant's statements about then-presidential candidate Barack Obama did not qualify as
17  threats because "one is predictive in nature and the other exhortatory").)

18   In this case, none of the "cyber-bullying" or "threatening" statements cited by the
19  government constitute ***actual threats***. Instead, several of the statements are predictive or
20  exhortatory in nature. For example, the government cites to a voicemail defendant Peter
21  Santilli left with the Special Agent in Charge of the impoundment operation nearly two years
22  ago in November, 2014. (Doc. #357 at pp. 6:23-7:3.) In that voicemail, Mr. Santilli allegedly
23  stated "If you don't turn in favor of the constitution and the people, you are not going to live
24  a happy life here on earth sir." (*Id.* at p. 6:23-24.) This statement, which the government
25  characterizes as an example of "harassment and intimidation" is vague and predictive, and
26  therefore not a threat.

27   Moreover, the bulk of the social media posts the government relies on are over two
28  years old. Examples Nos. 1 through 10 and 16 through 22 were allegedly posted in April,

5

2014—over two years ago. Other, more recent "threatening" posts are largely innocuous in nature. For instance, there is no indication why the government considers Example No. 15 to be "threatening." (*See* 357-2 at p.14.) Additionally, it is unclear how that particular example is related to the instant prosecution, as it purports to depict a law enforcement officer a Facebook user speculates was involved in the Oregon event.[3]

The cases cited by the government also do not support its overbroad protective order, as those cases involved narrowly tailored protective orders dealing with specific items of discovery. For example, in *United States v. Pelton*, the government sought a protective order to prevent dissemination of tape recording which might have revealed the identity of a cooperating witness. *United States v. Pelton*, 578 F.2d 701, 706-07 (8th Cir. 1978). The scope of the protective order in *United States v. Fuentes*, 988 F. Supp. 861 (E.D. Penn. 1987), was similarly narrow in scope. There, the government identified specific dangers which necessitated protecting the identity of a confidential informant. *Fuentes*, 988 F. Supp. at 862-63. In order to address these specific concerns, the district court entered a narrowly tailored order limiting the defense's dissemination of the informant's identity. *Id.* at 867. Finally, in *United States v. Zelaya*, 336 Fed. Appx. 355 (4th Cir. 2009), the Fourth Circuit affirmed a district court's order preventing the defendants from learning the identity of two cooperating witnesses after the government made a specific *ex parte* showing that revealing the witnesses' true identities posed an actual threat to the witnesses' safety. *Zelaya*, 336 Fed. Appx. at 358.

Here, by contrast, the government is not seeking to restrict access to a limited class of documents or objects based on a specific showing of potential harm. Instead, the government relies on a series of nonspecific statements to place virtually all of the discovery in this case under an impenetrable shroud of secrecy. This runs contrary to the common law and First Amendment principles which dictate that the public has a right to see justice done in this case.

---

[3] It also appears that Example Nos. 13 and 14 are related to the Oregon case. Thus, it is difficult to discern how they are relevant to the instant matter.

### B. Redactions Can Address the Government's Concerns.

The government also appears to assert that its proposed protective order is necessary because other, less restrictive means would be too time-consuming. (*See* Doc. #357 at pp. 9:18-10:9.) This argument rings hollow, however, given that the government has apparently already dedicated "hundreds of hours reviewing, analyzing and organizing" evidence, and has a detailed index of the discovery it has reviewed. (Doc. #270 at pp. 4:24-5:3.) It is also notable that the government was able to redact identifying information from the examples it produced in support of its motion for a protective order. This demonstrates that redaction is a practical alternative to a total ban on the dissemination of discovery materials.

More importantly, however, this Court should not limit the public's right of access to this information simply because it is inconvenient for the government. "Where, as in the present case, the State attempts to deny the right of access in order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest. *Globe Newspaper Co. v. Superior Court for Norfolk Cty.*, 457 U.S. 596, 606-07 (1982) (citations omitted). The government cannot meet this high standard; avoiding inconvenience is not a compelling government interest, and the government's proposed protective order is plainly not "narrowly tailored."

### C. The Protective Order Entered in the Oregon Case is Irrelevant to the Instant Proceeding Given the Different Timeline in That Proceeding.

The government also cites to the protective order entered in the Oregon case, *United States v. Ammon Bundy, et al.*, Or. Dist. Ct. Case No. 16-cr-00051-BR, to support its request for a protective order in this matter. (Doc. #357 at p. 7:5-18; 8:13-19.) That case, however, is distinguishable from the instant matter because the government indicted the defendants there shortly after the events at the Malheur Wildlife Refuge. The government in the *Ammon Bundy* case filed its complaint on January 27, 2016, approximately two weeks before the standoff between the government and the protesters occupying the Malheur Wildlife Refuge

ended.[4] Here, the government filed a complaint on February 11, 2016—almost two years after the events described in the complaint occurred.

The Oregon district court's entry of the protective order in the *Ammon Bundy* case is also distinguishable because the protective order there met with very little resistance from the defendants. In that case, only two of the twenty-six defendants opposed the protective order. (*See* Or. Dist. Ct. Case No. 16-cr-00051-BR at Doc. #446, p.2.) By contrast here, only one defendant has indicated he will agree to the government's proposed protective order. (*See* Doc. #357 at p. 3:1-2 (noting that Defendant Ricky Lovelien "has indicated to government counsel that he will agree" to the protective order). Given the distinct differences between these two prosecutions, the Court should reject the government's argument that the Oregon case should serve as a guidepost in this matter.

Moreover, the district court's order in the *Ammon Bundy* case is not binding on this Court. First, the entry of the protective order was simply that—an order addressing the specific facts and circumstances of that prosecution. Second, trial orders in other cases are not binding on this Court. *See Willard v. Baker*, No. 3:11-CV-00876-MMD, 2013 WL 3776572, at *3 (D. Nev. July 16, 2013) (holding that a Massachusetts district court order was "not binding precedent in other federal district courts"); *cf. Brown v. Williams*, No. 2:10-CV-00407-PMP, 2013 WL 2218002, at *6 (D. Nev. May 20, 2013) ("Prior federal district court orders are not binding precedent within the district"); *Hart v. Massanari*, 266 F.3d 1155, 1172–73 (9th Cir.2001) (noting that the decision of one circuit court is not binding on district courts in other circuits).

## III.     CONCLUSION

As discussed in Intervenors' Opposition, the government bears the burden of demonstrating with specific demonstrations of fact that the entry of a protective order is necessary to protect against a specific harm or prejudice. *See, e.g., Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003) ("The party opposing disclosure has the

---

[4] *See* http://www.nbcnews.com/news/us-news/oregon-occupiers-surrounded-fbi-surrender-after-six-weeks-protest-n516336

burden of proving good cause, which requires a showing that specific prejudice or harm will result if the protective order is not granted.") The government has failed to meet this burden. Instead, it merely points to speech it does not like in order to, ironically, hinder the press's First Amendment protected right of access to discovery materials. The government has also failed to demonstrate why a more narrowly tailored protective order or other, less restrictive alternatives to a blanket protective order would not suffice in this case. Accordingly, this Court should reject the government's requested protective order.

DATED this 13th day of May, 2016.

/s/ Margaret A. McLetchie
MARGARET A MCLETCHIE, Nevada Bar No. 10931
ALINA M. SHELL, Nevada Bar No. 11711
**MCLETCHIE SHELL LLC**
701 East Bridger Ave., Suite 520
Las Vegas, Nevada 89101
(702) 728-5300
maggie@nvlitigation.com
*Counsel for Intervenors*

# CERTIFICATE OF SERVICE

I hereby certify that on this 3rd May, 2016, I did serve, via Case Management/Electronic Case Filing, a true and correct copy of the above and foregoing SUPPLEMENT TO INTERVENORS' MEMORANDUM IN OPPOSITION TO THE GOVERNMENT'S PROPOSED PROTECTIVE ORDER addressed to the following:

Joel F. Hansen
Hansen Rasmussen
1835 Village Center Circle
Las Vegas, NV 89134
*Attorney for Defendant (1) Cliven D. Bundy*

Angela H. Dows
Premier Legal Group
1333 North Buffalo Drive, Suite 210
Las Vegas, NV 89128
*Attorney for Defendant (2) Ryan C. Bundy*

Daniel Hill
Wolf, Rifkin, Shapiro & Schulman
3556 E. Russel Road, Second Floor
Las Vegas, NV 89120
*Attorney for Defendant (3) Ammon E. Bundy*

Ryan Norwood, Shari L. Kaufman, and William C. Carrico
Federal Public Defenders
411 E. Bonneville Avenue
Las Vegas, NV 89101
*Attorneys for Defendant (4) Ryan W. Payne*

Chris T Rasmussen
Rasmussen & Kang LLC.
330 S Third St., Suite 1010
Las Vegas, NV 89101
    and
Joshua Tomsheck
Hofland & Tomsheck
228 South Fourth Street
Las Vegas, NV 89101
*Attorneys for Defendant (5) Peter T. Santilli, Jr.*

/ / /

10

Lucas Gaffney
Oronoz, Ericsson & Gaffney LLC
1050 Indigo Drive, Suite 120
Las Vegas, NV 89145
*Attorney for Defendant (6) Melvin D. Bundy*

Cal J. Potter, III
Potter Law Offices
1125 Shadow Ln.
Las Vegas, NV 89102
*Attorney for Defendant (7) David H. Bundy*

Mace J Yampolsky
Mace Yampolsky, LTD
625 S. Sixth St.
Las Vegas, NV 89101
*Attorney for Defendant (8) Brian D. Cavalier*

Dennis Matthew Lay
Nguyen & Lay
732 S. Sixth St., Ste. 102
Las Vegas, NV 89101
*Attorney for Defendant (9) Blaine Cooper*

Brian James Smith
Law Office of Brian J. Smith, Ltd.
9525 Hillwood Drive, Suite 190
Las Vegas, NV 89134
*Attorney for Defendant (10) Gerald A. Delemus*

Jess R. Marchese
Law Office of Jess R. Marchese
601 South Las Vegas Boulevard
Las Vegas, NV 89101
*Attorney for Defendant (11) Eric J. Parker*

Craig W Drummond
Drummond Law Firm, P.C.
228 South Fourth St., First Floor
Las Vegas, NV 89101
*Attorney for Defendant (12) O. Scott Drexler*

/ / /

/ / /

11

Shawn R Perez
Law Office Of Shawn R. Perez
626 South Third Street
Las Vegas, NV 89101
*Attorney for Defendant (13) Richard R. Lovelien*

Richard E Tanasi
601 South Seventh St., Second Floor
Las Vegas, NV 89101
*Attorney for Defendant (14) Steven A. Stewart*

Julian R Gregory
Law Office of Julian Gregory, L.L.C.
324 S. Third St., Ste. 200
Las Vegas, NV 89101
*Attorney for Defendant (15) Todd C. Engel*

Terrence M Jackson
Law Office of Terrence M. Jackson
624 South Ninth Street
Las Vegas, NV 89101
*Attorney for Defendant (16) Gregory P. Burleson*

Andrea Lee Luem
Law Offices of Andrea L Luem
499 South Fourth St., Ste. 280
Las Vegas, NV 89101
*Attorney for Defendant (17) Joseph D. O'Shaughnessy*

Chris Arabia
601 South Tenth St.
Las Vegas, NV 89101
*Attorney for Defendant (18) Micah L. McGuire*

Kristine M Kuzemka
Kuzemka Law Group
9345 W. Sunset Road, Suite 100
Las Vegas, NV 89148
*Attorney for Defendant (19) Jason D. Woods*

/ / /

/ / /

/ / /

12

Erin M Creegan, Nicholas D Dickinson, and Steven W. Myhre
United States Attorney District of Nevada
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, NV 89101
    and
Nadia Janjua Ahmed
U.S. Attorney's Office
333 Las Vegas Blvd South
Las Vegas, NV 89101
*Attorneys for Plaintiff U.S.A.*

                               */s/ Pharan Burchfield*
                               An Employee of MCLETCHIE SHELL LLC