CHRIS T. RASMUSSEN, ESQ.
Nevada Bar No. 007149
RASMUSSEN & KANG, LLC
330 S. Third Street, Suite 1010
Las Vegas, Nevada 89101
(702) 464-6007
(702) 464-6009 (Fax)
chris@rasmussenkang.com
Attorney for Peter Santilli

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

UNITED STATES OF AMERICA, ) 2:16-CR-0046-GMN-PAL
Plaintiff,
v.
PETER SANTILLI,
Defendant.

**MOTION TO SEVER DEFENDANT SANTILLI FROM BEING TRIED WITH CO-DEFENDANTS AND LEAVE TO SUPPLEMENT**

Comes now, Defendant, PETER SANTILLI, by and through his attorney, Chris T. Rasmussen, Esq., and hereby moves this Court for an order to sever Santilli from the other co-defendants.[1]

DATED this 22nd day of May, 2016

/s/ Chris T. Rasmussen

CHRIS T. RASMUSSEN, ESQ.
Nevada Bar No. 007149
330 S. Third Street, Suite 1010
Las Vegas, Nevada 89101
(702) 464-6007
(702) 464-6009 (Fax)
Attorney for Defendant

[1] Santilli requests leave to Supplement this motion as discovery becomes available and the statements of all of the potential defendants are disclosed.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. FACTS

Santilli is the host of a radio show called "The Pete Santilli Show", this show has over 1500 episodes. The indictment alleges Santilli was involved in a conspiracy:

> Paragraph 43: Santilli was a leader and organizer of the conspiracy who, among other things: recruited Followers using the internet and other facilities in interstate commerce; led an assault on federal officers; threatened federal law enforcement officers; and participated in the extortion of the federal law enforcement officers.

(Indictment, pg. 13, lns 18-21).

The indictment further alleges that Cliven Bundy was on Santilli's radio show on April 8, 2014. See https://www.youtube.com/watch?v=-nTspLiE6jg . This interview took place via telephone and was broadcast from the State of California via the internet. This three hour video contains an interview with Cliven Bundy. Santilli broadcasts that a protest will take place at the Bundy Ranch and that everyone who is lawfully allowed to carry a firearm should come to protest on the private property of Bundy Ranch. This broadcast is essentially the first time Santilli becomes specifically aware of the Bundy situation with the BLM, and generally aware of the plight of western ranchers who use public lands.

On April 9, 2014, Santilli traveled to Bunkerville Nevada to cover the protests that were taking place on Bundy Ranch. The BLM on the 9th of April were spotted with heavy earth moving equipment which suggested to the Bundy family that their cattle were being destroyed and buried in the desert. They approached the BLM as they were coming off the land. Santilli broadcast the interaction between protestors and the BLM. During this interaction, the BLM were video recorded using police dogs and tasers to control the protesters. Santilli caught the entire event on his camera. This video went viral on YouTube and was the catalyst that delivered hundreds of demonstrators to Bundy Ranch.

The government has indicted nineteen persons that were located at or near Bundy Ranch on April 12, 2016. The diversity of alleged conduct near or around the wash area where the people gathered to protest BLM's actions is wide. Some of the charged defendants possessed firearms. Santilli never possessed a firearm during his time in

Nevada. In fact, he carried an Ipad that was attached to a tripod type device to cover the events. At no time did Santilli appear at the wash during the alleged "Stand off". Santilli was in the medium of Interstate 15 charging his batteries through his vehicle's power supply when the infamous "stand off" took place.

As this Court is aware, there are several defendants that are depicted in photos with firearms on top of the freeway overpass looking toward the commotion down below. The guilt by association with these armed individuals is great and prejudicial to Santilli.

Santilli has a wholly different defense in that he recorded the events during his days at Bundy Ranch. His broadcasts were his advocacy toward the plight of the ranchers in the western states that were losing control over land. These broadcasts are protected speech by the First Amendment, but are also being used as direct evidence against Santilli.

## II. ARGUMENT

### Santilli Should Be Severed From His Co-Defendants

The grounds for the severance of Santilli's trial from that of the other defendants is be premised upon Federal Rule of Criminal Procedure 14. Rule 14 provides:

> Relief from Prejudicial Joinder. If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the Court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

Severance for prejudicial joinder under Rule 14 is discretionary. *See e.g.*, *United States v. Lutz*, 621 F.2d 940 (9th Cir. 1980).

Rule 14 of the Federal Rules of Criminal Procedure provides that if it appears that a defendant is prejudiced by joinder of defendants in an indictment or by joinder for trial together, the Court may grant a severance or provide whatever other relief justice requires. *See e.g.*, *United States v. Escalante*, 637 F.2d 1197, 1201 (9th Cir. 1980); *United States v. Lutz*, 621 F.2d 940 (9th Cir. 1980); *United States v. Tousant*, 619 F.2d 810

(9th Cir. 1980). A motion for severance is addressed to the trial court's discretion. *United States v. Doe*, 655 F.2d 920, 926 (9th Cir. 1980); *United States v. Seifert*, 648 F.2d 557, 563 (9th Cir. 1980). The defendant must demonstrate that a joint trial is "so manifestly prejudicial that it outweighs the dominant concern with judicial economy and compels the exercise of the court's discretion to sever." *Doe*, 655 F.2d at 926.

Santilli's trial should be severed from that of his co-defendants for two reasons. First, Santilli will be denied access to the exculpatory testimony of his co-defendants. Second, the jury is likely to find Santilli guilty by association.

**A. <u>Santilli will be denied access to co-defendant exculpatory testimony</u>.**

Santilli's co-defendants may offer exculpatory testimony for Santilli at a separate trial, but will likely assert their Fifth Amendment right to remain silent if the defendants are tried together. Upon filing of an affidavit to this effect, Santilli is entitled to severance of his case from that of his co-defendants. *United States v. Vigil*, 561 F.2d 1316 (9th Cir. 1977); *United States v. Echeles*, 352 F.2d 892 (7th Cir. 1965). Santilli reserves the right to provide the Court with an affidavit which satisfies the requirements of *Vigil*, and thus supports the granting of a severance.

If the Court grants Santilli's motion to sever, Santilli requests that his trial be continued until after that of the co-defendants. If the co-defendants trial were to proceed after Santilli's, they would likely assert their Fifth Amendment right to remain silent at the first trial. The Ninth Circuit has recently re-emphasized that it may "be[ing] an abuse of discretion for the district court to grant severance expressly to enable a co-defendant witness to offer exculpatory testimony and then to deny the continuance which would have deterred the witness from invoking the fifth amendment." *United States v. Tham*, 948 F.2d 1107 (9th Cir. 1991), *superseded*, 960 F.2d 1391 (9th Cir. 1992); *United States v. Gay*, 567 F.2d 916, 921, n.8 (9th Cir. 1978). Accordingly, Santilli requests that he be tried after the co-defendants.

Even if the co-defendants will not voluntarily testify at his separate trial, Santilli has

a constitutional right to call him them as witnesses. If a co-defendant is called as a witness and refuses to answer questions based on Fifth Amendment privilege, Santilli can seek to compel that testimony by requesting immunity as to statements made in court. At that time, Santilli could seek an order requiring the government to grant use immunity to the co-defendant's testimony under 18 U.S.C. § 6003(b)(1). Such use of this statute is compelled by the Sixth Amendment's guarantee of compulsory process and by the Fifth Amendment's due process considerations of fairness. *See United States v. Leonard*, 494 F.2d 955, 985 n.79 (D.C. Cir. 1974) (concurring and dissenting opinion of J. Bazelon).

If statutory immunity is not appropriate, the Court can confer immunity independent of the prosecutor's statutory power because Santilli would be "prevented from presenting exculpatory evidence which is crucial to [his] case." *Government of the Virgin Islands v. Smith*, 615 F.2d 964, 969-70 (3d Cir. 1980); *see United States v. Alessio*, 528 F.2d 1029 (9th Cir. 1976). Santilli's rights to compulsory process and to due process of law entitle his to a separate trial if the co-defendant refuses to testify at a joint trial.

The crux of the allegations against Santilli is that he recruited people to come to Bundy Ranch. Santilli will be calling witnesses/defendants that will testify that Santilli's broadcasts were of no relevance to their decision to demonstrate on Bundy Ranch. Furthermore, these witness/defendants will testify that Santilli was never a leader or an organizer of any protest and that he was using recording equipment and wearing notification that he was "Press".

**B. <u>The Jury May Find Santilli Guilty by Association</u>.**

It is extraordinarily difficult for a jury to follow admonishing instructions and to keep separate evidence that is relevant only to co-defendants.

> A co-defendant in a conspiracy trial occupies an uneasy seat. This generally will be evidence of wrongdoing by somebody. It is difficult for the individual to make his own case stand on its own merits in the minds of jurors who are ready to believe that birds of a feather flocked together.

*Krulewitch v. United States*, 336 U.S. 440, 454 (1949). Santilli's defense is wholly different than the that of the other defendants. Santilli is the only person in the media that was

indicted. As part of his defense, Santilli intends on calling an expert to testify about "new media" and the internet. The government has continually attempted to discredit Santilli's role in the new media. Obviously, the internet has changed the way people obtain their news. Santilli is a new breed of journalist that offers an alternative news channel to that of the standard thirty minute loop of the daily events. His show used to run daily for over three hours in which he had numerous different guests with a myriad of opinions about a slew of different topics. Santilli will be presenting almost exclusively First Amendment defenses to the indictment. Specifically, the defense that his actions were not imminent as defined by case law.

**Conclusion**

Thus, this Court should sever Santilli from the other defendants in the instant case and set two separate trials.

DATED this 22nd day of May, 2016.

/s/ Chris T. Rasmussen

CHRIS T. RASMUSSEN, ESQ.
Nevada Bar No. 007149
330 S. Third Street, Suite 1010
Las Vegas, Nevada 89101
(702) 464-6007
(702) 464-6009 (Fax)
Attorney for Defendant