DANIEL G. BOGDEN
United States Attorney
STEVEN W. MYHRE
NICHOLAS D. DICKINSON
Assistant United States Attorneys
NADIA J. AHMED
ERIN M. CREEGAN
Special Assistant United States Attorneys
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada  89101
PHONE: (702) 388-6336
FAX: (702) 388-6698

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CLIVEN D. BUNDY,<br><br>　　　　　Defendant. | 2:16-CR-00046-GMN-PAL<br><br>**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT CLIVEN BUNDY'S MOTION TO DISQUALIFY JUDGE GLORIA NAVARRO**<br>**(ECF No. 427)** |

**CERTIFICATION:  Pursuant to Local Rule 12-1, this Response is timely filed.**

The United States, by and through the undersigned, respectfully submit its Response in Opposition to defendant Cliven D. Bundy's ("Bundy") Motion to Disqualify Judge Gloria Navarro (ECF No. 427) (hereinafter "Motion").  For the reasons set forth in detail below, the Motion should be denied.  It fails to set forth any facts, or proof of facts, that would remotely cause a reasonable person to question the impartiality of the Chief Judge; it offers only speculation and innuendo.

# BACKGROUND

Bundy was arrested in the District of Oregon on February 10, 2016, and charged by a Complaint filed in the District of Nevada on February 11, 2016. On March 2, 2016, Bundy was charged in a sixteen-count Superseding Criminal Indictment ("SSI"), charging him with violations of Title 18, United States Code, Section 371 (Conspiracy to Commit an Offense Against the United States), 372 (Conspiracy to Impede and Injure a Federal Officer), 111 (a) and (b) (Assault on a Federal Officer); 115(a)(1)(B) (Threat Against a Federal Officer); 1503 (Obstruction of Justice); 1951 (Interference with Interstate Commerce by Threat); and 1952 (Interstate Travel in Aid of Racketeering). The charges arising from the same events charged in the initial Complaint, the Superseding Indictment against Bundy charged him with four counts in violation of Title 18, United States Code, Section 924(c) (use and carry a firearm in relation to a crime of violence).

Having been detained pretrial following two fulsome detention hearings, Bundy filed a Motion with this Court seeking to revoke the detention order entered in this case. In the May 10, 2016 hearing on that motion, Bundy's counsel served Chief Judge Gloria Navarro (hereinafter also referred to as "Chief Judge" or "Presiding Judge") in open court with a civil Complaint, naming her, President Obama, Senator Harry Reid and Senator Harry Reid's son as defendants. Among other things, the Complaint alleges a fantastical conspiracy theory in which several members of the United States Government's different branches conspired against Bundy and his family. Counsel also represented at the hearing that the Presiding Judge recuse herself from the case.

The Court held Bundy's motion to revoke his detention order in abeyance and ordered Bundy to file any recusal motion on or before May 20, giving the government until noon on May 24 to file a response.

On May 20, 2016, Bundy filed the instant motion to disqualify the Presiding Judge under 28 U.S.C. § 144.  He bases his motion on the fact of his civil suit against the Presiding Judge, her rulings in this case, the fact that her husband is a Chief Deputy District Attorney in the Clark County District Attorney's Office and the fact of her appointment by President Obama.   The Motion should be denied.

## **LEGAL STANDARD**

Judicial integrity is imperative. *Stone v. Powell,* 428 U.S. 465 (1976). All judges are entitled to a presumption for integrity and impartiality. *Withrow v. Larkin*, 421 U.S. 35, 47 (1975).

Although Cliven Bundy's affidavit attached to the motion references 28 U.S.C. § 455, the Court considers the motion under 18 U.S.C. § 144, which states:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The legal sufficiency of the motion is determined by the judge against whom recusal is sought.  *United States v. Azhocar,* 581, F.2d 735, 738 (9th Cir. 1978). Only after the legal sufficiency of the affidavit is determined does it become the duty of the judge to "proceed no further" in the case.  *Id.* (citations omitted).  The affidavit must "state facts and reasons which tend to show personal bias and prejudice regarding justiciable matter pending and must give support to the charge

3

of a bent of mind that may prevent or impede impartiality or judgment." *Hussein v. University and Community College System of Nevada,* 2010 WL 3385298 (D.Nev. Aug. 24, 2010) (citation omitted).

"The substantive standard for recusal under 28 U.S.C. § 144 and 28 U.S.C. § 455 is the same: Whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *United States v. McTiernan*, 695 F.3d 882, 891 (9th Cir. 2012) (quoting *United States v. Hernandez*, 109 F.3d 1450, 1453 (9th Cir. 1997) (per curiam) (brackets and internal quotation marks omitted)). "Although a judge is generally required to accept the truth of the factual assertions in an Affidavit of Bias filed pursuant to 28 U.S.C. §144 . . . allegation[s] of ex parte communications relates to facts that [are] peculiarly within the judge's knowledge. *Ronwin v. State Bar of Arizona*, 686 F.2d 692 (9th Cir. 1981), *rev'd on other grounds, Hoover v. Ronwin*, 466 U.S. 558 (1984).

The source of any alleged bias must be extrajudicial. *Liteky v. United States,* 510 U.S. 540 (1994). "A judge's prior adverse ruling is not sufficient cause for recusal." *McTiernan,* 695 F.3d at 893; *United States v. Nelson*, 718 F.2d 315, 321 (9th Cir. 1983) (erroneous adverse rulings do not constitute the requite bias needed for recusal). Unless the judge's actions "display a deep-seated favoritism or antagonism that would make fair judgment impossible," judicial bias or prejudice formed during current or prior proceedings is insufficient for recusal. *Liteky* 510 U.S. at 541; *Pesnell v. Arenalut*, 543 F.3d 1038, 1044 (9th Cir. 2008). Judicial rulings will only support a motion for recusal "in the rarest of circumstances."

*Liteky,* 510 U.S. at 555; *United States v. Chischilly,* 30 F.3d 1144, 1149 (9th Cir.1994).

"A judge is not disqualified by a litigant's suit or threatened suit against [her], or by a litigant's intemperate and scurrilous attacks." *United States v. Studley*, 783 F.2d 934, 940 (9th Cir. 1986) (citations omitted).

## ARGUMENT

Bundy's affidavit provides no evidence to advance the proof of any fact in support of recusal – it offers only a mishmash of inferences drawn from speculation and innuendo. Thus no reasonable person with knowledge of all the facts would question the impartiality of the Presiding Judge.

As a threshold matter, the pleading should be stricken altogether as vexatious. The Motion (at 10) is signed by Larry Klayman ("Klayman") supposedly appearing in this case as "of counsel" under the supposed authority of "Pro Hac Vice Application Pending." His name appears again in similar fashion in the supposed certificate of good faith filing (at 2).

The representation that Klayman's "application is pending" is a false statement not made by accident or mistake and with a design to vex. This Court has clearly denied Klayman's application to appear *pro hac vice* not once, but twice. ECF No. 215 and 272. Denying an application is not akin to "application pending." And the words "application pending" provide no more authority for Klayman to appear and practice law in this Court than the words "bar exam results pending" would for a law student seeking to appear in this case.

5

The fact that counsels' signatures appear over these obviously false statements leads to the irreducible corollary that they were placed there to register their disrespect for this Court's rulings on the Klayman application and to question the Court's authority in making that ruling. The fact that the pleading is captioned as a Motion to Recuse provides no safe harbor for this irresponsible and vexatious conduct.

To the extent the Court does not strike it, the Motion is otherwise without merit and should be denied. It advances no proof of any fact that would lead a reasonable person to question the impartiality of the Chief Judge. Inferences from facts must be reasonable and not speculative. *Cheney v. U.S. Dist. Ct.*, 541 U.S. 913, 914 (2004) (memorandum of Scalia, J. denying motion to recuse) ("The decision whether a judge's impartiality can 'reasonably be questioned' is to be made in light of the facts as they existed, as not as they were surmised or reported.") (citation omitted). Here, defendant Bundy only offers speculation and innuendo.

Bundy claims that the fact that the Presiding Judge's spouse is employed as a Chief Deputy District Attorney with the Clark County District Attorney's Office ("CCDAO") raises a conflict, claiming he has "not been informed that the District Attorney for Clark County has rejected any possibility of prosecuting me or my family." Aff. ¶ 17. Obviously, the flip side of that is equally true: Neither has Bundy been informed that the CCDAO is prosecuting him or his family.

The negative does not prove the affirmative and, thus, this flawed logic cannot support recusal. This case has been under investigation by the Federal Bureau of Investigation for more than two years and was referred to and brought by

the United States Attorney's Office for the District of Nevada. And, while the CCDAO has the authority to bring whatever state charges it would deem appropriate, it has not done so to date and probably for the obvious and prudent reason that the case is already being prosecuted federally on very serious federal charges. Bundy offers no explanation as to why the CCDAO would, at this time, divert its scarce resources from the important work it is doing in order to double down on a prosecution that has already been undertaken by another office.

Nor does he advance any evidence that charges are being contemplated by the CCDAO or by the Chief Judge's husband within the CCDAO. Bundy claims that "Senator Reid, acting in concert with others, asked the Sheriff of Clark County to prosecute [him] and [his] family" (aff. ¶ 14) and that "double-prosecution by both federal and state prosecutors has become a common-place hardball pressure tactic . . . there is every reason to expect" that the CCDO will bring charges. Aff. ¶ 16. He offers no evidence in support of either statement, but even if he had, it would not advance proof of any relevant fact. One would suspect that the Clark County Sheriff receives requests to perform a host of things by a whole host of people every day of every week. But every-day experience informs that, day in and day out, requests do not translate into actions for many different and prudent reasons.

Bundy fails to show how, in this instance, a request by Senator Reid (if one was ever made), an elected federal official, to the Sheriff of Clark County, an elected state official, would cause another elected state official (the Clark County District Attorney) to bring state charges against him. Conspiracy theories should not

support recusal motions and the Court should refuse the invitation to engage in them here in order to draw inferences that run counter to everyday experience.

The same is true as to Bundy's so-called double prosecution theory. While theoretically it may be possible to bring simultaneous charges in state and federal court, every-day experience informs that simultaneous prosecutions are rare for hosts of legal, regulatory, and strategic considerations. More to the point, however, no simultaneous prosecution exists in this case and if the theoretical possibility of the state's simultaneous prosecution of a federal case – and the theoretical possibility that the Chief Judge's spouse could theoretically be involved in a charging decision -- is the standard for recusal, the Presiding Judge would be disqualified from almost every criminal case over which she presides. Bundy offers nothing but speculation in support of the negative and conspiratorial inferences he seeks to draw from the fact that the judge is married to a prosecutor in the CCDAO. *See Sensley v. Albritton,* 385 F.3d 591, 599 (5th Cir. 2004 (judge's impartiality not reasonably questioned though judge's wife was an Assistant District Attorney in the office representing defendants because wife had no direct interest in the case).

The same is true as to Bundy's allegation that the Chief Judge engaged in improper *ex parte* communications and that her appointment by President, on the recommendation of Senator Reid, will improperly influence her.[1] Federal judges are

---

[1] Bundy also claims that the Presiding Judge was privy to *ex parte* communications because she referenced Bundy's wife at the May 10, 2016 hearing. The Presiding Judge only referenced Bundy's wife after Bundy's counsel made the unusual request that his wife be allowed to sit at counsel table. Moreover, any comment by the Presiding Judge during the proceedings in this case does not warrant recusal. *See Liteky* 510 U.S. at 541; *Pesnell v. Arenalut,* 543 F.3d 1038, 1044 (9th Cir. 2008).

8

appointed for life precisely for reason of avoiding the appearance that their jobs somehow depend upon their rulings. To assume that a judge cannot be impartial because she had some contact with members of the legislative branch during the confirmation process is to assume there is no impartiality in a judge at all: that she is forever bound to do the will of other branches of government. This upsets judicial independence and the separation of powers broadly, and flied in the face of the presumption that judges are impartial. *Withrow,* 421 U.S. at 47.

Moreover, courts have squarely rejected this argument. For example, in *MacDraw, Inc. v. CIT Group Equipment Financing, Inc.*, 138 F. 3d 33 (2d Cir 1998), counsel (including Larry Klayman) suggested that a judge who was a Clinton appointee was biased against them because they were involved in a campaign financing matter that affected the Clinton Administration. The Second Circuit upheld the judge's decision to sanction counsel for implying partiality merely based on the fact that the current administration appointed the judge. The court concluded:

> Nor should one charge that a judge is not impartial solely because an attorney is embroiled in a controversy with the administration that appointed the judge. Judges generally have political backgrounds to one degree or another but must be presumed, absent more, to be impartial. At least in the federal system, judges separate themselves from politics when going on the bench, and their life tenure reduces any felt reliance on political patrons. Indeed, a suggestion of partiality based on the appointing administration may often be a double-edged sword. If a Democratic appointee's impartiality toward lawyers publicly identified as active Republicans may be questioned, a Republican appointee's impartiality toward lawyers' adversaries might similarly be questioned on the ground that a Republican judge might favor the Republican lawyers. Finally, appointment by a particular administration and membership in a particular racial or ethnic group

> are in combination not grounds for questioning a judge's impartiality. Zero plus zero is zero.

*Id.* at 38. The references in the instant motion to Senator Reid and President Obama's comments are not properly attributable to the Presiding Judge, who is presumed to be impartial and who has made no extrajudicial comments about the case. No reasonable person would believe that President Obama and Senator Reid were surreptitiously signaling to the Presiding Judge their wishes for a particular outcome in her rulings. Just as no reasonable person would believe the conspiracy theory that Senator Reid and his son conspired with sitting federal judges to issue court orders authorizing the impoundment of Bundy's cattle, so that Senator Reid could acquire defendant Bundy's land for sale to a Chinese company.

Bundy references the fact that he is detained and being held in "solitary confinement."[2] A judge's decision not to grant bail is not a basis for recusal. *United States v. Cruzado-Laureano*, 527 F.3d 231, 238-39 (1st Cir. 2008). Even if Bundy's detention could form a basis for recusal, defendant Bundy fails to state how two different magistrate judge's detention orders are imputed to Chief Judge Navarro.[3]

---

[2] At the May 10, 2016 hearing, Chief Judge Navarro stated that there was no court order providing that Bundy be detained in "solitary confinement." Moreover, defendant Bundy's counsel eventually conceded that defendant Bundy agreed to his detention classification.

[3] District of Oregon United States Magistrate Judge Janice M. Stewart detained defendant Bundy. Subsequently United States Magistrate Judge Carl Hoffman, over the Government's objection, reopened Bundy's detention hearing and considered the new evidence submitted to the Court. After re-opening the detention hearing and considering the evidence and argument presented, Judge Hoffman ordered Bundy's continued detention

Moreover, the fact that defendant Bundy sued the Presiding Judge does not warrant recusal. *See e.g., Studley*, 783 F.2d at 940; *Azubuko v. Royal*, 443 F.3d 302, 304 (3d Cir. 2006) (no bias shown though plaintiff had lawsuit pending against judge because mere fact of pending lawsuit not sufficient to warrant recusal). This is especially true when the basis for the lawsuit is the Presiding Judge's rulings in the criminal case.

"A judge must not simply recuse out of an abundance of caution when the facts do not warrant recusal. Rather, there is an equally compelling obligation not to recuse where recusal is not appropriate." *United States v. Davis*, No. 2:13-CR-00301-APG, 2013 WL 6389133, at *3 (D. Nev. Dec. 6, 2013) "We are as bound to recuse ourselves when the law and facts require as we are to hear cases when there is no reasonable factual basis for recusal." *United States v. Holland,* 519 F.3d 909, 912 (9th Cir.2008); *see also United States v. Sierra Pac. Indus.,* 759 F.Supp.2d 1198, 1200–01 (E.D.Cal. 2010). Moreover, courts should be extremely reluctant to adopt recusal rules that would "encourage [others] to suggest improprieties, and demand recusals, for other inappropriate … reasons." *Cheney*, 541 U.S. at 927.

Cliven Bundy's actions, including pursuing a frivolous civil lawsuit against the Presiding Judge and questioning her of partiality on frivolous grounds, do not require recusal. To the contrary, to maintain the integrity of the judiciary, the Court should not surrender to tactics designed solely to vex and create a false appearance.

**WHEREFORE**, for all the foregoing reasons, the government respectfully requests that the Court deny the Motion to Recuse.

**DATED** this 24th day of May, 2016.

Respectfully,

DANIEL G. BOGDEN
United States Attorney

//s//
_____
STEVEN W. MYHRE
NICHOLAS D. DICKINSON
Assistant United States Attorneys
NADIA J. AHMED
ERIN M. CREEGAN
Special Assistant United States Attorneys

Attorneys for the United States

# CERTIFICATE OF SERVICE

I certify that a copy of the foregoing **GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT CLIVEN BUNDY'S MOTION TO DISQUALIFY JUDGE GLORIA NAVARRO** was served upon counsel of record, via Electronic Case Filing (ECF).

Dated this 24th day of May, 2016.

/s/ Steven W. Myhre

STEVEN W. MYHRE
Assistant United State Attorney