UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br>v.<br>MELVIN D. BUNDY, et al.,<br><br>                    Defendants. | Case No. 2:16-cr-00046-GMN-PAL<br><br>**ORDER**<br><br>(*Ex Parte* Mot. for Subpoena – Dkt. #420) |

This matter is before the Court on Defendant[1] Melvin D. Bundy's *Ex Parte* Motion for Subpoena (Dkt. #420), filed May 16, 2016. This Motion is referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and LR IB 1-3 and 1-7 of the Local Rules of Practice.

## **BACKGROUND**

A federal grand jury returned a Superseding Criminal Indictment (Dkt. #27) on March 2, 2016, charging Mr. Bundy with 14 counts of the following offenses: conspiracy to commit an offense against the United States, in violation of 18 U.S.C. § 371; conspiracy to impede or injure a federal officer, in violation of 18 U.S.C. § 372; use and carry of a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c); assault on a federal officer, in violation of 18 U.S.C. § 111(a)(l) and (b); threatening a federal law enforcement officer, in violation of 18 U.S.C. § 115(a)(l)(B); obstruction of the due administration of justice, in violation of 18 U.S.C. § 1503; interference with interstate commerce by extortion, in violation of 18 U.S.C. § 1951; and interstate travel in aid of extortion, in violation of 18 U.S.C. § 1952. Additionally, Mr. Bundy is charged in all five forfeiture allegations.

---

[1] Defendant represents that his true name is Mel Dallen Bundy. *See* Minutes of Proceedings (Dkt. #143). For the purposes of this Order, all references to "Mr. Bundy" shall refer to Mel Dallen Bundy a/k/a Melvin D. Bundy.

1  On March 4, 2016, Mr. Bundy made an initial appearance before Magistrate Judge David K. Duncan in the United States District Court for the District of Arizona pursuant to Rule 5(c)(3) of the Federal Rules of Criminal Procedure. *See* Rule 5(c)(3) Docs. Received (Dkt. #102). He waived his right to an identity hearing in Arizona and was committed to the District of Nevada. *Id*. On March 16, 2016, Mr. Bundy made his initial appearance in this district and was appointed counsel to represent him. *See* Mins. of Proceedings (Dkt. #143). The Court granted defense counsel's request a continuance of the proceeding to allow Mr. Bundy to review the Superseding Indictment and to prepare for the detention hearing. *Id*. On March 21, 2016, the Court arraigned Mr. Bundy on the Superseding Indictment and detained him pending trial. *See* Mins. of Proceedings (Dkt. #164); Order of Detention (Dkt. #197). Trial in this matter is currently set for February 6, 2017. *See* Case Management Order (Dkt. #321).

The Superseding Indictment (Dkt. #27) resulted from a series of incidents that occurred in and around Bunkerville, Nevada, in April 2014. The Government alleges that the 19 Defendants planned, organized, conspired, led, and/or participated as gunmen in a massive armed assault against federal law enforcement officers all in order to threaten, intimidate, and extort the officers into abandoning approximately 400 head of cattle owned by Defendant Cliven D. Bundy ("Cliven Bundy"). Law enforcement officers acted pursuant to three orders issued by a federal court to seize and remove the cattle from federal public lands based on Cliven Bundy's refusal to obtain the legally-required permits or pay the required fees to keep and graze his cattle on the land.

The Superseding Indictment further alleges that a removal operation began on April 5, 2014, and on April 12th, Defendants along with hundreds of recruited "followers" executed a plan to recover the cattle by force, threats, and intimidation. Defendants and their followers demanded that officers leave and abandon the cattle, threatening to use force if the officers did not do so. Armed gunman took sniper positions behind concrete barriers and aimed their assault rifles at the officers. Defendants and their followers outnumbered the officers by more than 4 to 1 and the potential firefight posed an obvious threat to the lives of the officers as well as unarmed bystanders and children. Thus, the officers were forced to leave and abandon the cattle.

After this confrontation, the leaders and organizers of the conspiracy organized armed security patrols and checkpoints in and around Cliven Bundy's Bunkerville ranch to deter and prevent any future law enforcement actions against Cliven Bundy or his coconspirators and to protect his cattle from future removal actions.

The *ex parte* Motion (Dkt. #420) seeks issuance of a subpoena to Round Mountain Gold Company, which employed Mr. Bundy during the relevant time period in this case, in order to obtain his employment records:

> Any and all records regarding the employment of Melvin D. Bundy. Such records to include, but not limited to, are the following: employment file, timekeeping records, disciplinary records, reports, pay stubs, personnel files, and any other records in your possession related to Mr. Bundy's employment at Round Mountain Gold Company.

*See* Proposed Subpoena (Dkt. #420-1). In the sealed *ex parte* application, defense counsel explains why the records are pertinent to, and may be used in Mr. Bundy's defense.

## DISCUSSION

I. **APPLICABLE LAW**

A. **Rule 17 of the Federal Rules of Criminal Procedure**

Rule 17 of the Federal Rules of Criminal Procedure governs the issuance of subpoenas in criminal proceedings. *See, e.g.*, *United States v. Sellers*, 275 F.R.D. 620, 622 (D. Nev. 2011). Rule 17 establishes the process by which federal courts can issue subpoenas duces tecum for the production of evidence before trial. Rule 17(c) governs the production of documents and objects and provides:

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Fed. R. Crim. P. 17(c)(1). Rule 17(b) describes the procedure for defendants who are unable to pay the requisite witness fees and permits an *ex parte* application by a defendant requesting that the court issue a subpoena. The court will authorize issuance of a subpoena to a defendant who is unable to pay "if the defendant shows an inability to pay the witness's fees and the necessity of the witness's presence for an adequate defense." Fed. R. Crim. P. 17(b). "Although prior

3

judicial authorization is required, the *ex parte* nature of a Rule 17(b) application serves to put a defendant on equal footing with the Government because the Government is not required to give a defendant notice as to those witnesses that it intends to subpoena to testify at trial." *United States v. Reyes*, 162 F.R.D. 468, 469 (S.D.N.Y. 1995).

Unlike a subpoena issued under Rule 17(a) or 17(b) to compel a witness to appear at trial, the district court has discretion to direct that a subpoena duces tecum be made returnable *before* trial. *United States v. Lieberman*, 608 F.2d 889 (1st Cir. 1979); *United States v. Murray*, 297 F.2d 812 (2nd Cir. 1962); *United States v. Parker*, 586 F.2d 422 (5th Cir. 1978). However, Rule 17 is not a discovery device. *United States v. Nixon*, 418 U.S. 683, 689 (1974), *superseded by statute on other grounds*, Fed. R. Evid. 104(a), *as recognized in Bourjaily v. United States*, 483 U.S. 171, 179 (1987); *see also United States v. LaRouche Campaign*, 841 F.2d 1176, 1179 (1st Cir. 1988); *United States v. Fletcher*, 461 F. Supp. 2d 1101, 1102 (D. Ariz. 2006) ("Subpoenas issued pursuant to Rule 17(c) are not discovery devices and may not be used to expand the scope of Rule 16."); *United States v. Shinderman*, 232 F.R.D. 147, 150 (D. Me. 2005); *United States v. Carter*, 15 F.R.D. 367, 369 (D.D.C. 1954) ("to construe Rule 17 as a discovery rule would render Rule 16 nugatory and meaningless and would defeat its limitations"). Rule 17(c) may, however, be used to obtain evidentiary materials. *See Nixon*, 418 U.S. at 699–700.

**B.     Good Cause Standard for Pretrial Production**

The burden is on the party seeking production to show good cause for the production before trial. *United States v. Beckford*, 964 F. Supp. 1010, 1022 (D. Va. 1997). In *United States v. Iozia*, 13 F.R.D. 335 (D.C.N.Y. 1952), the district court formulated a standard for establishing good cause for production prior to trial by requiring a showing:

(1)     That the documents are evidentiary and relevant;
(2)     That they are not otherwise procurable by the defendant reasonably in advance of trial by exercise of due diligence;
(3)     That the defendant cannot properly prepare for trial without such production and inspection in advance of trial and the failure to obtain such inspection may tend unreasonably to delay the trial;
(4)     That the application is made in good faith and is not intended as a general fishing expedition.

*Id*. at 338. Many federal courts have generally followed the *Iozia* test for establishing good

cause for pretrial production. *See*, *e.g.*, *Nixon*, 418 U.S. at 699; *Sellers*, 275 F.R.D. at 623; *United States v. Stein*, 488 F. Supp. 2d 350, 366 (S.D.N.Y. 2007).

In *Nixon*, the Supreme Court held that the party seeking pretrial production bears the burden of establishing relevancy, admissibility, and specificity. *Id*. at 700. The burden is on the party seeking the subpoena "to show the evidentiary nature of the requested materials with appropriate specificity." *United States v. Skeddle*, 178 F.R.D. 167, 168 (N.D. Ohio 1996). Conclusory allegations of relevance and admissibility are insufficient. *United States v. Eden*, 659 F.2d 1376, 1381 (9th Cir. 1981). It is not enough that the documents requested in a Rule 17(c) subpoena duces tecum may have some potential of relevance and evidentiary use. *United States v. Burger*, 773 F. Supp. 1419, 1425 (D. Kan. 1991). Rather, there must be a sufficient likelihood that the requested material is relevant to the offenses charged in the indictment, and the moving party must make a sufficient preliminary showing that the requested material contains admissible evidence regarding the offenses charged. *Nixon*, 418 U.S. at 700.

### C. *Ex Parte* Applications for Pretrial Production

Rule 17(b) allows an *ex parte* application by a defendant unable to pay for an order compelling a witness to appear. *See Sellers*, 275 F.R.D. at 624. Rule 17(c), however, does not contain any language allowing an *ex parte* application for pretrial production by a defendant without financial means. *Id*. Courts are split as to whether a party may make an *ex parte* application for a pretrial subpoena duces tecum, and the Ninth Circuit has not ruled upon the issue. *Id.* (collecting cases and legal treatises and discussing rationale for and against). This Court agrees with those courts which have found that an indigent defendant should be permitted to make an *ex parte* application for pretrial production of documents and a subpoena may be issued under limited circumstances, such as (i) where identification of the source of evidence potentially imperils the source or integrity of evidence; (ii) where notice of a subpoena duces tecum would compromise defense counsel's trial strategy; or (iii) where a constitutional interest of a defendant is implicated. *Id*.

/ / /

/ / /

## II. ANALYSIS

The Court finds that Mr. Bundy has met his burden under *Iozia* of establishing the need for pretrial production of the materials described in the proposed subpoena to Round Mountain Gold Company. He has also met his burden of showing relevancy, admissibility, and specificity for the requested information. Producing the records in advance will avoid delaying the trial while counsel reviews what may prove to be voluminous records. However, Rule 17(c)(1) does not authorize issuance of a subpoena duces tecum requiring pretrial production of documents to counsel's office. Because the proposed subpoena would require pretrial production directly to the office of defense counsel, the Court will not issue the proposed subpoena in its current form. Instead, the Court will order the documents to be produced to the Clerk of the Court, who will notify counsel for both sides when the documents are received that they are available for inspection and copying.

None of the limited circumstances to justify an *ex parte* subpoena are apparent in the Motion (Dkt. #420). Rule 17(c)(1) plainly provides that "[t]he court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence" and "may permit the parties and their attorneys to inspect all or part of them." Mr. Bundy is not entitled to pretrial production of evidentiary materials without notice or disclosure to opposing counsel. While the Motion may remain sealed because it discloses defense strategy, the subpoena itself does not, and will not be sealed. Counsel for Mr. Bundy does not claim that the source or integrity of any potential evidence or that any other constitutionally protected interest of Mr. Bundy would be imperiled by disclosure of the subpoena to opposing counsel. Although the Court finds good cause for the Motion to remain *ex parte* and under seal, *see Sellers*, 275 F.R.D. at 624; *Reyes*, 162 F.R.D. at 470 ("There are strong policy reasons in favor of an ex parte procedure."), the Court finds no justification for an *ex parte* subpoena for pretrial production of records.

To comply with Rule 17, the Court will direct issuance of a subpoena directing the custodian of records to produce the designated items to the Clerk of the Court by June 27, 2016. Upon receipt of the documents, the Clerk shall make the documents available for inspection and

1  copying to counsel for Mr. Bundy and the government prior to trial. The Court will also allow
2  the cost of process, fees, and expenses for the subpoena to be paid as if subpoenaed on behalf of
3  the government.

4  Accordingly,

5  **IT IS ORDERED:**

6  1. Defendant Melvin D. Bundy's *Ex Parte* Motion for Subpoena (Dkt. #420) is GRANTED, and shall remain under seal.

8  2. The Clerk of the Court shall issue a subpoena, conforming to the Court's instructions, and deliver a copy of this Order and the subpoena to the U.S. Marshal for service.

10  3. The U.S. Marshal shall serve the subpoena and a copy of this Order to Round Mountain Gold Company via facsimile at (775) 655-0093.

12  4. The Round Mountain Gold Company shall produce and forward records responsive to the subpoena by **June 27, 2016**, along with a copy of this Order, to:

   Clerk of Court
   United States District Court for the District of Nevada
   333 Las Vegas Blvd., South
   Las Vegas, Nevada 89101

17  5. Upon receipt of the records, the Clerk of Court shall notify counsel for both parties that they are available for inspection and copying.

19  6. The cost of process, fees, and expenses for the subpoena shall be paid as if subpoenaed on behalf of the government, the Court being satisfied that Defendant Melvin D. Bundy is financially unable to pay the fees and expenses.

22  Dated this 27th day of May, 2016.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE