Ryan Bundy, *Pro Se*
Inmate: Swis #795070
11540 NE Inverness Drive
Portland, OR 97220
*Defendant*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>RYAN BUNDY, *et al.*,<br><br>　　　　Defendants. | CASE NO.: 2:16-CR-00046-GMN-PAL<br><br>**DEFENDANT RYAN BUNDY'S REPLY IN SUPPORT OF HIS OBJECTIONS [DKT. NO. 367] TO MAGISTRATE JUDGE ORDER DENYING MOTION FOR EXTENSION OF TIME FOR DETENTION HEARING [DKT. NO. 288]** |

**Certification: Defendant Ryan Bundy certifies that this Reply is timely filed.**

　　This is defendant Ryan Bundy's ("Ryan") Reply in support of his Objections (DKT. NO. 367) to the Magistrate Judge's denial (DKT. NO. 288) of Ryan's oral Motion to Continue and to the detention order issued in conjunction therewith.  The government filed its Response in Opposition (DKT. NO. 432)("Response") arguing primarily that Ryan's objections are "moot" because he "is currently detained in Oregon pending trial there and is not available for a rehearing in the District of Nevada. *See* Dkt. No. 432, at p. 1.  The government also argues the merits. *Id*. at p. 10-15.  Throughout its Response, the government never fully comes to terms with the requirements of, *inter alia*, 18 U.S.C. § 3142(f)(2)(B).  The Magistrate Judge erroneously denied Ryan additional time to prepare for his detention hearing, and the subsequent detention order was entered in violation of established due process standards, based upon binding Ninth Circuit and United States Supreme Court precedent.  Ryan has therefore requested that the court reverse the

reverse the Magistrate's order, or alternatively, for "good cause," vacate the detention order, and order that a new detention hearing be conducted before the Magistrate Judge.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   ARGUMENT**

The relief requested in Ryan's objection (vacating the pretrial detention order and a new pretrial hearing before the Magistrate) is pursuant to Local Rule IB 3-1(a), which states that the "district judge may reconsider any pretrial matter…when it has been shown the magistrate judge's order is clearly erroneous or contrary to law." *See also* 28 U.S.C. § 636(b)(1)(A). "The district judge may affirm, reverse, or modify, in whole or in part, the magistrate judge's order." LR  IB 3-1(b). The government does not counter this argument or authority.

**A.   Magistrate Judge Foley Should Have Granted The Requested Continuance, And The Issue is Not Moot.**

The government concedes, as it must, that Ryan made an oral motion for a continuance based upon factors such as his lack of access to the court, lack of access to materials with which to write, lack of access to any discovery or evidence, and lack of notice of any proffered evidence to be provided by the government at the hearing. *See* Response at p. 5.  The government also concedes that the Bail Reform Act provides that a hearing should be continued for "up to five days, or more for *good cause*." *Id*.   But, the government focuses primarily upon the question of evidence and its availability.  It notes that "Detention hearings are routinely held without a defendant being privy to the Government's specific evidence or arguments prior to the hearing." *Id*.  Significantly, however, the government cites no authority establishing the validity of this supposedly common approach, and fails to address the controlling Ninth Circuit and United States Supreme Court cases cited by Ryan to establish the necessity of him having access to this information prior to any Bail Reform Act detention hearing.   Ryan has previously argued that good cause existed so that "he might prepare to present evidence, call witnesses, and otherwise fully participate, make argument and a showing of evidence as provided in the Bail Reform Act." Dkt. No. 367 at p. 2.  This is important because it is not simply that the government failed to

2

provide evidence, notice of evidence, or advance notice of proffer, but through the government's pretrial detention conditions – Ryan was prevented from exercise these additional rights. Quixotically, the government blame's Ryan, stating "R. Bundy failed to articulate the particular evidence, materials, or information that would have been available to him had the court granted his motion to continue or how much additional time would have been needed to obtain it." Response at 6. But, this is backwards. Under the conditions of his confinement, prior to the hearing, Ryan was prevented from any circumstance that would have allowed him to make such a showing. This is the point. The government concedes that Ryan was restricted, but wants the court to excuse the violation of his rights – by a sort of harmless error argument by proxy, suggesting that Ryan can ask to re-open the hearing at a later date. But, this re-opened future hearing would be putting the cart before the horse, the existing order is invalid.

First, Ryan has a right to fair hearing, in the first instance. The district court does not have discretion to simply declare the required provisions of the Bail Reform Act "moot" because of inconvenience or to repackage these rights at a more restrictive, future hearing. Magistrate Judge Foley's refusal to afford Ryan his statutory and due process rights, before the hearing, clearly is prohibited by *United States v. Salerno*, 481 U.S. 739, 750, 107 S. Ct. 2095, 2103 (1987) where the United States Supreme Court has made clear that a pretrial detention order is only valid where the government first proves the required statutory factors to a "neutral decisionmaker by clear and convincing evidence" after a fair and "full-blown adversary hearing." *Id*. The government's Response skips this argument entirely, and the binding precedent that a pretrial detention order under the Bail Reform Act is "consistent with the Due Process Clause" only when the court has first followed "Congress' careful delineation of the circumstances under which detention will be permitted," *Id.*, at 751, and when the hearing process follows the Act's "extensive safeguards." *Id*.

Second, it is in this Court's discretion whether to receive additional evidence on review of a detention order under 18 U.S.C. § 3145(b). *See, e.g., United States v. Koenig*, 912 F.2d 1190, 1192 (9th Cir. 1990). And, when a magistrate judge reopens detention for new evidence under 18 U.S.C. § 3142(f)(2)(B), the new hearing is also limited in scope. *See, e.g., United States v.*

3

*Bararia*, 2013 WL 1907782 at *4 (D. Nev. March 12, 2013).  The prejudice created by the Magistrate Judge's denial of more time and the subsequent order invalidated the entirety of the hearing and the order, and an entirely new detention hearing is warranted.  Both § 3145(b) and § 3142(f) of the Bail Reform Act contemplate limits on any new hearing. A brand new hearing is the only sufficient remedy if this Court reverses the Magistrate Judge's order denying a continuance.  Thus, the government's reference to *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964) is inapposite.  And, the government ignores the very poignant qualification of this principle, as outlined in *Ungar*, that "Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay" can render valuable rights "empty formalit[ites]." *Id*. at 589-90.  The court in *Ungar* went on to clarify that, "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Id*.  Significantly, Ryan has already cited both the text of the Bail Reform Act itself and the critical Ninth Circuit and Supreme Court cases on this topic, and the government has simply ignored these authorities.  As Ryan previously informed this court, the United States Supreme Court has warned district courts to "be alert to factors that may undermine the fairness of the fact-finding process" and this is particular true in Bail Reform Act proceedings.  *United States v. Brutus*, 505 F.3d 80, 85 (2007).

Third, the government defends the "common" practice, but does not reply to the unique circumstances here.   Not only was Ryan functionally ambushed with the government's proffer of specific evidence, without advance notice but Ryan's papers and information and legal notes related had been confiscated by the U.S. Marshall's office.

//
//
//
//

4

### B. Magistrate Foley Did Not Properly Weigh or Apply the Bail Reform Act Factors.

**First**, the government defends the Magistrate's order that provides only a conclusory statement regarding "allegations in the Superseding Indictment" creating a "rebuttable presumption that the defendant poses a substantial risk of nonappearance and a danger to the community." But, it does this without reference to any legal authority on this point, and instead converts Ryan's argument into a "probable cause" issue and then rebuts this strawman. *Response* at p. 7. But, Ryan's argument is not that the allegations in "a grand jury indictment" aren't sufficient to establish the general "probably cause" that the alleged acts occurred, the argument is a legal argument as to whether or not the alleged crimes are "crimes of violence" under the Bail Reform Act, and therefore whether or not these charges trigger the "rebuttable presumption." The court should not allow this severe mishandling of the argument. The government irresponsibly and impermissibly cites a district court case, *United States v. Ward*, 63 F. Supp. 2d 1203, 1209 (C.D. Cal. 1999), for the proposition that "[v]arious circuits have uniformly held that a judicial officer does not have to make an independent determination of probably cause…for purposes of invoking the Section 3142(e) presumption." **But, this is not the legal question at issue here.** *Ward* was dealing with 3142(e) concerning "probable cause to believe the defendant committed an offense for which a maximum term of imprisonment of ten years or more is prescribed" not the "crime of violence" presumption at issue in this case. This is fatal to the government's argument. 3142(e) deals with the result of a hearing – the "crime of violence" presumption challenges the jurisdiction and validity of the hearing itself. Contrasted with 3142(e), section 3142(f) provides that, "The judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community" in a case "that involves – (A) a crime of violence." Here, the government ignores the actual legal question. This is telling because Ryan actually pointed out this distinction in his Objection admitting 18 U.S.C. § 3142(e)(2), but pointing out that "the burden of persuasion rests always with the Government" related to the "crimes of violence" presumption. Here, the government does not

5

1  answer the fundamental requisite – that the Magistrate was required to specify which "crimes" are
2  at issue, and what "allegations" meet the crime of violence provision.  In fact, there is no reference
3  in the record by the government or the Magistrate to any evidence that Defendant ever had the
4  "intent" to harm anyone.  This is significant because the government also ignores every single
5  authority provided by Ryan on this issue.   Ryan cited, for example, *United States v. Montoya*, 486
6  F. Supp. 2d 996, 1005 (D. Ariz. 2007) where the district court held that "manufacturing a fake
7  bomb and placing the device in a mailbox to be found by a United States Postal Service
8  employee" was not a "crime of violence" under the Bail Reform Act due to lack of "intent to
9  harm."  The government offers no answer.  Ryan cited to the Ninth Circuit's decision in *United*
10 *States v. Serna*, 435 F.3d 1046, 1047 (9th Cir. 2006) where it held that "an object's potential for
11 causing physical injury" is not enough "to render illegal possession thereof a crime of violence"
12 because "almost all possessory crimes would be crimes of violence" which they are not.  Ryan
13 also cited to *United States v. Twine*, 344 F.3d 987, 987-88 (9th Cir. 2003) were the Ninth Circuit
14 made clear that *United States v. Canon*, 993 F.2d 1439, 1441 (9th Cir.1993) established binding
15 precedent that "felon in possession of a firearm-is not a crime of violence for purposes of the Bail
16 Reform Act."  Again, the government is completely silent.  Thus, the Magistrate had no legal basis
17 upon which to presume, or to invoke without specific reference, the "rebuttable presumption" at
18 issue. <u>This invalidates both the hearing and the order derived therefrom</u>.  The government's only
19 answer is that since Ryan is charged with "four counts of 924(c) violations" the Magistrate
20 properly invoked the presumption.  *Response* at p. 7.   This only compounds the government's
21 problem .  By citing *Twine* and *Canon*, Ryan raises both the invalidity of the "crime of violence"
22 application here, as now settled by Ninth Circuit precedent, but the Ninth Circuit has also
23 concluded that in applying *Johnson v. United States*, 135 S. Ct. 2551, 192 L. Ed. 2d 569
24 (2015)(holding that the residual clause of the Armed Career Criminal Act (ACCA) violates the
25 Constitution's guarantee of due process) the same language is at issue regarding the "crime of
26 violence" considerations in other statutes, (e.g. the Bail Reform Act), see e.g. *Dimaya v. Lynch*,
27 803 F.3d 1110, 1111 (9th Cir. 2015)("definition of a crime of violence [under § 1101(a)(43)(F)] is
28

also void for vagueness").

**Second**, the government admits that the Magistrate's order regarding "flight risk" also relies upon the same invalid "rebuttable presumption" discussed above.  *Response* at p. 7.  The government also hangs its hat on the language of the Magistrate that while Ryan's prior criminal record "did not necessarily indicate [he] was a danger to others, it did 'indicate, however, that [he] will not obey court orders.'"  *Id*. at 8.  But, nowhere does the Magistrate's order, or the government in its argument, answer Ryan's argument that these conclusions are void of any obvious, implied, or express consideration of other restrictions available such as electronic monitoring, travel conditions, etc.  As Ryan argued, this is particularly troubling in light of the court's acknowledgment of Defendant's family ties and history of employment.  Risk of flight has to be shown by "a clear preponderance of the evidence."  *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990).  The government doesn't answer this argument, in fact, the government's response is silent here.  It simply repeats the conclusory statement that "no conditions or combination of conditions would reasonably ensure R. Bundy's future appearance."  *Response* at p. 8.  Tellingly, the government provides no authority at all – supporting conclusory justifications, and ignores Ryan's express reference to *United States v. Portes*, pointing out that Section 3142 "does not seek ironclad guarantees, and the requirement that the conditions of release "reasonably assure" a defendant's appearance cannot be read to require guarantees against flight," 786 F.2d 758, 764 n. 7 (7th Cir.1985).  Ryan also cited, *United States v. Fortna*, 769 F.2d 243, 250 (5th Cir.1985); *United States v. Orta*, 760 F.2d 887, 890–92 (8th Cir.1985); and *United States v. Tortora*, 922 F.2d 880, 884 (1st Cir.1990).  The government ignores these entirely.  "The government's burden of proof is not trivial...[it] must prove that no combination of conditions can reasonably assure the safety of the community and the appearance of the defendant."  It must also be a "serious risk."  *United States v. Motamedi*, 767 F.2d 1403, 1409 (9th Cir. 1985).  Neither the Magistrate nor the government has authority to ignore *Motamedia*.

**Third,** the government and the Magistrate's order, misapprehends the law as it relates to finding "danger" or risk of harm to others.  The government cannot rely upon the allegations in the

indictment – of alleged violence, to prove dangerousness.  The law is abundantly clear on this point, yet, both the Magistrate and the government seem to have no problem with charting new ground here.  This is a two part legal standard.  First, when detention is based wholly or in part on a determination of dangerousness, such finding must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f)(2)(B).  And, alleged dangerousness or the theoretical "threat" of danger, by itself, is not sufficient to justify detention. Ryan cites to *United States v. Byrd*, 969 F.2d 106, 109-10 (5th Cir. 1992) and *United States v. Twine*, 344 F.3d 987, 987 (9th Cir. 2003) and the government is silent to both.  The is significant, because neither the court nor the government addresses any specific danger posed by Defendant outside the allegations of the indictment – which can only be used for "flight risk" determinations.  That's the second part of the legal standard.  There has to be evidence – not contained in the indictment – to establish dangerousness.  Here, the government admits, and the Magistrate ignored, that the present case (and detention) were delayed for several years without any alleged concern of actual dangerousness or intent to harm.  As Ryan has pointed out – the law requires real "future dangerousness" that must be considered in light of conditions of release that the court could impose. *See e.g. Salerno*, 481 U.S. at 748-750 ("a judicial officer [must] independently evaluat[e] the likelihood of future dangerousness.")  Finally, and <u>this is the major error</u> by the Magistrate and by the government in Response, in determining "dangerousness" the court states it gave great weight to the allegations and alleged nature of the offenses. **This is not allowed.**  On this point Ryan cited *United States v. Edson*, 487 F.2d 370, 372 (1st Cir. 1973) illustrating that "[t]he seriousness of the crime…may have distracted the magistrate's attention from the priorities established by Congress by the Bail Reform Act. Until a defendant has been convicted, the nature of the offense, as well as the evidence of guilt, is to be considered ***only*** in terms of the likelihood of his making himself unavailable for trial.")(Emphasis added.)  The government has no answer. Ryan also cited binding Ninth Circuit precedent, in *United States v. Scott*, explaining that, "As a matter of constitutional significance, the mere fact that a person is charged with a crime, does not "give rise to any inference that he is more likely than any other citizen to commit a crime if

released from custody." 450 F.3d 863, 874 (9th Cir.2006)., 107 S. Ct. 2095, 2104 (1987).

## III. CONCLUSION

*For the above reasons* the Magistrate's order of detention should be reversed. Alternatively, it is clear that Defendant Ryan Bundy was unable to adequately prepare by gathering and confirming information and material to fully rebut the government's proffer and the conclusory findings relied upon by the Magistrate. Thus, Ryan Bundy respectfully requests that if the court does not simply reverse the detention order, it reverse the Magistrate Judge's denial of his oral motion for a continuance based upon "good cause" and remand the matter for a new detention hearing before the magistrate.

Respectfully submitted this 31st day of May 2016.

By: */s/ Ryan Bundy* *
*Pro Se* Defendant

* Filed on behalf of Mr. Bundy by standby counsel.

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of May 2016, a true and correct copy of **DEFENDANT RYAN BUNDY'S REPLY IN SUPPORT OF HIS OBJECTIONS [DKT. NO. 367] TO MAGISTRATE JUDGE ORDER DENYING MOTION FOR EXTENSION OF TIME FOR DETENTION HEARING [DKT. NO. 288]** was served via the United States District Court CM/ECF system on all parties or persons requiring notice

By  */s/*
Angela H. Dows,
Standby Counsel for Mr. Bundy