DANIEL G. BOGDEN
United States Attorney
District of Nevada
STEVEN W. MYHRE
NICHOLAS D. DICKINSON
Assistant United States Attorneys
NADIA J. AHMED
ERIN M. CREEGAN
Special Assistant United States Attorneys
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336
steven.myhre@usdoj.gov
nicholas.dickinson@usdoj.gov
nadia.ahmed@usdoj.gov
erin.creegan@usdoj.gov

Attorneys for the United States

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CLIVEN D. BUNDY,<br><br>Defendant. | 2:16-CR-00046-GMN-PAL<br><br>**GOVERNMENT'S RESPONSE IN OPPOSITON TO DEFENDANT CLIVEN BUNDY'S MOTION FOR SEVERANCE**<br>**(ECF No. 469)** |

**CERTIFICATION: This Response is timely filed.**

The United States, by and through the undersigned, respectfully submits its Response in Opposition to defendant CLIVEN BUNDY's ("Bundy's") Motion for Severance (ECF No. 469) (hereinafter "Motion"). As explained in detail below, the Motion should be denied.

# BACKGROUND

On March 2, 2016, a federal grand jury in Las Vegas, Nevada, returned a sixteen-count Superseding Criminal Indictment ("SSI") charging Bundy and eighteen other co-defendants with conspiracy to commit numerous violations of federal law in connection with a massive armed assault against federal law enforcement officers that occurred near Bunkerville, Nevada, on April 12, 2014. The assault occurred while the law enforcement officers were executing federal court orders to impound Bundy's cattle, the assault resulting in the extortion of approximately 400 head of impounded cattle then and there in the custody of the assaulted officers. The specific charges against Bundy include violations of Title 18, United States Code, Section 371 (Conspiracy to Commit an Offense Against the United States), 372 (Conspiracy to Impede and Injure a Federal Officer), 111 (a) and (b) (Assault on a Federal Officer); 115(a)(1)(B) (Threat Against a Federal Officer); 1503 (Obstruction of Justice); 1951 (Interference with Interstate Commerce by Threat); and 1952 (Interstate Travel in Aid of Racketeering). ECF No. 27.

The SSI charges a continuing conspiracy to impede and interfere with federal law enforcement officers, a conspiracy that began in at least March 2014 and continued to March 2016, the date of the SSI. SSI ¶ 155. Throughout the course of the conspiracy, so charges the SSI, defendant Cliven Bundy led a criminal enterprise to prevent federal law enforcement officers from taking actions to enforce federal court orders that required the removal of his cattle that had been grazing on the public lands unlawfully for more than twenty years. The

conspiratorial enterprise conducted its activities through threats of force and violence, actual force and violence, assault and extortion.

Bundy began recruiting the members of the conspiracy in March 2014, using social media to call for gunmen and others (collectively referred to as "Followers") to come to Bunkerville, Nevada (the site of the impoundment) to physically confront and impede and interfere with the law enforcement officers as they were executing their duties to enforce the federal court orders. The culmination of the conspiracy occurred on April 12 when over 400 of Bundy's Followers converged on the site where the officers were guarding the impounded cattle, over 60 of the Followers either carrying, using, or brandishing firearms, including assault rifles, as they converged on the gate that blocked the entrance to the site and was guarded by approximately 40 law enforcement officers. Among the 60 Followers with guns, some were moving in and among unarmed Followers, while others perched themselves on high ground in tactically superior positions, or concealed themselves in prone positions behind concrete barriers on bridges that towered over the officers, their assault rifles aimed at the officers below them.

The conspiracy continued beyond April 12, the conspirators taking concerted action to protect Bundy's cattle from future impoundment actions and to prevent law enforcement actions against Bundy himself. These criminal acts included the continuing recruitment of Followers and threats of the future use of force and violence against law enforcement officers in the event they took enforcement actions against Bundy.

Bundys is charged in each count of the SSI, along with his sons, Ammon and Ryan, and Peter Santilli, and Ryan Payne.

The 63-page SSI sets out in great detail the roles and actions of each of the defendants, their roles falling into three general categories:

1. <u>Leaders and Organizers</u>:  Defendants Cliven, Ryan, Ammon, Mel, and Dave Bundy; Ryan Payne; and Peter Santilli.
2. <u>Mid-level Leader and Organizers</u>: Defendants Blaine Cooper; Brian Cavalier; Joseph O'Shaugnessy; and Gerald Delemus.
3. <u>Gunmen</u>: Defendants Eric Parker; Scott Drexler; Steven Stewart; Richard Lovelien; Todd Engel; Gregory Burleson; Micah McGuire; and Jason Woods.

As the SSI makes clear, Bundy is charged as the leader, organizer, and chief beneficiary of the conspiracy who possessed ultimate authority over the scope, manner and means of conspiratorial operations.  SSI ¶ 15.  He further received the economic benefits of the extortion.  *Id.*

Pursuant to the Court's Case Management Order (ECF No. 321), the government made its initial disclosures to the defendants on May 6, 2016, which included, among other things, the Rule 16 statements of the defendants and other Rule 16 information and materials.  As the government has represented previously, this is a continuing investigation and disclosures are likely to continue up to the date of trial.  Further, the government is withholding the disclosure of Jencks material until 30 days before trial because of serious concerns for witness safety and security.

The Court's Case Management Order also required the defendants to file any motions for severance not later than May 27, 2016, and for the government to respond not later than June 10, 2016. *Id.*

On May 27, 2016, Bundy moved for severance claiming that he never carried a gun or threatened a law enforcement officer, nor participated directly in the assault. ECF No. 469 at 2. He claims he was not in control of what his supporters did, which he claims was a "spontaneous outpouring of support." *Id*. He fears he will be found guilty by association, and that the jury will struggle to follow jury instructions to that effect. *Id*. at 3. He claims there may be *Bruton* issues of which he is not yet aware. *Id*.

For the reasons set forth below, the Motion should be denied. Bundy makes no showing of prejudice resulting from joinder.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 8(b) provides:

The Indictment . . . may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Federal Rule of Criminal Procedure 14 (a) provides:

If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice demands.

Rules 8 and 14 are designed to avoid a multiplicity of trials and to promote judicial economy and efficiency "so long as these objectives can be achieved without

substantial prejudice to the right of the defendants to a fair trial." *Zafiro v. United States*, 506 U.S. 534, 540 (1993) (upholding the district court's denial of defendant's motion to sever, noting "it is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials") (citations, alterations and internal quotation marks omitted).

Defendants who are charged together and are properly joined under Rule 8(b) are generally tried together. *United States v. Escalante*, 637 F.2d 1197, 1201 (9th Cir. 1980) (citing *United States v. Gay*, 567 F.2d 916, 919 (9th Cir. 1978) (the ordering of separate trials requires "unusual circumstances," and "the great mass of cases refuse to grant a severance"). Severance should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539.

Joinder is "particularly appropriate" when the defendant is charged with conspiracy. *United States v. Freeman*, 6 F.3d 586, 598 (9th Cir. 1993) (finding that because defendant was charged with both conspiracy and aiding and abetting, it was necessary for the jury to consider evidence of and understand the conduct for which co-defendant was charged). Joint proceedings are generally advantageous for the criminal justice system when the conduct of two or more joined defendants is connected to a single series of events, for both practical as well as efficiency reasons. *See Richardson v. Marsh*, 481 U.S. 200, 210 (1987) (noting many joint trials involve a dozen or more codefendants).

Specifically, joint trials provide the jury an ability to see into the entire picture of an alleged crime and enable jury members to reach a more reliable conclusion as to the guilt or innocence of the defendants involved, and thus more fairly assign corresponding responsibilities of each defendant. *Buchanan v. Kentucky*, 483 U. S. 402, 418 (1987); *Zafiro*, 506 U.S. at 537.  Moreover, joint trials limit the burden of requiring witnesses or victims to testify on multiple occasions in separate trials and promote economy and efficiency in the judicial system.  *See Marsh*, 481 U.S. at 210 ("It would impair both the efficiency and the fairness of the criminal justice system to require, in all these cases of joint crimes where incriminating statements exist, that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand.").

Joint trials are particularly appropriate where the codefendants are members of a conspiracy because "the concern for judicial efficiency is less likely to be outweighed by possible prejudice to the defendants when much of the evidence would be admissible against each of them in separate trials." *United States v. Boyd*, 78 F. Supp. 3d 1207, 1212 (N.D. Cal. 2015) (quoting *United States v. Fernandez*, 388 F.3d 1199, 1242 (9th Cir. 2004)); *Escalante*, 637 F.2d at 1201-02 (the prejudice must prevent the jury from "compartmentalizing the evidence as it relates to separate defendants, in view of its volume and the limited admissibility of some of the evidence").

The moving party must show unusual circumstances in which a joint trial would be "manifestly prejudicial" in order to warrant severance. *Gay*, 567 F.2d at 919 (citing *Opper v. United States*, 384 U.S. 84, 75 (1954)); *United States v. Baker*, 10 F.3d 1374, 1387 (9th Cir.1993); *United States v. Christensen*, 624 F. App'x 466, 477 (9th Cir. 2015). "Rule 14 sets a high standard for a showing of prejudice. The party seeking reversal of the denial of a motion to sever bears the burden of proving such clear, manifest, or undue prejudice from the joint trial, that [it] violated one of his substantive rights, so that the prejudice was of such a magnitude that the defendant was denied a fair trial." *United States v. Vasquez-Velasco*, 15 F.3d 833, 846 (9th Cir. 1994) (finding no abuse of discretion by district court in denying severance motion) (citations and internal quotation marks omitted).

A defendant may establish that a joint trial is prejudicial where the defendant's specific trial rights are compromised or where a jury would be unable to reach a reliable verdict without severance. *Zafiro*, 506 U.S. at 539. For example, potential prejudice might occur (i) where mutually antagonistic defenses between the joined defendants warrant severance, (ii) where a limiting instruction cannot cure the spillover effect of evidence presented against one defendant that significantly prejudices another, (iii) where an incriminating confession made by one codefendant presents a confrontation issue against another, or (iv) where a codefendant swears to provide exculpatory testimony in a separate trial. *See id.*; *United States v. Moreno*, 618 F. App'x 308, 311 (9th Cir. 2015); *United States v. Mariscal*, 939 F.2d 884, 885 (9th Cir. 1991). Simply showing that codefendants

8

have varying degrees of culpability or that there is an improved possibility of acquittal in a separate trial is not by itself sufficient to warrant severance. *United States v. Boyd*, 78 F. Supp. 3d 1207, 1212 (N.D. Cal. 2015) (citing *Fernandez*, 388 F.3d at 1241).

## ARGUMENT

The Motion should be denied. Bundy fails to demonstrate prejudice – let alone manifest prejudice – resulting from a joint trial.

This is a paradigm case for joinder. Bundy is charged as the chief leader and organizer of a conspiracy where 18 of 19 joined conspirator-defendants were present in the same place, at the same time, for the same purpose: to assault and extort the law enforcement officers and to obtain the impounded cattle. And, according to the SSI, the other co-defendant co-conspirator who was not there (Delemus) was on his way at the behest and direction of Bundy and other leaders and organizers of the conspiracy. Further, Bundy is charged in each count of the SSI.

The concert of action by and between the defendants – before, during and after April 12 – to obtain and keep the cattle is alleged in detail in the Superseding Indictment. The government anticipates that its proof at trial – as was its proof before the grand jury – will conform to those same allegations.

Bundy claims that he must be severed because if he is tried with his codefendants, he may be found guilty by association and that his defense is "wholly different" than that of his codefendants. ECF No. 469 at 3 – 4. However, Bundy does not identify his "defense." *Id*.

9

As the alleged leader and organizer of the assault and extortion, all of the evidence regarding those he organized and led on April 12 is admissible against him, including the tactical positions of his Followers, the numbers of gunmen in the wash, how his Followers were dressed, how they were armed, and where and how they were positioned. He led all the Followers, including the gunmen, according to the SSI, and as their leader, all of the evidence regarding how the Followers helped to execute the assault and extortion is admissible against Bundy whether he is tried solely or as part of a joint trial comprised of 19 defendants.

Rather than demonstrate a manifest prejudice – as he must -- he offers nothing other than a general denial of his leadership role in the conspiracy. The fact that Bundy claims he was not present in the wash during the April 12 assault, that he was unarmed, that he never pointed a weapon, and similar claims does not demonstrate manifest prejudice. There is nothing about joinder in this case that would preclude him from advancing evidence that he contends will show that he was not a leader and organizer, or that he was otherwise oblivious to the events of April 12. Conversely, nothing about his claims precludes the admissibility of evidence against Bundy that show he was a leader and organizer and that his Followers were armed and assaulted the BLM officers. Bundy is criminally responsible for all the natural and foreseeable acts carried out in furtherance of the conspiracy. *Pinkerton v. United States*, 328 U.S. 640 (1946).

Bundy further contends that severance may be required under *Bruton v. United States*, 391 U.S. 123 (1968). The so-called *Bruton* rule precludes the admission at trial of a co-defendant's out-of-court testimonial statement where the

statement implicates a defendant against whom it is not offered.[1] Outside that narrow exception, *Bruton* simply does not apply. Most notably, *Bruton* does not apply to out-of-court statements made by a co-conspirator during and in furtherance of a conspiracy. Fed. R. Evid. 801(d)(2)(E). The same is true as to a host of other out-of-court statements. *See Davis v. Washington*, 547 U.S. 813, 825 (2006) (noting that as a general matter "statements from one prisoner to another" are "clearly nontestimonial"); *United States v. Volpendesto*, 746 F.3d 273, 290 (7th Cir. 2014) (admission of co-defendant's covertly recorded statements to a confidential informant inculpating defendant upheld, finding "because the statements in question were not testimonial, their admission did not implicate the Confrontation Clause."); *United States v. Dargan*, 738 F.3d 643, 651 (4th Cir. 2013) (admission of co-defendant's confession to his cellmate that he robbed store with two others also in same jail at the time were non-testimonial) *United States v. Smalls*, 605 F.3d 765, 768 n.2 (10th Cir. 2010) (noting co-defendant's statement to confidential informant inculpating defendant was non-testimonial, and "the *Bruton* rule, like the Confrontation Clause upon which it is premised, does not apply to non-testimonial hearsay statements.").

More to the point, however, Bundy is unable to identify any potential *Bruton* statement that the government intends to offer at trial. And the government does not intend to offer any statements that potentially violate *Bruton*. To the extent it intends to offer redacted statements to remedy any

---

[1] The universe of potential "testimonial statements" by the nineteen defendants in this case is small.

11

potential *Bruton* issues – and the government does not anticipate that that will be case – it will offer its redactions well in advance of trial so the matter may be litigated. *See* Fed. R. Crim. P. 14(b).

Bundy must show manifest prejudice. He offers, instead, only speculation based on assumptions about unidentified out-of-court statements that may or may not be offered at trial and that may or may not violate *Bruton* – none of which rises to the showing required under the law.

Lastly, Bundy again requests recusal of the Court "in fairness to all defendants" because "exchanges between the Court and Cliven Bundy's counsel may tend to prejudice the Court against the other eighteen defendants." *Id.* at 4. At the outset, Bundy again unfairly impugns the Court's ability to remain fair and impartial regardless of its prior rulings. Proceeding from that false premise, Bundy, without basis, unfairly speculates that any exchanges in the future – however he chooses to characterize them – between the Court and counsel will be: a) prejudicial and b) will become known to the jury. *See generally*, *United States v. Apperson*, 441 F.3d 1162, 1191 (10th Cir. 2006) (upholding denial of severance where codefendant's counsel and the court engaged in hostile exchanges because defendant was not prejudiced). Bundy fails to show how any future "exchanges" between the Court and counsel will make a joint trial before a jury manifestly prejudicial or unjust.

In sum, Bundy fails to demonstrate any prejudice as a result of his joinder in this case.

**WHEREFORE**, for all the foregoing reasons, the government respectfully requests that the Court deny Cliven Bundy's Motion.

**DATED** this 10th day of June 2016.

                                              Respectfully submitted,

                                              DANIEL G. BOGDEN
                                              United States Attorney

                                              _____//s//_____
                                              STEVEN W. MYHRE
                                              NICHOLAS D. DICKINSON
                                              Assistant United States Attorneys
                                              NADIA J. AHMED
                                              ERIN M. CREEGAN
                                              Special Assistant United States Attorneys

                                              Attorneys for the United States

# CERTIFICATE OF SERVICE

I certify that a copy of the foregoing **GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT CLIVEN BUNDY'S MOTION FOR SEVERANCE (ECF No. 469)** was served upon counsel of record, via Electronic Case Filing (ECF).

Dated this 10th day of June 2016.

*/s/ Steven W. Myhre*
_____
STEVEN W. MYHRE
Assistant United State Attorney