DANIEL G. BOGDEN
United States Attorney
District of Nevada
STEVEN W. MYHRE
NICHOLAS D. DICKINSON
Assistant United States Attorneys
NADIA J. AHMED
ERIN M. CREEGAN
Special Assistant United States Attorneys
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336
steven.myhre@usdoj.gov
nicholas.dickinson@usdoj.gov
nadia.ahmed@usdoj.gov
erin.creegan@usdoj.gov

Attorneys for the United States

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GERALD A. DELEMUS,<br><br>Defendant. | 2:16-CR-00046-GMN-PAL<br><br>**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT DELEMUS'S MOTION TO SEVER (ECF No. 566)** |

**CERTIFICATION:  This Response is timely filed.**

The United States, by and through the undersigned, respectfully submits its Response in Opposition to defendant Gerald A. Delemus's (DeLemus) Motion to Sever (ECF No. 566).  As explained in detail below, the defendant' Motion should be denied.

**BACKGROUND**

On March 2, 2016, a federal grand jury in Las Vegas, Nevada, returned a sixteen-count Superseding Criminal Indictment ("SSI") charging DeLemus and eighteen other co-defendants with conspiracy to commit numerous violations of federal law in connection with a massive armed assault against federal law enforcement officers that occurred near Bunkerville, Nevada, on April 12, 2014. The assault occurred while the law enforcement officers were executing federal court orders to impound the cattle of co-defendant Cliven Bundy, the assault resulting in the extortion of approximately 400 head of impounded cattle then and there in the custody of the assaulted officers. The specific charges against DeLemus include violations of Title 18, United States Code, Section 371 (Conspiracy to Commit an Offense Against the United States), 372 (Conspiracy to Impede and Injure a Federal Officer), 111 (a) and (b) (Assault on a Federal Officer); 115(a)(1)(B) (Threat Against a Federal Officer); 1503 (Obstruction of Justice); 1951 (Interference with Interstate Commerce by Threat); and 1952 (Interstate Travel in Aid of Racketeering). ECF No. 27.

The SSI charges a continuing conspiracy to impede and interfere with federal law enforcement officers, a conspiracy that began in at least March 2014 and continued to March 2016, the date of the SSI. SSI ¶ 155. Throughout the course of the conspiracy, so charges the SSI, defendant Cliven Bundy led a criminal enterprise to prevent federal law enforcement officers from taking actions to enforce federal court orders that required the removal of his cattle that had been grazing on the public lands unlawfully for more than twenty years. The

2

conspiratorial enterprise conducted its activities through threats of force and violence, actual force and violence, assault and extortion.

Cliven Bundy began recruiting the members of the conspiracy in March 2014, using social media to call for gunmen and others (collectively referred to as "Followers") to come to Bunkerville, Nevada (the site of the impoundment) to physically confront and impede and interfere with the law enforcement officers as they were executing their duties to enforce the federal court orders. The culmination of the conspiracy occurred on April 12 when over 400 of Bundy's Followers converged on the site where the officers were guarding the impounded cattle, over 60 of the Followers either carrying, using, or brandishing firearms, including assault rifles, as they converged on the gate that blocked the entrance to the site and was guarded by approximately 40 law enforcement officers. Among the 60 Followers with guns, some were moving in and among unarmed Followers, while others perched themselves on high ground in tactically superior positions, or concealed themselves in prone positions behind concrete barriers on bridges that towered over the officers, their assault rifles aimed at the officers below them.

The conspiracy continued beyond April 12, the conspirators taking concerted action to protect Bundy's cattle from future impoundment actions and to prevent law enforcement actions against Bundy himself. These criminal acts included the continuing recruitment of Followers and threats of the future use of force and violence against law enforcement officers in the event they took enforcement actions against Bundy. DeLemus was a key leader of these efforts.

DeLemus is charged/named in all but five of the sixteen counts in the SSI, the exceptions being:

Counts Four and Eleven (arising from the April 9 ambush of a BLM convoy – which charges Cliven, Ryan, Ammon, and Mel Bundy, Payne and Santilli);

Count Seven (arising from the April 11 threat to the SAC of the impoundment– which charges Cliven, Ryan, and Ammon Bundy, and Payne and Santilli);

Count Ten (arising from the April 6 interference with law enforcement officers – which charges Cliven, Ryan, Ammon, and Dave Bundy, and Payne and Santilli); and

Count Thirteen (arising from the April 2 and April 9 extortion of a small business owner doing business with the BLM – which charges Cliven, Ryan and Mel Bundy, Payne, and Santilli).

The 63-page SSI sets out in great detail the roles and actions of each of the defendants, their roles falling into three general categories:

1. <u>Leaders and Organizers</u>: Defendants Cliven, Ryan, Ammon, Mel, and Dave Bundy; Ryan Payne; and Peter Santilli.
2. <u>Mid-level Leader and Organizers</u>: Defendants Blaine Cooper, Brian Cavalier; Joseph O'Shaugnessy; and Gerald DeLemus.
3. <u>Gunmen</u>: Defendants Eric Parker; Scott Drexler; Steven Stewart; Richard Lovelien; Todd Engel; Gregory Burleson; Micah McGuire; and Jason Woods.

4

As the SSI makes clear, DeLemus is charged as a mid-level leader and organizer, who recruited, organized, trained and provided logistical support to gunmen and other Followers and organized and led armed patrols and security checkpoints. SSI ¶ 68.

Pursuant to the Court's Case Management Order (ECF No. 321) and on May 6, 2016, the government produced what it has captioned as Phases I and II of discovery, comprising approximately 1.4 terabytes of digitalized information, including several hundred video and audio files depicting the April 12 assault and its participants, the Rule 16 statements of the defendants, and other Rule 16 information and materials. On June 20, 2016, the government produced what it has captioned as Phase III of discovery, comprising, among other things, over 7,400 pages of investigative reports related to Phases I and II of discovery.

As the government has represented previously, this is a continuing investigation and disclosures are likely to continue up to the date of trial. Further, the government is withholding the disclosure of Jencks material until 30 days before trial because of serious concerns for witness safety and security.

The Court's Case Management Order also required the defendants to file any motions for severance not later than May 27, 2016, and for the government to respond not later than June 10, 2016. *Id.* ECF No. 321.

On June 3, 2016, seven days past the Court's deadline for severance motions, defendant Gerald DeLemus filed a motion for joinder to Burleson's motion for severance, ECF No. 493, filed that same day.  ECF No. 494. Burleson had alleged that he would be negatively prejudiced by the pretrial

5

publicity which has attached to co-defendants (but somehow, not himself), that his defense would be antagonistic with that of his co-defendants, and that he will be denied access to the exculpatory testimony of co-defendants. The government has already responded to that motion, ECF No. 512, on June 10, 2016. The government incorporates by reference all arguments in that response.

On June 27, 2016, DeLemus filed a new motion, alleging that there may be Sixth Amendment issues under *Bruton v. United States*, that spillover of evidence from other defendants to him may occur, and that he may present a mutually antagonistic defense from his co-defendants. ECF No. 566. He does not allege with any specificity what *Bruton* statements would be introduced, what spillover would occur, or how his defense (innocence) is antagonistic to any other defendant.

For the reasons set forth below, the defendant's Motion should be denied. They fail to make any showing of prejudice supporting severance.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 8(b) provides:

> The Indictment . . . may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Federal Rule of Criminal Procedure 14 (a) provides:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice demands.

Rules 8 and 14 are designed to avoid a multiplicity of trials and to promote judicial economy and efficiency "so long as these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial." *Zafiro v. United States*, 506 U.S. 534, 540 (1993) (upholding the district court's denial of defendant's motion to sever, noting "it is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials") (citations, alterations and internal quotation marks omitted).

Defendants who are charged together and are properly joined under Rule 8(b) are generally tried together. *United States v. Escalante*, 637 F.2d 1197, 1201 (9th Cir. 1980) (citing *United States v. Gay*, 567 F.2d 916, 919 (9th Cir. 1978) (the ordering of separate trials requires "unusual circumstances," and "the great mass of cases refuse to grant a severance"). Severance should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539.

Joinder is "particularly appropriate" when the defendant is charged with conspiracy. *United States v. Freeman*, 6 F.3d 586, 598 (9th Cir. 1993) (finding that because defendant was charged with both conspiracy and aiding and abetting, it was necessary for the jury to consider evidence of and understand the conduct for which co-defendant was charged). Joint proceedings are generally advantageous for the criminal justice system when the conduct of two or more joined defendants is connected to a single series of events, for both practical as well as efficiency

reasons. *See Richardson v. Marsh*, 481 U.S. 200, 210 (1987) (noting many joint trials involve a dozen or more codefendants).

Specifically, joint trials provide the jury an ability to see into the entire picture of an alleged crime and enable jury members to reach a more reliable conclusion as to the guilt or innocence of the defendants involved, and thus more fairly assign corresponding responsibilities of each defendant. *Buchanan v. Kentucky*, 483 U. S. 402, 418 (1987); *Zafiro*, 506 U.S. at 537. Moreover, joint trials limit the burden of requiring witnesses or victims to testify on multiple occasions in separate trials and promote economy and efficiency in the judicial system. *See Marsh*, 481 U.S. at 210 ("It would impair both the efficiency and the fairness of the criminal justice system to require, in all these cases of joint crimes where incriminating statements exist, that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand."). Joint trials are particularly appropriate where the codefendants are members of a conspiracy because "the concern for judicial efficiency is less likely to be outweighed by possible prejudice to the defendants when much of the evidence would be admissible against each of them in separate trials." *United States v. Boyd*, 78 F. Supp. 3d 1207, 1212 (N.D. Cal. 2015) (quoting *United States v. Fernandez*, 388 F.3d 1199, 1242 (9th Cir. 2004)); *Escalante*, 637 F.2d at 1201-02 (the prejudice must prevent the jury from "compartmentalizing

the evidence as it relates to separate defendants, in view of its volume and the limited admissibility of some of the evidence").

The moving party must show unusual circumstances in which a joint trial would be "manifestly prejudicial" in order to warrant severance. *Gay*, 567 F.2d at 919 (citing *Opper v. United States*, 384 U.S. 84, 75 (1954)); *United States v. Baker*, 10 F.3d 1374, 1387 (9th Cir.1993); *United States v. Christensen*, 624 F. App'x 466, 477 (9th Cir. 2015). "Rule 14 sets a high standard for a showing of prejudice. The party seeking reversal of the denial of a motion to sever bears the burden of proving such clear, manifest, or undue prejudice from the joint trial, that [it] violated one of his substantive rights, so that the prejudice was of such a magnitude that the defendant was denied a fair trial." *United States v. Vasquez-Velasco*, 15 F.3d 833, 846 (9th Cir. 1994) (finding no abuse of discretion by district court in denying severance motion) (citations and internal quotation marks omitted).

A defendant may establish that a joint trial is prejudicial where the defendant's specific trial rights are compromised or where a jury would be unable to reach a reliable verdict without severance. *Zafiro*, 506 U.S. at 539. For example, potential prejudice might occur (i) where mutually antagonistic defenses between the joined defendants warrant severance, (ii) where a limiting instruction cannot cure the spillover effect of evidence presented against one defendant that significantly prejudices another, (iii) where an incriminating confession made by one codefendant presents a confrontation issue against another, or (iv) where a codefendant swears to provide exculpatory testimony in a separate trial. *See id.*;

*United States v. Moreno*, 618 F. App'x 308, 311 (9th Cir. 2015); *United States v. Mariscal*, 939 F.2d 884, 885 (9th Cir. 1991). Simply showing that codefendants have varying degrees of culpability or that there is an improved possibility of acquittal in a separate trial is not by itself sufficient to warrant severance. *United States v. Boyd*, 78 F. Supp. 3d 1207, 1212 (N.D. Cal. 2015) (citing *Fernandez*, 388 F.3d at 1241).

## ARGUMENT

The Motion should be denied because DeLemus fails to demonstrate manifest prejudice. This is a paradigm case for joinder. According to the SSI, DeLemus, who was not present during the assault on April 12, was on his way to Bunkerville and Bundy Ranch at the behest and direction of the leaders and organizers of the conspiracy. Further, DeLemus is charged in all but five Counts in the SSI and all of the events encompassed in those counts are similarly encompassed by the broader conspiracy with which he is charged.

The concert of action by and between the defendants – before, during and after April 12 – to obtain and keep the cattle is alleged in detail in the Superseding Indictment. The government anticipates that its proof at trial – as was its proof before the grand jury – will conform to those same allegations.

DeLemus contends that severance may be required under *Bruton v. United States*, 391 U.S. 123 (1968). As he admits, however, he has not identified what statements, if any, could present a *Bruton* issue.

The so-called *Bruton* rule precludes the admission at trial of a co-defendant's out-of-court testimonial statement where the statement implicates a

defendant against whom it is not offered.[1] Outside that narrow exception, *Bruton* simply does not apply. Most notably, *Bruton* does not apply to out-of-court statements made by a co-conspirator during and in furtherance of a conspiracy. Fed. R. Evid. 801(d)(2)(E). The same is true as to a host of other out-of-court statements. *See Davis v. Washington*, 547 U.S. 813, 825 (2006) (noting that as a general matter "statements from one prisoner to another" are "clearly nontestimonial"); *United States v. Volpendesto*, 746 F.3d 273, 290 (7th Cir. 2014) (admission of co-defendant's covertly recorded statements to a confidential informant inculpating defendant upheld, finding "because the statements in question were not testimonial, their admission did not implicate the Confrontation Clause."); *United States v. Dargan*, 738 F.3d 643, 651 (4th Cir. 2013) (admission of co-defendant's confession to his cellmate that he robbed store with two others also in same jail at the time were non-testimonial**)** *United States v. Smalls*, 605 F.3d 765, 768 n.2 (10th Cir. 2010) (noting co-defendant's statement to confidential informant inculpating defendant was non-testimonial, and "the *Bruton* rule, like the Confrontation Clause upon which it is premised, does not apply to non-testimonial hearsay statements.").

More to the point, however, DeLemus is unable to identify any potential *Bruton* issue, a point he readily acknowledges. ECF No. 566 at 4. And the government does not intend to offer any statements that potentially violate *Bruton*. To the extent it intends to offer redacted statements to remedy any

---

[1] The universe of potential "testimonial statements" by the nineteen defendants in this case is small.

potential *Bruton* issues – and the government does not anticipate that that will be case – it will offer its redactions well in advance of trial so the matter may be litigated. *See* Fed. R. Crim. P. 14(b).

The defendant must show manifest prejudice. He offers, instead, only speculation based on assumptions about unidentified out-of-court statements that may or may not be offered at trial and that may or may not violate *Bruton* – none of which rises to the showing required under the law.

DeLemus also argues that spillover may necessitate severance. He claims that since all the defendants are not named in all the counts, the proof is not identical. He is wrong.

This is a conspiracy case and while it is true that not all of the defendants are named in all of the counts, it is equally true that all of the events charged in each count in the SSI are encompassed by the broader conspiracy with which each of the defendants, including DeLemus, is charged. In other words, all of the evidence that the government intends to introduce at trial is admissible as to the charged conspiracy and the overt acts in furtherance thereof and is, necessarily, admissible as to all defendants, including DeLemus.

Even assuming there will be evidence admitted solely against other co-defendants, which there is not, DeLemus has failed to demonstrate how such evidence would be so prejudicial as to demand severance. Further, "the prejudicial effect of evidence relating to the guilt of codefendants is generally held to be neutralized by careful instruction by the trial judge." *United States v. Douglass*, 780 F.2d 1472, 1479 (9th Cir. 1986) (quoting *United States v. Monks*,

774 F.2d 945 (9th Cir. 1985)); *see also Jules-Jordan Video, Inc. v 14492 Canada, Inc.*, 617 F.3d 1146, 1159 (9th Cir. 2010) ("There is a strong presumption that juries follow curative instructions.).

DeLemus offers nothing specific and attempt to conjure nothing more than speculation. Mutually antagonistic defenses – to the extent any exist – will only entitle a defendant to severance if the defendant can prove that "the core of the codefendant's defense is so irreconcilable with the core of his own defense that the acceptance of the codefendant's theory by the jury precludes acquittal of the defendant." *United States v. Throckmorton*, 87 F.3d 1069, 1072 (9th Cir. 1996). DeLemus makes no such showing here.

**WHEREFORE**, for all the foregoing reasons, the government respectfully requests that the Court deny DeLemus's Motion.

**DATED** this 14th day of July 2016.

        Respectfully submitted,

        DANIEL G. BOGDEN
        United States Attorney

        _____//s//_____
        STEVEN W. MYHRE
        NICHOLAS D. DICKINSON
        Assistant United States Attorneys
        NADIA J. AHMED
        ERIN M. CREEGAN
        Special Assistant United States Attorneys

        Attorneys for the United States

# CERTIFICATE OF SERVICE

I certify that a copy of the foregoing **GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT DELEMUS'S MOTION TO SEVER (ECF No. 566)** was served upon counsel of record, via Electronic Case Filing (ECF).

Dated this 14th day of July 2016.

/s/ Steven W. Myhre
_____
STEVEN W. MYHRE
Assistant United State Attorney