DANIEL G. BOGDEN
United States Attorney
District of Nevada
STEVEN W. MYHRE
NICHOLAS D. DICKINSON
Assistant United States Attorneys
NADIA J. AHMED
ERIN M. CREEGAN
Special Assistant United States Attorneys
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336
steven.myhre@usdoj.gov
nicholas.dickinson@usdoj.gov
nadia.ahmed@usdoj.gov
erin.creegan@usdoj.gov

*Attorneys for the United States*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | 2:16-CR-00046-GMN-PAL |
| Plaintiff, | |
| v. | **GOVERNMENT'S COMBINED RESPONSE IN OPPOSITION TO DEFENDANT PAYNE'S MOTION TO DISMISS COUNTS TWO AND THREE ON OVERBREADTH GROUNDS (ECF No. 754) AND ON VAGUENESS GROUNDS (ECF No. 757)** |
| RYAN W. PAYNE, | |
| Defendant. | |

**CERTIFICATION:  This Response is timely filed.**

The United States, by and through the undersigned, respectfully submits its Response to Defendant Payne's ("Payne") Motion to Dismiss Counts Two and Three on Overbreadth Grounds (ECF No. 754) with joinders by defendants Woods (ECF No. 756), Dave Bundy (ECF No. 771), McGuire (ECF No. 773), O'Shaughnessy (ECF No. 777), Stewart (ECF No. 795), Lovelien (ECF No. 800), Santilli (ECF No. 815),

Mel Bundy (ECF No. 816), Engel (ECF No. 827), Ryan Bundy (ECF No. 831), Ammon Bundy (ECF No. 842), Cliven Bundy (ECF No. 850), Cliven Bundy (ECF No. 855) and Drexler (ECF No. 880) and Vagueness Grounds (ECF No. 757) with joinders by defendants Dave Bundy (ECF No. 770), McGuire (ECF No. 774), O'Shaughnessy (ECF No. 776), Woods (ECF No. 786), Stewart (ECF No. 796), Lovelien (ECF No. 801), Cavalier (ECF No. 806), Santilli (ECF No. 815), Engel (ECF No. 827), Ryan Bundy (ECF No. 831), Ammon Bundy (ECF No. 843), Cliven Bundy (ECF No. 856), and Drexler (ECF No. 880), (collectively referred to as "Motions" or "Motions to Dismiss").

Because both Motions raise related issues concerning the same counts in the Indictment, the government respectfully seeks leave to file this consolidated response addressing both Motions and the joinders, none of which raise new or additional arguments.

## BACKGROUND

The Court is well aware of the procedural posture of this case and the allegations in the Superseding Indictment (ECF No. 27) (hereinafter "Indictment"). Those need not be repeated here in detail, except to note those allegations that relate generally to the Motions.

The 63-page Indictment in this conspiracy case sets out in great detail the events leading to and culminating in the massive and violent armed assault against federal officers that occurred near co-defendant Cliven Bundy's ranch in Bunkerville, Nevada, on April 12, 2014. It describes how Payne, a resident of

2

Montana, was affiliated with "Operation Mutual Aid." OMA purported to be "a coalition of States Militias, Patriotic Civilians, Individual Freedom Fighters, and Media Relations personnel from Patriotic political activism groups, in conjunction with local law enforcement if and where applicable." ECF No. 27 at ¶12.  Payne served as a "leader and organizer of the conspiracy" who, among other things, recruited militia groups (i.e. gunmen) affiliated with his OMA organization to help Bundy thwart the BLM's impoundment action, organized the gunmen once they arrived on the ground in Bunkerville, and directed their subsequent actions, including obtaining the impounded cattle by a show of force and actual force.

Counts Two and Three of Indictment charge Payne with conspiring to impede or injure a federal officer, in violation of Title 18, United States Code, Section 372, and use and carry of a firearm in relation to a crime of violence, in violation of Title 18, United States Code, Section 924(c).  Payne filed motions to dismiss those counts as unconstitutionally overbroad (ECF No. 754) and vague (ECF No. 757), in violation of the First Amendment. He claims that Section 372 is facially overbroad and that it is vague both facially and as applied to him.  Because these counts are neither overbroad nor vague, either facially or as applied to Payne, this Court should deny his motions.

## ARGUMENT

Title 18 U.S.C. § 372 (Section 372) provides as follows:

If two or more persons in any State, Territory, Possession, or District conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof, or to induce by like

means any officer of the United States to leave the place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties, each of such persons shall be fined under this title or imprisoned not more than six years, or both.[1]

## A.    Section 372 Is Not Facially Overbroad.

### i.    Analytical Framework for Overbreadth Challenges

To succeed on a facial challenge, a defendant must show that "no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 746 (1987). The *Solerno* Court gave meaning to this standard when it stated that a "facial challenge to a legislative act is, of course, the most difficult challenge to mount successfully." *Id.* at 745. In the First Amendment context, the Supreme Court has recognized a type of facial challenge in which a statute will be invalidated as overbroad if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 740 n.7 (1997) (Stevens, J., concurring)). To mount a successful facial challenge to a statute on overbreadth grounds, "there must be a realistic danger that the statute itself will significantly compromise recognized

---

[1]    In his motion, Payne asserts that only one district court "appears to have delved into § 372's statutory construction." ECF No. 757, at 4; ECF No. 7577 at 4. To the contrary, Payne joined motions challenging 372 as vague and overbroad in *United States v. Bundy* in Oregon, and the district court there, in a 14-page written order, thoroughly considered and rejected these same arguments. *See* Case No. 3:16-cr-00051, Doc. 650 (D. Or. June 3, 2016).

4

First Amendment protections of parties not before the Court." *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984).

Overbreadth challenges are narrowly constrained and generally disfavored. "A constitutional challenge based on overbreadth is a challenge to the facial validity of a statute or regulation." *United States v. Szabo*, 760 F.3d 997, 1004 (9th Cir. 2014). Because of the sweeping effects of striking down a statute on its face, the Supreme Court has noted that the overbreadth doctrine "is, manifestly, strong medicine," to be employed "sparingly and only as a last resort." *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973). To prevail on a facial challenge, "it is not enough for a plaintiff to show 'some' overbreadth." *Ashcroft v. ACLU*, 535 U.S. 564, 584 (2002) (citation omitted). Rather, a movant raising a challenge of facial overbreadth must demonstrate that the law "reaches a substantial amount of constitutionally protected conduct." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982). For a movant to overcome this hurdle and render a statute susceptible to an overbreadth challenge, it is not sufficient to merely conceive "of some impermissible applications of [the]" law. *Members of City Council of L.A. v. Taxpayers of Vincent*, 466 U.S. 789, 800 (1984). "[P]articularly where conduct and not merely speech is involved," a statute will not be struck down as overbroad unless it "reaches a substantial number of impermissible applications." *New York v. Ferber*, 458 U.S. 747, 770–71 (1982).

In addition, "overbreadth scrutiny has generally been less rigid in the context of statutes regulating conduct in the shadow of the First Amendment, but doing so

in a neutral, noncensorial manner." *Broadrick*, 413 U.S. at 614-15. The Supreme Court has cautioned against application of the overbreadth doctrine to laws like Section 372 that are directed at conduct and only incidentally sweep expressive conduct within their scope:

> [F]acial overbreadth adjudication is an exception to our traditional rules of practice and . . . its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the state to sanction moves from 'pure speech' toward conduct and that conduct—even if expressive—falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct. Although such laws, if too broadly worded, may deter protected speech to some unknown extent, there comes a point where that effect—at best a prediction— cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe.

*Id.* at 615.

> ii.     *Section 372 does not reach a "substantial number of impermissible applications."*

Defendant has failed to demonstrate that Section 372 reaches a substantial amount of protected speech, much less that any protected speech Section 372 might theoretically reach is substantial when "judged in relation to the statute's plainly legitimate sweep." *Osborne v. Ohio*, 495 U.S. 103, 112 (1990). Defendant's arguments are misplaced and not supported by a plain reading of the statute or the cases he relies upon. In short, defendant's arguments rely on the faulty premise that Section 372 was constructed principally to unlawfully target speech. By its terms, Section 372 cannot apply to overheated political statements or political hyperbole, because the conspiracy element of Section 372 requires that an

6

individual have the subjective intent to prevent the officer from discharging his duties and to achieve this goal by using "force, intimidation, or threats." 18 § U.S.C. 372. *Cf. Ninth Circuit Manual of Model Criminal Jury Instructions* § 8.20 (2010 ed.) ("One becomes a member of a conspiracy by willfully participating in the unlawful plan with the intent to advance or further some object or purpose of the conspiracy…"). *See also United States v. Bundy*, Case No. 3:16-cr-00051, Doc. 650 (D. Or. June 3, 2016) ("Section 372 does not regulate or chill speech otherwise protected by the First Amendment. Indeed, § 372 is a conspiracy statute that, by its nature, requires an intent to prevent a federal officer from discharging his or her duties by force, threat, or intimidation.").

Here, Section 372 is plainly directed at conduct: agreeing to prevent federal officials from discharging their duties by force, intimidation, or threat. Defendant has failed to demonstrate that Section 372's prohibition on such an agreement reaches a substantial amount of constitutionally protected activity, or to explain why the statute should not be construed to avoid any constitutional difficulties. Contrary to Payne's claim, agreeing to prevent federal officials from performing their job and executing federal court orders by force, while using and carrying firearms, plainly goes beyond a simple "threat." So construed, and when any potential overbreadth is "judged in relation to the statute's plainly legitimate sweep," *Broadrick*, 413 U.S. at 615, there is no danger, let alone a substantial one, that Section 372 will be applied to infringe upon legitimate rights of free speech.

In support of their argument, Payne erroneously analogizes Section 372 to statutes that exclusively address threatening speech. Defendant conflates the "threat" cases with Section 372's clear restrictions on threatening conduct that prevents federal officials from discharging their official duties: *Watts v. United States*, 394 U.S. 705 (1969) (holding that federal statute that criminalized threats to the President *is* constitutional on its face but not as applied to defendant); *Chafeee v. Roger*, 311 F. Supp. 2d 962, 970 (D. Nev. 2004) (holding statute facially overbroad for criminalizing threatening behavior that went beyond "true threats"); and *Virginia v. Black*, 538 U.S. 343 (2003) (holding that a Virginia statute that banned cross burning is constitutional, however, when statutory language eliminated the attendant mental state, statute was unconstitutional). *Watts*, *Chaffee*, and *Black* analyze statutory schemes that are materially different from Section 372, and this Court should not rely on them.

Originally enacted in the 1861, Section 372 is a long-standing statute that has been charged in fewer than a hundred published cases over the last fifty years. The cases that do interpret Section 372, however, differ substantially from the "threat" cases defendant relies upon. *See, e.g.*, *United States v. Fulbright,* 105 F.3d 443 (9th Cir. 1997) (evidence to support conviction for violating Section 372 sufficient where defendant filed "arrest warrant"), *overruled on other grounds by United States v. Heredia,* 483 F.3d 913 (9th Cir. 2007); *United States v. Myers,* 524 F. App'x 479 (11th Cir. 2013) (district court did not abuse its discretion by refusing to permit defendant to testify about his theory why he, as a sovereign citizen, was

not obligated to pay federal income taxes); *United States v. Brown*, 669 F.3d 10 (1st Cir. 2012) (defendant's belief that the warrant on which he was being arrested was invalid is not a defense to resisting arrest); *United States v. Hopper*, 436 F. App'x 414 (6th Cir. 2011) (conspiracy to rob mail carrier delivering mail did not require proof of specific intent to prevent mail delivery).

The statute is structured to address criminal conspiracies that impede the working of government. Indeed, Congressional efforts to modify the statute after its enactment underscore its purpose—namely to proscribe forceful, threatening conspiratorial conduct, not to broadly limit speech. The statute has withstood Congressional efforts to remove specific conspiracy statutes. H.R. Rep. No. 80–304 (1947), *reprinted in* 1948 U.S.C.C.A.N. 2475, 2476. The statute has only been changed twice in its history, to expand jurisdiction: once in 1909 to include "District[s]" and again in 1948 to include "Possession[s]." H.R. Rep. No. 80-304, 1948 U.S.C.C.A.N. at 2477.

Moreover, the mere fact that Section 372, in its reference to threats, does not explicitly distinguish "true threats" from protected speech is insufficient to render the statute facially overbroad. Courts have frequently upheld threat statutes in the face of such challenges. In *Watts v. United States*, 394 U.S. 705, 708 (1969), the Supreme Court "read into" 18 U.S.C. § 871(a) the requirement that the "statute initially requires the Government to prove a true 'threat'" despite the statute neither mentioning nor defining "true threats." Similarly, in *United States v. Sutcliffe*, the Ninth Circuit upheld a conviction under 18 § U.S.C. 875(c) in the face

of vagueness challenge despite the statute not explicitly requiring a specific intent or defining "true threats." 505 F.3d 944, 953 (9th Cir. 2007). There, the court noted that the Supreme Court's holding in *Virginia v. Black*, 538 U.S. 343, 359–60 (2003), rendered Section 875(c) applicable only to "true threats." *See also United States v. Kelner*, 534 F.2d 1020, 1024–28 (2d Cir.), *cert. denied*, 429 U.S. 1022 (1976) (rejecting a First Amendment challenge to 18 U.S.C. § 875(c) on the ground that "[s]o long as the threat on its face and in the circumstances in which it is made is so unequivocal, unconditional, immediate and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution," then the statute only regulates actual threats and not protected speech).

So too here. Section 372's failure to explicitly distinguish "true threats" from protected speech is hardly fatal to the statute's constitutionality. Accordingly, Defendant has failed to demonstrate that the statute touches a substantial amount of protected speech. Because Section 372 does not reach a substantial amount of constitutionally protected speech, Defendant's overbreadth challenge fails at the first step. *Village of Hoffman Estates*, 455 U.S. at 494 ("In a facial challenge to the overbreadth [...] of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct."). Additionally, the current dearth of case law specifically limiting Section 372's scope has little impact on the constitutionality of the statute. As the Supreme Court has held, "[f]acial overbreadth has not been invoked when a limiting construction has been or *could be* placed on the challenged statute." *Broadrick*, 413 U.S. at 613 (emphasis

10

added); *United States v. Brice*, 926 F.2d 925, 930–31 (9th Cir. 1991) ("a regulation is not unconstitutionally overbroad if it can be properly circumscribed with a limiting construction that would confine the statute to permissible applications.") (internal quotations and citation omitted). Section 372 contains a "core of easily identifiable and constitutionally proscribable conduct" and is therefore not unconstitutionally overbroad. *Secretary of State of Md. v. J.H. Munson Co.*, 467 U.S. 947, 964–65 (1984) (citations omitted).

*See also United State v. Gilbert*, 813 F.2d 1523, 1529 (9th Cir.), *cert. denied*, 484 U.S. 860, 108 S.Ct. 173, 98 L.Ed.2d 127 (1987) ("If conduct contains both speech and non-speech elements, and if Congress has the authority to regulate the non-speech conduct, incidental restrictions on freedom of speech are not constitutionally invalid.").

> ### iii.    *Section 372 does not bar First Amendment protected speech.*

Defendant's second claim is that application of Section 372 will "in many cases sweep up conduct protected by the First Amendment." Specifically, Defendant claims that Section 372 inhibits speech with "Second Amendment overtones" and therefore violates the First Amendment. This Court should reject that argument because it both confuses the issues and misconstrues the scope and applicability of Section 372.

"[J]udged in relation to the statute's plainly legitimate sweep," *Broadrick*, 413 U.S. at 615, there is no danger, let alone a substantial one, of Section 372's susceptibility to overbroad readings. It is clear that the statute's "legitimate reach

11

dwarfs its arguably impermissible applications," *Ferber*, 458 U.S. at 773, and although Defendant proposes very few, the number of imaginative misapplications of the statute constitute "a tiny fraction of the [instances] within the statute's reach." *Id.* Here, Payne's speculative misapplication of Section 372 completely misconstrues the applicability of the statute, as nothing in that Section hinders or prohibits the exercise of one's First Amendment rights in favor of the Second Amendment.

The First Amendment protects the expression of ideas through printed or spoken words as well as nonverbal "activity . . . sufficiently imbued with elements of communication." *Spence v. Washington*, 418 U.S. 405, 409 (1974) (statute unconstitutional as applied to defendant who displayed flag with peace sign to protest military action). However, the Supreme Court has "rejected the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." *Texas v. Johnson*, 491 U.S. 397, 404 (1989) (citation and internal quotation marks omitted). Facial overbreadth challenges are limited to statutes "which, by their terms, seek to regulate 'only spoken words'" or "purport to regulate the time, place, and manner of expressive or communicative conduct." *Broadrick v. Oklahoma*, 413 U.S. 601, 612-13 (1973); *Virginia v. Hicks*, 539 U.S. 113, 124 (2003) ("Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating).").

12

Defendant's reliance on *Nordyke v. King*, 319 F.3d 1185 (9th Cir. 2003) for the proposition that politically motivated gun crimes are immunized by the First Amendment is misplaced. *Nordyke* was engaged in promoting gun shows at the Alameda County Fairgrounds. Alameda County subsequently passed an ordinance making it illegal to possess firearms on county property, including the county-owned fairgrounds. *Nordyke* alleged, under the First Amendment, that the ordinance impermissibly infringed upon constitutionally protected speech. The court found that "[g]un possession can be speech where there is 'an intent to convey a particularized message, and the likelihood [is] great that the message would be understood by those who viewed it.'" *Nordyke*, 319 F.3d at 1190 (quoting *Spence*, 418 U.S. at 410-11). The court explained, "a gun protestor burning a gun may be engaged in expressive conduct. So might a gun supporter waving a gun at an anti-gun control rally. Flag waving and flag burning are both protected expressive conduct." *Id.* Nevertheless, the Alameda County ordinance banning firearms on county property did not violate the First Amendment:

> Typically, a person possessing a gun has no intent to convey a particular message, nor is any particular message likely to be understood by those who view it. The law itself applies broadly to ban the possession of all guns for whatever reason on County property. The law includes exceptions, primarily for those otherwise allowed to carry guns under state law, but these exceptions do not narrow the law so that it "has the inevitable effect of singling out those engaged in expressive activity."

*Id.* (quoting *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 706-07 (1986)). Because the ordinance was not "'directed narrowly and specifically at expression or conduct commonly associated with expression'" it did not unconstitutionally infringe

13

expressive conduct. *Id.* at 1190 (quoting *Roulette*, 97 F.3d at 305). *CPR for Skid Row v. City of Los Angeles*, 779 F.3d. 1098 (9th Cir. 2015) (state law making it unlawful to disrupt political meetings by "threats, intimidations, or unlawful violence" was not a content-based restriction and was not facially vague). Therefore, because the charged statute is not directed at expression or conduct commonly associated with expression, the statute is not facially overbroad.

"[U]nder our constitutional system courts are not roving commissions assigned to pass judgment on the validity of the Nation's laws." *Id.* at 610-11. A statute is not unconstitutionally overbroad unless "the overbreadth of [the] statute is not only . . . real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." Moreover, the fact that speech was involved in furthering Payne's political goals does not transform the illegal conduct into protected speech. *See Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949) ("[I]t has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed."). *Id.* at 615. In *Roulette v. City of Seattle*, the Ninth Circuit observed:

> This reasoning is eminently sensible. One might murder certain physicians to show disapproval of abortion; spike trees in a logging forest to demonstrate support for stricter environmental laws; steal from the rich to protest perceived inequities in the distribution of wealth; or bomb military research centers in a call for peace. Fringe acts like these, however, provide no basis upon which to ground facial freedom-of-speech attacks on our laws against murder, vandalism, theft or destruction of property.

*Roulette*, 97 F.3d 300, 305 (1996). As the Supreme Court noted in *City of Dallas v. Stanglin*: "It is possible to find some kernel of expression in almost every activity a person undertakes—for example walking down the street or meeting one's friends at a shopping mall—but such a kernel is not sufficient to bring the activity within the protection of the First Amendment." 490 U.S. 19, 25 (1989). Here, Defendant's actions went well beyond the parameters of the First Amendment. Defendant's armed assault of federal officers, even if motivated by a desire to draw attention to a cause, does not render the charged statute overbroad.

To the extent that Payne claims that he and his co-conspirators were exercising their First Amendment right to free expression by—and while—carrying guns, this Court should reject that claim outright. The Ninth Circuit has recognized that gun possession may be expressive activity if, for example, someone sets fire to a gun or waves a gun at a gun rights rally, but that is not what happened in this case. *See Nordyke v. King*, 319 F.3d 1185, 1189-90 (9th Cir. 2003). Here, hundreds of Followers of Cliven Bundy, many of them armed with assault rifles, assaulted federal officers as they were enforcing the law by guarding an impoundment site where they maintained custody of Bundy's impounded cattle. Taking up positions on high ground, concealing themselves behind barriers and under bridges, or interspersing themselves among unarmed Followers, the gunmen were in direct support of Ammon Bundy as he approached the SAC of the impoundment site, demanding the SAC and his officers leave the area. To say that a First Amendment

right attaches to the use of guns in the course of this violent assault is utterly ridiculous.

Whether carrying a gun falls within the First Amendment's protection for expressive activity depends on two interrelated considerations: (1) the speaker's intent to "convey a particularized message"; and (2) whether there is a great likelihood the message would be so understood by those who heard or viewed it. *Id.* at 1189.

Simply because Payne used words while carrying firearms does not implicate the First Amendment; if that were true, every bank robber who used a note to demand money or a gun to imply a threat would be entitled to raise the defense. *See United States v. Barnett*, 667 F.2d 835 (9th Cir. 1982) (holding that First Amendment did not protect defendant's sale of printed PCP manufacturing instructions). Instead, when defendant's possession of and brandishing of firearms is backed by criminal intent and purpose – such as charged here – and their actions were reasonably interpreted by the officer/victims as a threat, the defendants' actions are no different from the threat posed by the bank robber who enters the bank with a gun in his waistband with the intent to rob the back. In that case the bank robber does not need to point or shoot his gun to make his point. In this case, defendant Payne and his co-conspirators similarly made their point to law enforcement, and the BLM officers surrendered to them to avoid the effusion of blood.

**B.      *Section 372 Is Not Vague on Its Face or as Applied to Payne.***

*i.      Analytical framework for vagueness challenges*

"[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Gonzales v. Carhart*, 550 U.S. 124, 148-49 (2007) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)); *United States v. Zhi Yong Guo*, 634 F.3d 1119, 1121 (9th Cir. 2011). A defendant is deemed to have fair notice of an offense if a reasonable person of ordinary intelligence would understand that his or her conduct is prohibited by the law in question. *United States v. Hogue*, 752 F.2d 1503, 1504 (9th Cir. 1985); *see also United States v. Lanier*, 520 U.S. 259, 267 (1997). A vagueness challenge made outside the First Amendment context "must be examined as applied to the defendant." *United States v. Jae Gab Kim*, 449 F.3d 933, 942 (9th Cir. 2006); *United States v. Harris*, 705 F.3d 929, 932 (9th Cir. 2013) (explaining that a statute is unconstitutionally vague as applied "if it fail[s] to put a defendant on notice that his conduct was criminal").

"It is common ground that [the Supreme Court], where possible, interprets enactments so as to avoid raising serious constitutional questions." *Cheek v. United States*, 498 U.S. 192, 203 (1991) (citing *DeBartolo Corp. v. Florida Gulf Coast Building and Trades Council*, 485 U.S. 568, 575 (1988) ("every conceivable construction must be resorted to, in order to save a statute from unconstitutionality").

17

As the Supreme Court stated in *Flemming v. Nestor*, 363 U.S. 603, 617 (1960):

> The presumption of constitutionality with which [a statute] comes to us forbids us lightly to choose that reading of the statute's setting which invalidates it over that which will save it ... it is not on slight implication and vague conjecture that the legislature is to be pronounced to have transcended its powers, and its acts to be considered as void.

In *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494-95 (1982), the Court provided guidance for analyzing facial challenges to the vagueness of a law:

> [A] court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail. The court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications. A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law.

A movant challenging a statute that does not implicate the First Amendment must "demonstrate that the enactment is impermissibly vague in all of its applications." *Hess v. Board of Parole*, 514 F.3d 909, 913 (9th Cir. 2008) (citing *Hotel & Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 972 (9th Cir. 2003). Generally, a movant must show that the statute is vague as applied to him. If the statute is not vague as applied to the movant, it cannot be vague in all of its applications and no further inquiry is required. *Hess*, 514 F.3d at 913; *United States v. Dang*, 488 F.3d 1135, 1141 (9th Cir. 2007) ("if the statute is constitutional as applied to the individual asserting the challenge, the statute is facially valid."). Further, "speculation about possible vagueness in hypothetical situations not before

18

the Court will not support a facial attack on a statute when it is surely valid in the vast majority of its intended applications." *Hill v. Colorado*, 530 U.S. 703, 733 (2000) (internal quotations and citation omitted). Therefore, a challenge to the vagueness of a statute "must be examined as applied to the defendant." *United States v. Jae Gab Kim*, 449 F.3d 933, 942 (9th Cir. 2006).

### ii.   Section 372 does not violate the First Amendment.

As a threshold matter, the Court should deny Defendant's facial challenge to Section 372 because it is plainly beyond "the First Amendment context," as discussed above. Vagueness challenges to statutes that do not involve First Amendment violations must be examined as applied to the defendant. *See Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 n.7 (1982); *see also United States v. Purdy*, 264 F.3d 809, 811 (9th Cir. 2001) ("[O]ur concern is whether the [statute] is impermissibly vague *in the circumstances of this case.*" (quoting *United States v. Ocegueda*, 564 F.2d 1363, 1365 (9th Cir. 1977))). Payne has offered no controlling authority that Section 372 is a statute implicating the First Amendment. Defendant argues that he and his co-conspirators are charged with violating Section 372 because of their protected First Amendment activities were directed at the government. But this is simply Defendant's characterization of the facts—it is not a legally sound description of the statute. And while defendant Payne relies on cases that do involve the First Amendment (*e.g.*, *Chaffee v. Roger*, 311 F. Supp. 2d 962 (D. Nev. 2004); *Garrison v. Louisiana*, 379 U.S. 64 (1964)), these

cases address statutory schemes that target speech and are clearly distinguishable from Section 372.

### iii. Section 372 provides adequate notice.

Section 372 requires that an individual have the subjective intent to prevent the officer from discharging his duties and to achieve this goal by using "force, intimidation, or threats." Payne and his co-conspirators were clearly on notice that the armed assault on federal agents would have put them within the gambit of such a statute. Such a breathtakingly violent, direct, and massive assault on officers executing federal court orders falls within the heartland of the statute and the anarchy it is intended to prevent. Payne cannot argue Section 372 is vague in its application to him under such circumstances.

Defendant claims that Section 372 is void on its face because it fails to adequately define its statutory terms and thus fails to provide adequate notice to defendants of the proscribed criminal conduct. He also claims that the absence of clear definitions of force, threat, and intimidation render the statute facially vague. The law does not require defendants receive a precise recitation of the prohibited conduct prior to committing a crime. "Words inevitably contain germs of uncertainty." *Broadrick v. Oklahoma*, 413 U.S. 601, 608 (1973). "Imprecision in penal legislation should be tolerated if the language can be said nevertheless to give fair notice to those who might violate it." *United States v. Gilbert*, 813 F.2d 1523, 1530 (9th Cir. 1987); *see Grayned v. City of Rockford*, 408 U.S. 104, 112 (1972). "[P]erfect clarity and precise guidance have never been required even of regulations

that restrict expressive activity." *Ward v. Rock Against Racism*, 491 U.S. 781, 794, (1989); *see also Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972) ("Condemned to the use of words, we can never expect mathematical certainty from our language.").

The terms of Section 372 easily provide adequate notice to a person of ordinary intelligence. "Force," "intimidation," or "threat" are neither complicated terms nor ones that evade common understanding, particularly in Section 372. They are unremarkably common. *See United States v. Osinger*, 753 F.3d 939, 945 (9th Cir. 2014) (rejecting a vagueness challenge to 18 U.S.C. § 2261A(2)(A) despite the lack of statutory definitions for "harass" and "substantial emotional distress" because these terms are not esoteric or difficult to comprehend); *United States v. Mack*, 200 F.3d 653 (9th Cir. 2000) (holding that U.S. Forest Service regulation that prohibited "maintaining" structures that impede road was not vague). *Webster* dictionary defines "force" as "physical strength, power, or effect." *Miriam-Webster Dictionary*, http://www.merriam-webster.com (last visited May 11, 2016). "Threat" and "intimidation" are equally clear. *Webster* defines "threat" as "a statement saying you will be harmed if you do not do what someone wants you to do" and "intimidation" as "to make (someone) afraid." *Id.*

Finally, Defendant claims that the statute's failure to define the terms "officer" or "duties" render Section 372 void. Both of these terms provide fair notice to defendants of their meaning within the statute. Indeed, both "officer" and "duties" are downright prosaic compared to some of the terms the Ninth Circuit has held as

21

providing sufficient notice. (*See Osinger*, 753 F.3d at 945, upholding statute's use of term "substantial emotional distress"). Considering the same terms in *United States v. Bundy*, the court found that Section 372 is not vague. Case No. 3:16-cr-00051, Doc. 650 (D. Or. June 3, 2016) ("Read as a whole, the conduct that is proscribed by § 372 (*i.e.,* agreeing to prevent a federal official from discharging his or her official duties by force, intimidation, or threat) is sufficiently well-defined to be understandable by individuals of common intelligence and provides a sufficiently clear standard for enforcement.").

Payne separately relies on the sheer number of federal employees to argue that Section 372 is too broad in its reach to adequately notify a putative defendant of its scope. This argument is misplaced. The scope of the statute raises a separate question than sufficiency of its notice.

While the Ninth Circuit has not reached the question of whether Section 372 is facially void, it has previously rejected a similar vagueness challenge to a statute that prohibited injuring, intimidating, or interfering, "by force of threat of force," anyone who is lawfully aiding or encouraging others in "occupying . . . any dwelling." *United States v. Gilbert*, 813 F.2d 1523, 1530 (9th Cir. 1987) (examining 42 U.S.C. § 3631, and holding that legislation criminalizing the "use of force or the threat of force" should not be found to be void for vagueness). "Even if this language could be said to lack specificity, that alone should not render it void." *Id.* (citing *Cox v. Louisiana*, 379 U.S. 559, 568 (1965)). The Ninth Circuit rejected a vagueness challenge to a far more opaque violation of Section 372. *See, e.g., United States v.*

*Fulbright*, 105 F.3d 443 (9th Cir. 1997) (rejecting defendant's vagueness challenge to Section 372 in case where he was convicted after mailing an "arrest warrant" to federal bankruptcy judge), *overruled on other grounds by United States v. Heredia*, 483 F.3d 913 (9th Cir. 2007); *see also United States v. Chung*, 622 F. Supp. 2d 971 (C.D. Cal. 2009) (court denied defendant's challenge to the Economic Espionage Act after he was convicted of violating its terms by disclosing trade secrets to the People's Republic of China).

### iv.      *Section 372 does not invite arbitrary enforcement.*

Defendant next argues that Section 372 is facially void because it permits arbitrary enforcement. Here too, Payne mischaracterizes Section 372's reach. He claims that the statute is too obtuse in its language as to how the statute can be violated. A plain reading of the statute and an examination of reported cases interpreting Section 372 belie this claim.

Nothing in Section 372 suggests it permits arbitrary enforcement. It is remarkably straightforward. The statute prohibits individuals from conspiring to keep government employees from doing their jobs. Consistent with this reading of Section 372, reported cases addressing Section 372 have consistently upheld the sufficiency of the evidence. *See, e.g., United States v. Myers*, 524 F. App'x 479 (11th Cir. 2013) (refusing to permit defendant to testify about his theory why he, as a sovereign citizen, was not obligated to pay federal income taxes was not abuse of discretion); *United States v. Brown*, 669 F.3d 10 (1st Cir. 2012) (defendant's belief that the warrant on which he was being arrested was invalid is not a defense to

resisting arrest); *United States v. Hopper*, 436 F. App'x 414 (6th Cir. 2011) (conspiracy to rob mail carrier delivering mail did not require proof of specific intent to prevent mail delivery); *United States v. Beale*, 620 F.3d 856 (8th Cir. 2010) (First Amendment did not protect defendants' serious expression of intent to harm judge presiding over a defendant's criminal trial).

Similarly, defendant Payne has not shown that the government has failed to charge similarly situated defendants. Regardless, the fact that law enforcement officers exercise discretion relative to charging decisions does not render the statute vague. *See, e.g.*, *United States v. Ninety-Five Firearms*, 28 F.3d 940 (9th Cir. 1994) (noting that prosecutorial discretion does not equate to arbitrary enforcement for purposes of a vagueness challenge). Further, few cases match this one in terms of the level of violence, massive size of the assault, and flagrancy of disregard for the duties (and safety) of federal officers. That Payne possesses vitriol and hatred for the federal government does not immunize his violent conduct, or transform this prosecution into an arbitrarily enforcement action. Rather, Payne's motivations and reckless disregard for the safety of others show him and this case to be entirely proper subjects for prosecution due to the danger they pose not only to our country's law enforcement officers, but also to the very rule of law.

Lastly, Payne argues his Second Amendment rights are somehow implicated in his vagueness challenge. He cites no authority for the argument that a vagueness challenge can rest on a Second Amendment argument, because there is none. And,

as discussed above, the possession of weapons in furtherance of a violent conspiracy is simply not a form of speech protected by the First Amendment.

   *v.*    *Section 372 is not vague as applied to Payne.*

Defendant is unable to show that Section 372 is unconstitutionally vague as applied to his case. Again, Defendant seeks to characterize the charges against him as part of a larger effort to limit his constitutionally protected speech. The facts the government will offer at trial make it clear that defendants conspired with one another to conduct a massive, coordinated, armed assault on federal agents, forcing them under the threat of an exchange of gunfire to abandon their duties. This is conduct that is explicitly, and clearly, proscribed by the statute.

## CONCLUSION

**WHEREFORE**, for all the foregoing reasons, the government respectfully requests that the Court enter an Order, denying Payne's Motions to Dismiss Counts Two and Three of the Indictment (ECF Nos. 754 and 757).

**DATED** this 2nd day of November, 2016.

       Respectfully submitted.

       DANIEL G. BOGDEN
       United States Attorney

        *//s//*
       _____
       STEVEN W. MYHRE
       NICHOLAS D. DICKINSON
       Assistant United States Attorneys
       NADIA J. AHMED
       ERIN M. CREEGAN
       Special Assistant United States Attorneys

Attorneys for the United States

## CERTIFICATE OF SERVICE

I certify that I am an employee of the United States Attorney's Office.  A copy of the foregoing **GOVERNMENT'S COMBINED RESPONSE IN OPPOSITION TO DEFENDANT PAYNE'S MOTION TO DISMISS COUNTS TWO AND THREE ON OVERBREADTH GROUNDS (ECF No. 754) AND ON VAGUENESS GROUNDS (ECF No. 757)** was served upon counsel of record, via Electronic Case Filing (ECF).

DATED this 2nd day of November, 2016.

*/s/ Steven W. Myhre*

STEVEN W. MYHRE
Assistant United State Attorney

26