DANIEL G. BOGDEN
United States Attorney
STEVEN W. MYHRE
NICHOLAS D. DICKINSON
Assistant United States Attorneys
NADIA J. AHMED
ERIN M. CREEGAN
Special Assistant United States Attorneys
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336
steven.myhre@usdoj.gov
nicholas.dickinson@usdoj.gov
nadia.ahmed@usdoj.gov
erin.creegan@usdoj.gov

*Attorneys for the United States*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GREGORY P. BURLESON,<br><br>Defendant. | 2:16-CR-00046-GMN-PAL<br><br>**GOVERNMENT'S MOTION TO STRIKE, OR IN THE ALTERNATIVE, RESPONSE IN OPPOSITION TO DEFENDANT BURLESON'S MOTION TO SUPPRESS UNMIRANDIZED TAPE RECORDED INTERVIEW OF DEFENDANT (ECF No. 982)** |

**CERTIFICATION:  This Response is timely filed.**

The United States, by and through the undersigned, respectfully submits its Motion to Strike, or in the Alternative, Response in Opposition to defendant Gregory Burleson's Motion to Suppress Unmirandized (sic) Tape Recorded Interview of Defendant (ECF No. 982) (referred to herein as "Motion" or "Motion to Suppress").

For the reasons explained below, the Motion should be stricken as untimely or in the alternative, denied.

## BACKGROUND

This is a conspiracy case arising from a massive assault against federal officers that occurred near co-defendant Cliven Bundy's ranch in Bunkerville, Nevada, on April 12, 2014. On March 2, 2016, a federal Grand Jury seated in the District of Nevada returned a Superseding Criminal Indictment ("Indictment"), charging defendant Gregory Burleson ("Burleson") and 18 other defendants with, among other things, conspiring to assault federal officers, obstruct justice, extort federal officers, and use and brandish a firearm in relation to a crime of violence, and the substantive offenses that comprise the objects of the conspiracy, all in violation of Title 18, United States Code, Sections 371; 372; 111(a)(1) and (b); 1503; 1951; and 924(c). The Indictment generally details the events that led up to the April 12 assault and the assault itself, including that Burleson traveled from Arizona to Nevada with firearms in furtherance of the conspiracy. ECF No. 27, ¶¶ 24, 74, and 121.

On October 27, 2014, Federal Bureau of Investigations (FBI) agents, acting in an undercover capacity as independent documentary filmmakers interviewed Burleson in a hotel room in Phoenix, Arizona. Burleson agreed to be interviewed, arranged to meet with the agents, signed a release form, provided background information about himself, and discussed his role in the April 12, 2014, events.

On January 15, 2015, a special agent with the FBI contacted Burleson via telephone, returning Burleson's call and voice mail message to the agent earlier that month. As Burleson indicates in his motion, he knew this agent and according to Burleson had "developed a trusting relationship with the Defendant through prior contacts." ECF No. 982 p. 2.

During the recorded phone conversation, Burleson almost immediately – and with no prompting or solicitation – advised the agent that he is on the "terrorist watch list" possibly because, according to Burleson, in April he "went up to Nevada" and "forced BLM off of Bundy's Ranch." He even expressed that he was "surprised" that the agent did not call him up about it (given their previous relationship) as his "face went global within twelve hours after the standoff." Burleson went on to describe his role in the April 12, 2014 assault on BLM during the call, including that he had individual BLM officers in his sights and that he was "gonna go center mass on these guys," that he made sure "those guys saw [him]," and gestured to the BLM officers "sayin' look right here guys, look at me. I'm the one that's gonna shoot you. I'm the one that's gonna do you." Gov't Ex. A.

On March 3, 2016, Burleson was arrested in the District of Arizona pursuant to an arrest warrant issued from the Indictment. Burleson was transferred to this district and appointed counsel, Terrence Jackson, on March 16, 2016. ECF No. 193. Counsel for the government met and conferred with Burleson's counsel, and Burleson, through counsel, agreed to continue the trial date and was one of twelve defendants that had agreed to the proposed October 3, 2016, pretrial motions

3

deadline. ECF No. 321, pp. 2-3. On April 26, 2016, the Court entered a "Case Management Order," setting the pretrial motions deadline for October 3, 2016. *Id.* at p. 13.

Burleson failed to file any pretrial motions by the October 3, 2016, deadline. Nor did he seek an extension of the October 3, 2016, date. On October 6, 2016, Burleson filed a Motion for Joinder to another defendant's motion. ECF No. 821. On October 13, 2016, nearly two weeks after the pretrial motions deadline, Burleson filed a motion to suppress recorded statements made to undercover agents, certifying, incorrectly, that the motion was timely filed. ECF No. 876, p. 1. Nowhere in that motion did Burleson explain or make any showing of good cause for the untimely filing. *See* ECF No. 876. The government moved to strike the untimely motion. *See* ECF No. 926.

Inexplicably, on November 16, 2016, more than six weeks after the Court's deadline had elapsed, Burleson filed a second Motion to Suppress seeking to suppress a recorded telephonic conversation he had with an FBI agent in January 2015, arguing that his statements to the agent, made four months after his statements to the undercover agents, constitute fruits of the poisonous tree because they necessarily stems from the early undercover operation. In this motion, Burleson did not bother to make any certification as required under Local Rule 12-1 that the motion is timely, which, of course, it is not. Nor did he make any showing of good cause why this motion – which is essentially a two page add on to his original (untimely) motion – is filed several weeks after the pretrial motions deadline.

**LEGAL STANDARD**

If seeking to suppress evidence, a party must file a pretrial motion. Fed. R. Crim. P. 12(b)(3)(C). "If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely." *Id.* at 12(c)(3). Such untimely motion may be considered only if the "party shows good cause." *Id.* "The decision whether to grant an exception to a Rule 12 waiver lies in the discretion of the district court." *United States v. Tekle*, 329 F.3d 1108, 1113 (9th Cir. 2003) (affirming district court's denial of untimely motion to suppress because defendant had not shown good cause for relief from his waiver) (citations omitted).

"A statement is voluntary where it is 'the product of a rational intellect and free will.'" *See United States v. Savanh*, No. 2:14-cr-00290-KJD-PAL, 2016 WL 2844194, at *4 (D. Nev. April 5, 2016), quoting *United States v. Kelley*, 953 F.2d 562, 564 (9th Cir. 1992). "To determine whether a confession is voluntary, the court applies a totality of the circumstances test." *Id.*, citing *United States v. Leon Guerrero*, 847 F.2d 1363, 1366 (9th Cir. 1988). The court determines whether, "considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion, or by improper inducement so that the suspect's will was overborne." *Id.*

The Supreme Court has determined that coercive police activity is a necessary predicate to a finding that a confession is not voluntary. *Id.*, citing *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). It is the government's burden to

prove that a confession was voluntary by a preponderance of the evidence. *See United States v. Jenkins*, 958 F.2d 934, 937 (9th Cir. 1991).

## ARGUMENT

### A. The Court Should Strike Burleson's Untimely Motion, Filed Late and Without Good Cause

Burleson's Motion should be stricken as he fails to provide any explanation, let alone good cause, for his untimely filing. The Court entered a Case Management Order setting a firm deadline for pretrial motions over five months before the deadline. ECF No. 321. Burleson was aware of, and, even before entry of the Case Management Order, in agreement with the October 3, 2016, deadline. Given the number of defendants and the numerous pretrial motions that were anticipated and indeed filed by the October 3, 2016, deadline, adherence to the Court's Case Management Order or, at the very least, requesting a continuance of the deadlines are the only ways to ensure fair and efficient case management. *See United States v. Trobee*, 551 F.3d 835, 838 (8th Cir. 2009) (affirming district court's refusal to consider untimely motion to suppress, noting, "[c]ourts have a legitimate interest in the enforcement of scheduling deadlines, both to manage a pending case and to retain the credibility of these deadlines in future cases") (citation omitted). "The absence of prejudice or delay in the trial may be relevant to whether the district court is willing to grant relief, but those factors themselves do not require a finding of 'good cause.'" *Id.* Similarly, "[t]he possibility that other parties and the court could accommodate a late-filed motion does not mandate that the court grant an exception to the deadline where the movant fails to make an adequate showing of

6

good cause." *Id.* Here, given the number of defendants, the proximity of the trial date, pending discovery and other pre-trial deadlines, Burleson's continual disregard for the Court's Case Management Order directly prejudices the government as it works to meet the Court's deadlines and prepare for trial.

Burleson was well aware of the pretrial motions deadline in this case. He fails to provide any explanation for his late filing, dispensing with the need to certify the timeliness of the motion all together. ECF No. 982. The Court should strike this untimely motion, without consideration of the content, so to "retain the credibility of these deadlines" both in this and future cases. *Trobee*, 551 F.3d at 838; *Savanh*, No. 2:14-cr-00290-KJD-PAL, 2016 WL 2844194, at *4 (recommending that the district court deny defendant's motion to suppress as untimely given that the motion was not filed by the pretrial motions deadline, there was no request to extend the deadline to file the motion and "there was no explanation for why the motion was not timely filed let alone a showing of good cause"). The need to maintain deadlines is paramount in a case like this, where seventeen defendants are currently joined for trial[1] and many of whom have expressed a desire to proceed to trial at the current trial setting of February 6, 2017.

**B. Burleson's Recorded Admissions Were Freely and Knowingly Made and Should Not Be Suppressed.**

To the extent the court allows Burleson to proceed on the untimely motion, the Motion should nonetheless be denied because Burleson makes no preliminary

---

[1] The Court has stated that it will soon enter an order severing the defendants for trial. As of this filing, however, it is unknown as to when Burleson will be scheduled for trial.

showing that his statements to the FBI agent were improperly coerced or otherwise made involuntarily. In fact, as the recorded conversation makes clear, his statements contain all the hallmarks of being voluntary and consensual.[2]

At the outset, the agent was well-known to Burleson and, according to Burleson, had a "trusting relationship" with Burleson. Further, it was Burleson, not the agent, who initiated the contact with the agent. Burleson called the agent after a local Arizona law enforcement officer had engaged Burleson during an unrelated traffic stop. In fact, Burleson told the officer who stopped him that he (the officer) should contact the FBI agent about him. At all events, however, the agent called Burleson only after Burleson had reached out to him/her and left a voicemail message for the agent. When the agent returned the call, Burleson, without any prompting from the agent, raised the issue of his involvement in the events of April 2014, with Burleson complaining to the agent that he believed he was on the terrorism watch list.

Burleson asserts that these statements were the fruit of the poisonous tree as they were elicited as a result of his statements made to the undercover officers posing as documentary filmmakers in October 2014. Burleson asserts that the government recognized that the statements Burleson made to the undercover

---

[2] On November 30, 2016, the Court issued a Minute Order setting a hearing on both Burleson's previous and current motions to suppress, ECF Nos. 876 and 982. ECF No. 1045. To facilitate the Court's review of these issues, in the event that the Court declines to strike the motions as untimely, the government hereby submits under seal Exhibit A (Recorded January 15, 2015 Call with FBI Agent (the object of ECF No. 982)) and sealed Exhibit B (Video-recorded October 2014 Interview (the object of ECF No. 876)).

officers in October 2014 were involuntarily coerced and so the agent recorded the call at issue to obtain the same statements. ECF No. 982 at p. 2.

Of course, Burleson offers no evidence (and indeed there is none) pointing to any link between statements he made to undercover agents in October 2014 and those he made to a known FBI agent in January 2015. More to the point, however, even if he could establish such a link (which he cannot), his October 2014 statements to undercover agents were voluntary as well, as demonstrated in the Government's Response to Burleson's initial motion to suppress (ECF No. 876). The video and audio recordings of the October 2014 interaction between Burleson and the undercover agents show that none of his statements was induced or rendered involuntary because he had consumed alcohol. See Gov't's Ex. B. More importantly, Burleson cannot establish that any coercive police activity was used to elicit his statements during the undercover operation because Burleson always retained the ability and opportunity to terminate the undercover interview at any time. *See* ECF No. 926. At a minimum, Burleson must show some coercive activities as "a necessary predicate to the finding that a confession is not voluntary within the meaning of the due process clause of the Fourteenth Amendment." *Connelly*, 479 U.S. at 157. *See also United States v. Scheigert*, 809 F.2d 1532, 1533 (11th Cir. 1987) ("in the absence of coercive police activity, the mental defect and substance dependency of which [defendant] complains cannot render his confession involuntary"). He cannot do so and thus he fails to establish that his October 2014 statements to the undercover agents was involuntary in the first instance.

Moreover, to the extent he could show that his October 2014 statements were obtained coercively – which he cannot – any coercion would have been long since attenuated by January 2015 when Burleson initiated a call to the agent based on an unrelated incident, *i.e.,* a traffic stop by a local law enforcement officer.

## CONCLUSION

**WHEREFORE**, for all the foregoing reasons, the government respectfully requests that the Court enter an Order, denying defendant's Motion to Suppress.

DATED this 5th day of December, 2016.

                      Respectfully submitted,

                      DANIEL G. BOGDEN
                      United States Attorney

                         *//s//*
                      _____
                      STEVEN W. MYHRE
                      NICHOLAS D. DICKINSON
                      Assistant United States Attorneys
                      NADIA J. AHMED
                      ERIN M. CREEGAN
                      Special Assistant United States Attorneys

                      *Attorneys for the United States*

**CERTIFICATE OF SERVICE**

I certify that I am an employee of the United States Attorney's Office. A copy of the foregoing **GOVERNMENT'S MOTION TO STRIKE, OR IN THE ALTERNATIVE, RESPONSE IN OPPOSITION TO DEFENDANT BURLESON'S MOTION TO SUPPRESS (ECF No. 982)** was served upon counsel of record, via Electronic Case Filing (ECF).

DATED this 5th day of December, 2016.

*/s/ Steven W. Myhre*
_____
STEVEN W. MYHRE
Assistant United State Attorney

# (Sealed) Exhibits A & B

