NICHOLAS A. TRUTANICH
United States Attorney
District of Nevada
Nevada Bar No. 13644
STEVEN W. MYHRE
Assistant United States Attorney
District of Nevada
Nevada Bar No. 9635
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada 89101
Tel: 702.388.6336 / Fax: 702.388.6418
Steven.Myhre@usdoj.gov

*Attorneys for United States of America*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PETER T. SANTILLI, Jr.,<br><br>Defendant. | 2:16-CR-00046-GMN-PAL<br><br>**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT SANTILLI'S MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE (ECF No. 3492)** |

**CERTIFICATION: This Response is timely filed.**

For the reasons explained below, the United States opposes defendant Santilli's Motion. Santilli's sentence, which includes two years' supervised release, was the product of a Plea Agreement where the government made significant concessions in return for Santilli's agreement to jointly recommend a sentence of at least three years' supervised release. His Motion effectively argues for 18 months' supervised release, in abrogation of his Plea Agreement. Accordingly, the Court should deny the Motion.

**POINTS AND AUTHORITIES**

**A.   Facts and Procedural History**

The facts and circumstances giving rise the Superseding Indictment in this case and its procedural posture are well-known, the Court having presided over several trials and numerous hearings. Accordingly, they do not warrant recounting here in detail except to note generally as follows.

Defendant Peter T. Santilli, Jr. and eighteen co-defendants were charged in a 16-count, Superseding Indictment (ECF No. 27), alleging violations of federal law in connection with numerous attempts to thwart or impede a federal cattle impoundment that occurred in Bunkerville, Nevada, between April 2 and 12, 2014. These events culminated in an armed confrontation on April 12 between supporters of the cattle owner, Cliven Bundy, and federal law enforcement officers.

On October 6, 2017, Santilli entered into a Plea Agreement (ECF No. 2638) with the United States where he agreed to plead guilty to Count Two of the Superseding Indictment, charging him with Conspiracy to Impede or Injure a Federal Officer, in violation of Title 18, United States Code, Section 372.  That charge arose from Santilli's attempt to block a BLM convoy as it was conducting impoundment operations on April 9, 2014.  According to the stipulated facts in the agreement, Santilli used force to impede federal officers by driving his vehicle toward a BLM law enforcement officer's vehicle leading the convoy, causing the officer to stop his vehicle and halt the convoy behind him. After the block, Santilli refused to move his vehicle until ordered to do so. This had the effect of allowing enough time for numerous supporters of Cliven Bundy to converge on the convoy, surrounding the convoy vehicles and their occupants, threatening them with

force and violence, instilling fear, and causing the officers to leave their place of duty. *Id*. at 4-5, ¶ IV.D.

According to the Superseding Indictment, Santilli used this event as a catalyst to broadcast across the internet, recruiting and calling for armed gunmen and others to come to Bunkerville in support of Cliven Bundy's effort to stop the impoundment of his cattle, all in violation of federal law. ECF No. 27, ¶ 108. For example, on April 9, Santilli referenced the convoy block during his internet show, broadcasting words and images across the internet to incite others to force officers to retreat from performing their duties, including the following (*id)*:

- We were serious about stopping the convoy
- [The BLM] were caught off guard . . . and tried to push past us . . . they couldn't do it . . . we outnumbered them and they retreated
- We need to disperse them with tens of thousands . . . we want BLM to always retreat because we will always outnumber them
- I've got people coming from Michigan . . . militia members who are fully armed are here . . . it's good to watch the BLM with its tail between its legs
- [G]et out here . . . this is going to get exciting . . . get the feds to leave.

On April 10, Santilli again used his internet show to broadcast words and images designed to incite and entice others to violate the law (*id* at ¶ 110):

- There is not enough militia out here
- Where we will fail is for us not to at least match the overwhelming force . . . we have about 50 members here now . . . where we will fail is for us not to match the BLM force . . . we need a show of force
- BLM needs to vacate immediately . . . we need the numbers for the feds to leave . . . we need tens of thousands of people so they will retreat . . . come out here . . . we can win with numbers
- Militia members here are fully armed.

3

Ultimately, hundreds of followers arrived in Bunkerville from across the country, culminating in an armed standoff on April 12 between the Bundy followers and BLM officers where the officers were assaulted by followers brandishing and pointing assault rifles and other firearms at them. As a result of the standoff, the BLM was forced to abandon the cattle gathered during the impoundment operation.

At the time of his plea (October 6, 2017), Santilli was joined for trial with four other co-defendants, Ryan Payne and Cliven, Ryan, and Ammon Bundy, otherwise referred to as the Tier 1 defendants and referred to by the government as the leaders and organizers of the conspiracy to violate federal laws charged in the Superseding Indictment. The trial of the Tier 1 defendants, including Santilli, was set to commence on October 30, three weeks from the date of his plea. In return for his guilty plea to one count of conspiracy to impede a federal officer, the government agreed to dismiss Santilli from the remaining counts in the Superseding Indictment, including gun and assault charges arising from the April 12 standoff; thus allowing him to avoid trial on the most serious charges in the case. ECF No. 2638 at 3, ¶ II.D.

Further, the Plea Agreement contained a stipulated Guideline Offense Level 15 (18 to 24 months' imprisonment), which included a 4-level downward variance. *Id.* at 6, ¶ VI.B. The agreement further acknowledged Santilli's understanding that by his plea he could be subject to up to three years' supervised release. *Id.* at 9, ¶ VII.D.

The Plea Agreement also stipulated the positions of the parties regarding sentence. It required the parties to jointly recommend that the Court sentence Santilli to "time served" (as measured from the time Santilli was first charged with the instant charges) "*and a period of supervised release of three years to follow the sentence of imprisonment.*" *Id.* at 10, ¶ VII (emphasis added). Lastly, with exceptions that do not apply here, Santilli waived the ability to file an appeal and post-conviction motions (*id.* at 13) collaterally challenging the sentence ultimately adjudicated by the Court. *Id.* at 13, ¶ XII.B.

On September 11, 2018, and following a hearing, the Court adjudged a sentence for Santilli of imprisonment for a period of his "time served" in pretrial detention, in accord with the parties' joint recommendation, and imposed a period of supervised release for a period of two years, one year less than the joint recommendation. ECF No. 3336.

Santilli filed this Motion for Early Termination of Supervised Release (hereinafter "Motion") (ECF No. 3492) on March 16, 2020, seeking termination of his two years' supervised release approximately six months before termination under the terms of the Judgment. The government opposes.

**B.    Legal Standard**

Section 3583(e) of Title 18, United States Code, provides as follows:

> The court may, after considering the factors set forth in section 3553 [ ],
>
> (1) terminate a term of supervised release and discharge the defendant released after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released *and the interest of justice*.

Title 18, United States Code, Section 3583(e)(1) (emphasis added).

The district court enjoys "wide latitude" both in setting conditions of supervised release and in terminating supervised release. *United States v. Emmet*, 749 F.3d 817, 822 (9th Cir. 2014) (citations omitted). It must, however, state its reasons for *not* terminating a period of supervised following a defense motion. That explanation should demonstrate that the Court considered the Section 3553(a) factors when denying the defense motion to terminate. *Id.* (finding error where court denied motion to terminate because defendant failed to show undue hardship without explaining why Section 3553 (a) factors do not weigh in favor of the defendant).

**C.    Argument**

The Court should deny the Motion; the Section 3553 factors do not weigh in Santilli's favor when considering the Plea Agreement in this case. The Agreement calls for Santilli to be bound by at least three years' supervised release; that is, the agreement called for the parties to jointly recommend, at a minimum, a period of at least three years'

supervised release. At sentencing, the Court, after considering the Section 3553(a) factors, ultimately imposed two years (in addition to imprisonment amounting to time served). Defendant should not now be allowed to take out the back door that which he could not take out the front. In other words, his Plea Agreement prevented him from arguing for a period of less than three years' supervised release. Here, his Motion to terminate serves, in essence, as an argument (however belatedly) for 18 months' supervised release – in clear abrogation of his agreement not to argue for less than three years.

The government made considerable concessions for its agreement to allow Santilli to plead to one count of a 16-count indictment. For example, the government capped its sentencing recommendation to "time served" and agreed to a 4-level downward variance to Offense Level 15, when a Guidelines sentence would have otherwise allowed for imprisonment between 30 to 37 months (Offense Level 19). Additionally, Santilli was allowed to avoid the risk of trial and conviction on the more serious charges, which included Section 924(c) counts involving use of a firearm in relation to crimes of violence, which carry mandatory minimum sentences of imprisonment far greater than the "time served" stipulated to in the agreement.[1] Title 18, United States Code, Section 924(c); ECF No. 27, Cnts. 6, 9, and 15.

---

[1] The trial of the Tier 1 defendants (without Santilli) proceeded to trial, with the taking of evidence commencing in mid-November 2017. The trial terminated by dismissal with prejudice in January 2018, based on the Court's finding that the government engaged in outrageous conduct and flagrant prosecutorial misconduct during trial. The government appealed from the dismissal on a motion for reconsideration and on direct appeal to the Ninth Circuit Court of Appeals. As of the filing of this pleading, the appeal has not been decided. Nothing in the Court's dismissal of the other Tier 1 defendants is relevant to Santilli or his Motion.

The Motion does not demonstrate why the Court should now terminate his supervised release with less time than called for under the Agreement or imposed by the Court. Without proof, or explanation, it simply states that Santilli "has been a stand-out with zero issues" (Mot. at 2), implying that he has not violated the terms of supervised release. But his non-violation – if that is his justification – was assumed at the time of his plea when he agreed to a joint recommendation of at least three years' supervision. In other words, he's given no additional consideration for now changing the terms of his agreement from a recommendation of three years' to a recommendation of 18 months' supervised release. Because Santilli has failed to "show[] that the balance of the applicable section 3553(a) factors has changed and now counsel[s] a shorter term of supervised release than those factors did at the time of sentencing," the Court should deny the Motion. *United States v. Hawatmeh*, No. LA CR 08-00385-VBF-3, 2014 WL 11970544, at *5 (C.D. Cal. Sept. 19, 2014) (concluding "[a]s a matter of law . . . the defendant's compliance with the terms of supervised release alone cannot constitute a basis for terminating supervision early"). Courts "generally h[o]ld that something more than compliance with the terms of [supervision] is required to justify early termination [pursuant to 18 U.S.C. § 3583(e)(1)].

Lastly, the terms of Santilli's plea agreement prevent him from collaterally attacking or appealing the sentence in this case. An appellate waiver in a plea agreement creates a "*preclusive effect*" to any subsequent appeal covered by the waiver. *United States v. Castillo*, 496 F.3d 947, 955-56 (9th Cir. 2007) (en banc) (emphasis in original). Thus, appellate courts will not entertain appeals "where there was a valid and enforceable waiver of the right to

appeal." *United States v. Jeronimo*, 398 F.3d 1149, 1152-53 (9th Cir. 2005), *overruled on other grounds by Castillo*, 496 F.3d at 957.

Here, while not technically an appeal or collateral attack, the effect of the Motion is the same; it asks this Court to take another look at the sentence in this case. The Court should not allow Santilli to effectively appeal his sentence when he has expressly waived appeal and collateral attack.

Accordingly, the Court should deny the Motion, finding that the Section 3553(a) factors do not weigh in favor of early termination of supervised release when considering: the serious nature of the offense conduct in this case, the considerable concessions made by the government in the Plea Agreement, the defendant's covenant in that Agreement to recommend that he receive at least three years' supervised release, and his agreement not to appeal from the adjudicated sentence in this case.

**WHEREFORE**, for all the foregoing reasons, the United States respectfully requests that the Court enter an Order, denying the Motion.

**DATED** this 30th day of March, 2020.

Respectfully,

NICHOLAS A. TRUTANICH
United States Attorney

*/s/ Steven W. Myhre*
_____
STEVEN W. MYHRE
Assistant United States Attorney
*Attorney for the United States*

**CERTIFICATE OF SERVICE**

I certify that I am an employee of the United States Attorney's Office. A copy of the foregoing **GOVERNMENT'S RESPONSE IN OPPOSTION TO DEFENDANT SANTILLI'S MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE** was served upon counsel of record, via Electronic Case Filing (ECF).

DATED this 30th day of March, 2020.

/s/ Steven W. Myhre
───────────────────────────
STEVEN W. MYHRE
Assistant United States Attorney